No. 17-70017

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

TAICHIN PREYOR,

Petitioner − Appellant,

v.

LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional
Institutions Division,

Respondent − Appellee.

_____

On Appeal from the United States District Court
for the Western District of Texas
San Antonio Division
Case No. 5:10-cv-00857-FB (Honorable Fred Biery)

_____

**\*TAICHIN PREYOR IS SCHEDULED TO BE
EXECUTED AT 6:00 PM CDT ON JULY 27, 2017\***

**PETITIONER-APPELLANT'S APPLICATION FOR CERTIFICATE OF
APPEALABILITY AND BRIEF IN SUPPORT**

_____

Mark E. Olive
320 W. Jefferson Street
Tallahassee, FL 32301
(850) 224-0004
meolive@aol.com

Hilary Sheard
Texas Bar # 50511187
7421 Burnet Road, #300-512
Austin, TX 78757
(512) 524-1371
HilarySheard@hotmail.com

Catherine E. Stetson
Elizabeth C. Lockwood
HOGAN LOVELLS US LLP
555 Thirteen Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Petitioner TaiChin Preyor*

## CERTIFICATE OF INTERESTED PERSONS
## PURSUANT TO FIFTH CIRCUIT RULE 28.2.1

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in

the outcome of this case.   These representations are made in order that the judges

of this court may evaluate possible disqualification or recusal.

> The Honorable Fred Biery – United States District Judge
> The Honorable Judge Sharon MacRae – State Trial Judge
> The Honorable Judge Sharon MacRae – State Habeas Corpus Judge
> Nicholas "Nico" LaHood – District Attorney of Bexar County
> James Wheat, Melisa Skinner – Trial Prosecutors
> Michael C. Gross, John M. Economidy – Trial Attorneys
> Alan Battaglia – District Attorney on Habeas Corpus Application
> Greg Abbott, W. Erich Dryden – Assistant Attorneys General on Habeas
> Corpus Applications
> S. Patrick Ballantyne – Assistant Criminal District Attorney, Bexar County
> Terrence W. McDonald, Brandy Estelle, Mark E. Olive, Catherine E.
> Stetson, Elizabeth C. Lockwood, Hilary Sheard – Habeas Corpus Counsel
> Lorie Davis– Respondent – Appellee
> TaiChin Preyor – Petitioner – Appellant

/s/ Catherine E. Stetson
Catherine E. Stetson

## **STATEMENT REGARDING ORAL ARGUMENT**

Counsel requests oral argument pursuant to Fifth Circuit Rule 28.2.3.   This application and brief present important legal issues and factual disputes that have never received a full and fair hearing.   A stay of Preyor's July 27 execution date, or alternatively argument on Wednesday, July 26, should be granted to permit both Preyor and the State to fully brief and argue these issues.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF ISSUES ...................................................................4

STATEMENT OF THE CASE................................................................5

    A.    Preyor's Capital Sentencing and State Court Appeals.........................5

    B.    Philip Jefferson Solicits Business from Preyor....................................7

    C.    Jefferson Orchestrates the Representation of Preyor. .........................11

    D.    Estelle Holds Herself Out as Preyor's Sole Attorney. ........................14

    E.    Preyor's Federal Habeas Petition......................................................17

    F.    Jefferson and Estelle's Fifth Circuit and Supreme Court Filings. ......18

    G.    Estelle Seeks Duplicative Payments from this Court and Mendez.....20

    H.    Judicial and Legal Community Seek New Counsel for Preyor. .........21

    I.    Preyor Seeks Relief From Judgment.................................................23

SUMMARY OF THE ARGUMENT ....................................................25

ARGUMENT ....................................................................................27

    A.    Reasonable Jurists Could Find that Preyor's Rule 60 Motion Does Not Constitute a "Successive" Habeas Petition. .......................................28

    B.    Reasonable Jurists Could Conclude that Preyor's Former Attorneys Committed Fraud on the Court. ........................................................33

    C.    Reasonable Jurists Could Find that Jefferson and Estelle's Fraudulent Representation Is an Extraordinary Circumstance Warranting Relief Under Rule 60(b)(6). ....................................................................39

        1.    Jefferson and Estelle Fraudulently Induced Their Representation of Preyor.........................................................40

2.    Preyor Is Not Bound by Jefferson and Estelle's Actions and
      Omissions. ................................................................................. 42

3.    Jefferson and Estelle's Fraudulent Scheme Undermines the
      Public's Confidence in the Judicial Process. ............................ 47

D.  Reasonable Jurists Could Find that Preyor's Claim for Relief Under
    Rule 60(b)(6) Was Timely. ................................................................. 48

E.  Preyor's Claim of Ineffective Assistance of Trial Counsel Is
    Substantial. ......................................................................................... 52

CONCLUSION ...................................................................................................... 54

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Alexander v. Robinson*,
   882 F.2d 421 (9th Cir. 1989) ...........................................................37

*Browning v. Navarro*,
   826 F.2d 335 (5th Cir. 1987) ...........................................33, 37, 40

*Buck v. Davis*,
   137 S. Ct. 759 (2017)...................................................27, 28, 41, 49

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...............................................................33, 34

*Clark v. Davis*,
   850 F.3d 770 (5th Cir. 2017) ...........................................................51

*In re Coleman*,
   768 F.3d 367 (5th Cir. 2014) .....................................................29, 33

*Coleman v. Thompson*,
   501 U.S. 722 (1991)...............................................................43, 44

*Cruse v. O'Quinn*,
   273 S.W.3d 766 (Tex. App.—Houston [14th Dist.] 2008) ...............47

*DeSantis v. Wackenhut Corp.*,
   793 S.W.2d 670 (Tex. 1990) ...........................................................47

*Dunlop v. Pan Am. World Airways, Inc.*,
   672 F.2d 1044 (2d Cir. 1982) ...........................................................51

*In re Edwards*,
   676 F. App'x 298 (5th Cir. 2017) ...............................................33, 46

*Fackelman v. Bell*,
   564 F.2d 734 (5th Cir. 1977) ...........................................................40

*Fadia v. Unauthorized Practice of Law Comm.*,
   830 S.W. 2d 162 (Tex. App.—Dallas 1992) ...................................48

# TABLE OF AUTHORITIES—Continued

**Page**

*First RepublicBank Fort Worth v. Norglass, Inc.*,
  958 F.2d 117 (5th Cir. 1992) ...............................................................51

*Ford v. Wainwright*,
  477 U.S. 399 (1986).........................................................................41

*Gardner v. Florida*,
  430 U.S. 349 (1977).........................................................................41

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005)..........................................................1, 26, 29

*Harris v. United States*,
  367 F.3d 74 (2nd Cir. 2004) .......................................................45, 46

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944).............................................................34, 48, 50

*Hesling v. CSX Transp., Inc.*,
  396 F.3d 632 (5th Cir. 2005) ..............................................................40

*Holland v. Florida*,
  560 U.S. 631 (2010)...............................................................*passim*

*Jackson v. Thaler*,
  348 F. App'x 29 (5th Cir. 2009) .........................................................50

*In re Jasper*,
  559 Fed. App'x 366 (5th Cir. 2014) ...................................................33

*Johnson v. Dretke*,
  No. 05-10643 (5th Cir. Mar. 3, 2006)..................................................15

*Johnson v. McLeaish*,
  No. 05-94-01673-CV, 1995 WL 500308 (Tex. App.—Dallas Aug.
  23, 1995) (not designated for publication) ........................................47

*Jones v. Stephens*,
  998 F. Supp. 2d 529 (N.D. Tex. 2014) ...............................................47

## TABLE OF AUTHORITIES—Continued

**Page**

*Kenner v. C.omm'r*,
  387 F.2d 689 (7th Cir. 1968) ...............................................................31

*Kerwit Med. Prods. v. N. & H. Instruments Inc.*,
  616 F.2d 833 (5th Cir. 1980) ........................................................34, 37

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ........................................................................41, 49

*Link v. Wabash R.R. CO.*,
  370 U.S. 626 (1962) ...............................................................................43

*Maples v. Thomas*,
  565 U.S. 266 (2012) ..............................................................44, 45, 46

*Martinez v. Dretke*,
  404 F.3d 878 (5th Cir. 2005) ...............................................................28

*Menier v. United States*,
  405 F.2d 245 (5th Cir. 1968) ...............................................................40

*Miller-El v. Cockrell*,
  537 U.S. 322 (2003) ........................................................................27, 56

*In re Murchison*,
  349 U.S. 133 (1955) ...............................................................................49

*In re Osborne*,
  379 F.3d 277 (5th Cir. 2004) .................................................................5

*Preyor v. Davis*,
  No. 5:10-cv-00857-FB .............................................................................4

*Preyor v. State*,
  No. AP-75,119, 2008 WL 217974 (Tex. Crim. App. Jan. 23, 2008)
  (not designated for publication) ...........................................................6

*Preyor v. Stephens*,
  134 S. Ct. 2821 (2014) ..........................................................................20

**TABLE OF AUTHORITIES—Continued**

**Page**

*Preyor v. Stephens*,
135 S. Ct. 34 (2014) .......................................................................... 20

*Preyor v. Stephens*,
537 F. App'x 412 (5th Cir. 2013) ..................................................... 18

*Royal v. United States*,
Nos. W-90-CR-104, W-12-CA-00104, 2012 WL 12925076 (W.D.
Tex. Sept. 12, 2012) ......................................................................... 45

*Sanders v. Ratelle*,
21 F.3d 1446 (9th Cir. 1994) ............................................................. 9

*Seven Elves, Inc. v. Eskenazi*,
635 F.2d 396 (5th Cir. 1981) ........................................... 29, 30, 40, 41

*Spaziano v. Florida*,
468 U.S. 447 (1985) .......................................................................... 50

*United States v. 119.67 Acres of Land*,
663 F.2d 1328 (5th Cir. 1981) .......................................................... 51

*United States v. Garcia*,
No. 3:95-cr-264-M (01), 2017 WL 876334 (N.D. Tex. Feb. 6,
2017) ................................................................................................. 45

*United States v. Estate of Stonehill*,
660 F.3d 415 (9th Cir. 2011) ................................................. 37, 39, 50

*Wells v. United States*,
Nos. 3:07-CV-1152-G, 3:99-CR-112(02)-G, 2007 WL 2192487
(N.D. Tex. July 27, 2007) .................................................................. 45

*Wiggins v. Smith*,
539 U.S. 510 (2003) ............................................................. 29, 54, 55

*Wilkins v. Davis*,
No. 15-70033 (5th Cir. Aug. 10, 2016) ............................................ 15

# TABLE OF AUTHORITIES—Continued

Page

*Williams v. Thaler*,
  602 F.3d 291 (5th Cir. 2010) ...............................................................40

*Wilson v. Johns-Manville Sales Corp.*,
  873 F.2d 869 (5th Cir. 1987) ......................................................34, 37

*Workman v. Bell*,
  227 F.3d 331 (6th Cir. 2000) (en banc) ...........................................32

**STATUTES:**

18 U.S.C. § 3599 .................................................................2, 31, 41

28 U.S.C. §1291 .......................................................................................4

28 U.S.C. § 2253 ..............................................................................4, 28

28 U.S.C. § 2244 ......................................................................25, 32, 33

28 U.S.C. § 2244(b) ...........................................................................31

28 U.S.C. § 2253(c)(1) ......................................................................28

28 U.S.C. § 2254 ..........................................................2, 3, 31, 32

Tex. Gov't Code Ann. § 81.101(a) ...........................................34

**RULES:**

11 Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2870 (3d ed.
  Apr. 2017 update) .........................................................................31, 50

Cal. R. of Prof. Conduct 1-300(A) .............................................14

Fed. R. Civ. P. 11(b) ............................................................................52

Fed. R. Civ. P. 60(b)(6) ......................................................*passim*

Fed. R. Civ. P. 60(d)(3) .................................................... *passim*

Fed. R. Civ. P. 60(c) ...........................................................................50

**TABLE OF AUTHORITIES—Continued**

**Page**

Tex. Disciplinary R. of Prof. Conduct § 5.05 ..........................................................14

W.D. Tex. Local Rule AT-1(f)(1) (2009) ................................................................38

W.D. Tex. Local Rule AT-7-1(d) (2009) ................................................................38

**OTHER AUTHORITIES:**

Estelle & Kennedy PLC, *About*,
    http://www.estellekennedylaw.com/about/ (last visited July 12,
    2017) ...............................................................................................................11

*Jeremy Greenwell Profile*, Linkedin.com, *available at*
    https://www.linkedin.com/in/jeremy-greenwell-2404878/ (last
    visited July 25, 2017) .......................................................................................14

Judicial Council of the Fifth Circuit, Plan for Rep. on App. under the
    Crim. Justice Act § 6 (last revised Apr. 2009), *available at*
    http://www.lb5.uscourts.gov/cja2/ (emphasis added) ...............................21, 39

Restatement (Second) of Contracts § 164 ...............................................................46

Restatement (Second) of Agency § 376 ..................................................................46

## **Introduction**

The circumstances of this case were tailor-made for Rule 60 relief from the federal court's prior habeas judgment.   After all, Rule 60 expressly permits relief when a prior judgment has resulted from a fraud on the court or involved extraordinary circumstances, and the astonishing acts of former habeas counsel Brandy Estelle and Philip Jefferson—including concealing the work of a disbarred attorney and seeking duplicative compensation from this Court—can be described as little else.   The Supreme Court, moreover, has expressly recognized fraud on the court and similar "defect[s] in the integrity of the federal habeas proceedings" as a valid basis for Rule 60 relief that does not conflict with statutory restrictions on successive habeas petition.   *See Gonzalez v. Crosby*, 545 U.S. 524, 532 & n.5 (2005).   Yet the District Court refused to set aside the judgment denying the habeas petition prepared and filed by Jefferson and Estelle, and to allow Preyor a full and fair opportunity to seek habeas relief.   The District Court's bases for denying Rule 60 relief, however, are (to say the least) debatable among reasonable jurists.   This Court should therefore grant Preyor's application for a certificate of appealability (COA), stay the execution, and allow full consideration of the merits of Preyor's appeal.

TaiChin Preyor is scheduled to be executed on Thursday.   If he is, he will be executed without ever having received a fair opportunity for collateral review of

his conviction and sentence with the assistance of qualified counsel. *See* 28 U.S.C. § 2254; 18 U.S.C. § 3599. That is the statutory standard, and the statutory standard does not accommodate high rhetoric. But the facts and circumstances supporting this application are stunning, and counsel's investigation has revealed them to be true.

Preyor's initial federal habeas proceedings were orchestrated by Philip Jefferson, who had been disbarred for over fifteen years when he conned Preyor and his mother into hiring him for Preyor's habeas efforts. Jefferson's co-counsel, a real-estate lawyer from Beverly Hills, California, named Brandy Estelle, served as Jefferson's legal stand-in. But Jefferson solicited the work from Preyor's mother; Jefferson negotiated the fees; Jefferson was the family's sole point of contact; and Jefferson dictated the pleadings. Estelle never revealed Jefferson's role in the case to the District Court (which found her not competent to be appointed),[1] to this Court (which later appointed her), or to the United States Supreme Court. And to top it all off, Estelle fraudulently sought and received duplicative compensation *from this Court* despite receiving payment from Preyor's

---

[1] In the District Court's Order denying Petitioner's Rule 60 Motion, the Court found that Estelle "competently represented" Preyor through his habeas proceedings. Order on Mot. for Relief from J. at 5 (July 24, 2017), ECF. No. 86 ("Order"). This is an about-face from the District Court's earlier and contemporaneous findings, when it denied Estelle's motion for appointment because the amended habeas petition filed by Estelle showed that she lacked even "minimal familiarity" with applicable state and federal law." Order Den. Without Prejudice Mot. for Appointment of Counsel at 4-5 (Oct. 20, 2011), ECF. No. 20; *see infra* n.3.

mother for the same proceedings.

The result of this scheme was precisely the abysmal representation that one would expect from a disbarred attorney and a real-estate lawyer serving as his beard. The federal habeas petition the duo filed in the District Court was so facially inadequate that it subsequently became its own ironic meme, circulated among habeas attorneys of an example of what *not* to do. And most consequential for Preyor, Jefferson and Estelle failed to identify the overt deficiencies of sentencing counsel's efforts—including counsel's abject failure to identify and follow up on numerous items in Preyor's pre-trial file suggesting evidence of childhood sexual abuse and physical abuse. This Court's intervention is needed to ensure that Jefferson and Estelle's fraud does not prevent Preyor from raising this powerful mitigation evidence before he executed based on findings of a jury that never heard any of it.

## JURISDICTIONAL STATEMENT

Petitioner-Appellant TaiChin Preyor is under a death sentence pursuant to a Texas court judgment. He moved the District Court for the Western District of Texas, which had jurisdiction under 28 U.S.C. § 2254, to reopen his federal habeas corpus application pursuant to Rule 60 of the Federal Rules of Civil Procedure. On July 24, 2017, the District Court denied the motion and denied a certificate of appealability. Preyor timely filed a notice of appeal that day. Preyor now

requests a certificate of appealability from this Court, which has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF ISSUES

Petitioner-Appellant TaiChin Preyor asks this Court to issue a certificate of appealability on the following issues:

1.   Whether Preyor's Rule 60 Motion, alleging quintessential procedural defects in his federal habeas proceedings that are unrelated to his state court conviction, effectively constitutes a second successive habeas petition?

2.   Whether [1] a disbarred attorney's unauthorized practice of law on behalf of Preyor, concealed from the courts by his co-counsel, and/or [2] the same co-counsel's seeking duplicative compensation from this Court, amount to fraud on the court under Rule 60(d)(3), thus warranting relief from the previous judgment and appeal denying Preyor's federal habeas petition?

3.   Whether former habeas counsel's fraudulent scheme, including their fraudulent inducement of their representation of Preyor, constitutes an extraordinary circumstance warranting equitable relief pursuant to Rule 60(b)(6)?

4.   Whether Preyor's claim for relief under Rule 60(b)(6) was timely filed, where appointed counsel continuously investigated the claim except during the one-year period in which a request for additional funds was pending before the District Court and this Court?

## STATEMENT OF THE CASE

### A. Preyor's Capital Sentencing and State Court Appeals.

In March 2005, a jury of the 290th District Court of Bexar County, Texas, found TaiChin Preyor guilty of murder. During his trial, Preyor was represented by court-appointed attorneys John Economidy, who was responsible for the guilt phase, and Michael Gross, who handled the sentencing phase. *See* Ex. 1 to Pet'r's Rule 60 Motion (Aff. of Hilary Sheard at PREYOR000004 (Economidy File Notes)), *Preyor v. Davis,* No. 5:10-cv-00857-FB[2] (W.D. Tex. July 17, 2017), ECF No. 78-1 ("Sheard Aff.").

Economidy and Gross's files show that they knew or should have known of several red flags indicating that Preyor had experienced severe physical and sexual abuse during his childhood from multiple family members, suffered from alcohol-induced blackouts, and had a history of mental illness and suicidal ideations. *See id.* at PREYOR000024 (Economidy Case Analysis to Gross, Aug. 13, 2004)), ECF. No. 78-3; *id.* at PREYOR000014-17 (Bexar Cty. Jail Med. Records), ECF. No. 78-2. In preparing for sentencing, however, Gross never followed up or investigated Preyor's reported physical and sexual abuse. He also failed to pursue a neurological assessment of Preyor despite this being

---

[2]   Due to the emergency nature of this proceeding, the record is not yet available. Accordingly, case citations are provided. All citations to ECF documents refer to documents filed in the

recommended by *both* a psychologist and a neuropsychologist. *See id.* at PREYOR00006-13 (Murphey Evaluation, Oct. 14, 2004), ECF No. 78-1; *id.* at PREYOR000041-45 (Eubanks Evaluation Feb. 7, 2005), ECF No. 78-5.

Instead of presenting any meaningful mitigation evidence to the jury, including Preyor's sad history of childhood abuse, Gross emphasized during closing arguments that Preyor came from a good family, Ex. 3 to Rule 60 Motion at 16 (Trial Tr. Mar. 14, 2005), ECF No. 78-7—leaving the jury wondering (and the State to freely speculate, *see id*. at 10-11) how Preyor became someone tried and convicted of murder. The jury never heard about the troubling family dynamics that shaped Preyor's childhood. It never heard about the physical and sexual abuse Preyor suffered. And it never heard about his struggles with drug and alcohol addiction. Lacking any insight into Preyor's wretched childhood and challenges, the jury found a risk of future dangerousness and a lack of mitigating circumstances, and the trial court sentenced Preyor to death. *Id.* at 34.

Gross also represented Preyor on direct appeal to the Texas Court of Criminal Appeals, which affirmed the District Court's judgment and sentence. *Preyor v. State*, No. AP-75,119, 2008 WL 217974, at *6 (Tex. Crim. App. Jan. 23, 2008) (not designated for publication).

---

District Court matter, *Preyor v. Davis,* No. 5:10-cv-00857-FB, and include their ECF number for identification purposes.

Another court-appointed attorney, Terry McDonald, filed Preyor's initial, and cursory, state application for a writ of habeas corpus.   *See* Ex. 4 to Rule 60 Motion (Appl. for Writ of Habeas Corpus, *Ex Parte TaiChin Preyor*, No. 2004-CR-3602 (290th Tex. Dist. Ct. Bexar Cty. Mar. 8, 2007)), ECF No. 78-8. The application raised various grounds for relief—but none of them related to trial counsel's failure to properly conduct a mitigation investigation.   Indeed, like Gross before him, McDonald appears to have (again) failed to conduct a proper mitigation investigation to support Preyor's application.   McDonald did not speak to any of Preyor's family members, and in fact affirmatively *rebuffed* outreach by his mother, Margaret Mendez and his brother, Sean.   *See* Ex. 2 to Rule 60 Motion (Mendez Aff. ¶¶ 9-10), ECF. No. 78-6 ("Mendez Aff.").   Nor did he ever visit Preyor.   In fact, when Preyor attended an evidentiary hearing granted by the state court—at which McDonald presented no evidence—Preyor asked his counsel, McDonald:   "[W]ho are you?"   *Id.* ¶ 36.

## B. Philip Jefferson Solicits Business from Preyor.

Deeply unhappy with Preyor's court-appointed attorneys, Preyor's mother, Margaret Mendez, began searching for private representation for her son around early 2007.   *Id.* ¶¶ 12-13; Ex. 5 to Rule 60 Motion (Aff. of Rufus "Andrea" White ¶ 5) ECF. No. 78-9 ("A. White Aff.").   As a long-time postal worker in New York City, Mendez did not have ties to the legal community through which she could

obtain a reliable referral.   Mendez Aff. ¶¶ 2, 13-15.   Eventually her niece,

Melanie White, contacted her with a reference:   Philip Jefferson.   *Id.* ¶ 16; Ex. 6

to Rule 60 Motion (Aff. of Melanie Antoinette White ¶ 6) ECF. No. 78-10 ( "M.

White Aff.").   Jefferson had represented White's husband, Rufus Andrea White,

in a murder case in Los Angeles in the 1980s.   *See* Mendez Aff. ¶ 16; A. White

Aff. ¶ 3; *see also* Ex. 7 to Rule 60 Motion (Minute Order, *California v. White*, No.

A393272 (L.A. Super. Ct. May 21, 1985)), ECF No. 78-11.   Jefferson had

obtained two hung juries in that case, and, years later, the Whites reached out again

to ask if he could help Preyor.   *See* A. White Aff. ¶¶ 3, 6-7; M. White Aff. ¶ 6.

The timing was a boon for Jefferson, because he needed money.   An

inveterate gambler, Jefferson had seen his financial situation deteriorate

significantly; he had begun relying on SSI, Veterans Administration benefits, and

financial support from others.   Ex. 8 to Rule 60 Motion (Aff. of Melody Nelson

¶¶ 6-7, 10, 12), ECF. No. 78-12 ("Nelson Aff."); Ex. 9 to Rule 60 Motion (Aff. of

Oliver Joseph Jefferson ¶¶ 3-4), ECF. No. 78-13 ("J. Jefferson Aff.").

There was one problem.   Jefferson had been disbarred from the practice of

law over fifteen years earlier.   *See* Ex. 10 to Rule 60 Motion (Order, *In re the*

*Disbarment of Philip Jefferson*, No. S012632 (Cal. Mar. 21, 1990)), ECF No.

78-14 ("Disbarment Order").   Jefferson's "unconscionable" incompetence is

documented in detail in (among other places) a published Ninth Circuit opinion

finding that his representation of a defendant in a murder trial was constitutionally deficient. *See Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994). As the Ninth Circuit explained, Jefferson had failed to even interview the brother of the defendant, who credibly claimed that he shot the victim that the defendant was accused of killing. *Id.* at 1454. The Ninth Circuit concluded that "[i]t is beyond dispute . . . that Jefferson's behavior was unconscionable—above all, because he violated his elementary obligation to inquire into both the facts and the law before determining what was in his client's best interest." *Id.* at 1460. The Ninth Circuit explained that this deficient performance was consistent with the course of conduct leading to Jefferson's disbarment, which "reveals a lawyer who is completely indifferent to his clients, a lawyer who in a number of cases did almost nothing to protect his client's interests." *Id.*

The State Bar of California agreed. And in disbarring Jefferson, it concluded that he had "pursued a course of conduct demonstrating a complete indifference to his legal and ethical duties, to the great detriment of his clients." Ex. 11 to Rule 60 Motion (Findings of Fact at 9, *In re Philip Jefferson*, No. 83-0-11184 (Cal. State Bar Ct. Mar. 9, 1989)), ECF. No. 78-15 ("Disbarment Findings of Fact"). In its findings, the State Bar reviewed eight instances in which Jefferson had received an up-front fee from a client; filed a complaint; and then abandoned the case, resulting in dismissal or other adverse consequences.

Disbarment Findings of Fact at 2-7.   Less than four years before his disbarment,

Jefferson had also been suspended for similarly neglecting his client's case,

resulting in mandatory dismissal.   Ex. 12 to Rule 60 Motion (Order, *In re Philip

Jefferson*, No. Bar Misc. 5154 (Cal. July 23, 1986)), ECF. No. 78-16.

But the lack of a law license did not stop Jefferson from pretending still to

be a lawyer.   Jefferson continued to advise people in his community on legal

matters and continued to hold himself out as a licensed attorney.   J. Jefferson Aff.

¶¶ 3, 6; Nelson Aff. ¶ 14, 17.   And Jefferson likewise seized on the opportunity to

represent Preyor.   He first spoke with Mendez by phone, telling Mendez that he

was a "retired" lawyer, but that he could assist with Preyor's case.   Mendez Aff.

¶ 17.   Afterwards, Jefferson flew from Los Angeles to Memphis, Tennessee, to

meet Mendez over the Thanksgiving holiday at the home of Andrea and Melanie

White, where both he and Mendez stayed for a few days.   A. White Aff ¶¶ 6-7;

M. White Aff. ¶¶ 6-7; Mendez Aff. ¶ 18; J. Jefferson Aff. ¶ 6.   After

Thanksgiving dinner, he met with Mendez alone to discuss Preyor's case, boasting

about his professional experience.   Mendez Aff. ¶ 19.   Among other

representations, Jefferson boasted that he had worked in Los Angeles with Johnnie

Cochran of O.J. Simpson fame, claimed that Cochran used to pass him cases that

Cochran himself was too busy to handle, and claimed he was impressive to juries.

*Id.*; Ex. 13 to Rule 60 Motion (Aff. of Nathaniel Johnson ¶¶ 5, 16), ECF.

No. 78-17 ("Johnson Aff."). He also told Mendez that he would come out of "retirement" to take on Preyor's case and promised that the case would be reversed. Mendez Aff. ¶¶ 21, 23.

Jefferson said this work could be done for a lump sum of $20,000. *Id.* ¶ 21. He also claimed that, due to his status as a "retired" attorney, he needed another attorney—Brandy Estelle—to assist with filing documents. *Id.* ¶ 22. Jefferson gave the impression that Estelle was a hot-shot Beverly Hills lawyer admitted to the United States Supreme Court. *Id.*; Johnson Aff. ¶ 10. She is, in fact, a probate and real-estate attorney. *See* Ex. 17 to Rule 60 Motion (Thomson Reuters, *Brandy Estelle- Upland, CA*, FindLaw.com, http://pview.findlaw.com/lawyer/brandy- estelle/ca/upland/NDg1Mzk0MV8x/PP (last updated Sept. 16, 2014)), ECF No. 78-21; *see also* Estelle & Kennedy PLC, *About*, http://www.estellekennedylaw.com/about/ (last visited July 12, 2017). He told Mendez that he and Estelle would split the fees. Mendez Aff. ¶ 24. Impressed with Jefferson's presentation and credentials, Mendez agreed to hire them both. *Id.* ¶¶ 22-24.

**C. Jefferson Orchestrates the Representation of Preyor.**

Jefferson's pitch after Thanksgiving dinner omitted a key fact: his disbarment. In fact, Jefferson never mentioned this to Mendez or Preyor's other family members at any point during the representation. A. White Aff. ¶ 10; M.

11

White Aff. ¶ 11; Mendez Aff. ¶ 58.    Mendez did not learn that Jefferson had been disbarred until early 2015, after the Supreme Court had denied certiorari in Preyor's case, when she spoke to an experienced habeas attorney, Richard Ellis, and mentioned Jefferson's involvement.    *Id.*  ¶¶ 43, 57-58; Ex. 14 to Rule 60 Motion (Decl. of Richard Ellis ¶ 4), ECF. No. 78-18 ("Ellis Decl.").    Had Mendez known that Jefferson was disbarred, she would not have hired either Jefferson or Estelle to represent Preyor.    Mendez Aff. ¶ 60.

Notwithstanding his disbarment, Jefferson actively participated in Preyor's representation.    In late 2008, while former appointed counsel McDonald's state habeas application was still pending, Estelle filed a successive state habeas petition.    *See* Ex. 15 to Rule 60 Motion (Appl./Pet. for Post-Conviction Writ of Habeas Corpus, *In re Preyor on Habeas Corpus*, No. 2004-CR-3602, AP-75119 (290th Tex. Dist. Ct. Bexar Cty. Dec. 1, 2008)), ECF No. 78-19.    Both Jefferson and Estelle flew down to San Antonio, at Mendez's expense, to attend the evidentiary hearing on McDonald's state habeas application.    Mendez Aff. ¶ 33; Johnson Aff. ¶¶ 6-9.    After the hearing, Jefferson, Estelle, Mendez, her brother Nathaniel Johnson, and her son Sean Preyor-Johnson all had lunch together. Johnson Aff. ¶ 9.    That lunch set the tone for Preyor's appeals:    Jefferson ran the show, dominating the conversation while Estelle barely said a word.    *Id.*

Throughout the representation, Jefferson spoke with Mendez and her brother, Nathaniel Johnson, about her son's case on almost a daily basis, discussing potential legal arguments and continuing to boast about the prospects of securing Preyor's release.   Mendez Aff. ¶¶ 23, 25; Johnson Aff. ¶¶ 12, 17.   Tellingly, Estelle never joined these phone conversations, and Mendez rarely talked to Estelle.   Johnson Aff. ¶ 12; Mendez Aff. ¶ 25.   It is therefore unsurprising that Mendez considered Jefferson to be Preyor's primary and lead counsel.   Mendez Aff. ¶ 28.

And not only did Jefferson seem to Preyor's family to be dictating the legal strategy in Preyor's case; he was also literally dictating Preyor's *pleadings*. Jefferson, whose eyesight was poor, dictated pleadings either directly to Estelle or to Mendez, who then faxed them to Estelle for filing.   *Id.* ¶¶ 28-29, 48; Johnson Aff. ¶ 13.   During certiorari proceedings at the Supreme Court, for example, Jefferson dictated a petition for rehearing to Mendez over the phone, which Mendez in turn faxed to Estelle.   Mendez Aff. ¶ 48; Ex. D to Mendez Aff (Draft Pet. for Reh'g June 30, 2014).   The petition that Estelle ultimately filed contained nearly all of the language Jefferson drafted.   *Compare id. with* Ex. 16 to Rule 60 Motion (Pet'r's Pet. for Reh'g on a Writ of Cert., *Preyor v. Stephens*, No. 13-9151 (July 7, 2014)), ECF No.78-20.

### D. Estelle Holds Herself Out as Preyor's Sole Attorney.

Jefferson, being disbarred, needed a beard—someone who could file his pleadings for him.   So Brandy Estelle presented herself to the courts as the sole attorney representing Preyor.   Estelle was the only attorney who appeared on pleadings in state and federal court, and the only attorney to seek appointment by the District Court (without success) and the Fifth Circuit.   *See, e.g.*, First Am. Pet. for Writ of Habeas Corpus at 7 (Dec. 11, 2010), ECF. No. 7 ("First Am. Pet.") (declaring that Estelle is "the Attorney for the Petitioner"); Mot. for Appointment of Counsel for Financially Unable Defendant (Aug. 23, 2011), ECF. No. 19 ("Mot. for Appointment"); Appearance Form, *Preyor v. Thaler*, No. 12-70024 (5th Cir. Oct. 31, 2012).   She never once indicated to any state or federal court that a long-disbarred attorney was practicing law alongside her.   *See* Tex. Disciplinary R. of Prof. Conduct § 5.05 (barring lawyers from assisting in the unauthorized practice of law); Cal. R. of Prof. Conduct 1-300(A) (same).

Estelle appears to have had a valid law license.   That is where her capabilities as a Texas death-penalty lawyer began and ended.   As the District Court *itself* recognized—and despite the Court's recent about-face to the contrary,[3]

---

[3]   It is important to note that the death clerk for the U.S. District Court for the Western District of Texas who reached out to Texas HAT has since been replaced by a new death clerk:   Jeremy Greenwell, who served as a Texas assistant attorney general from September of 2003 until December of 2016.   *See Jeremy Greenwell Profile*, Linkedin.com, *available at* https://www.linkedin.com/in/jeremy-greenwell-2404878/ (last visited July 25, 2017).   During

Order at 5 (claiming Estelle "competently represented" Preyor)—she was utterly unqualified to represent Preyor. *See* Order Den. Without Prejudice Mot. for Appointment of Counsel at 4-5 (Oct. 20, 2011), ECF. No. 20 (denying Estelle's motion for appointment because the amended habeas petition filed by Estelle "contain[ed] claims which appear to disregard or ignore the provisions of Title 28 U.S.C. § 2254(i)" and showed that she lacked even "minimal familiarity" with applicable state and federal law). Estelle had been an attorney for only a few years at the time she took on Preyor as a client, and she had never before worked on a capital case. *See* Ex. 1 to Rule 60 Motion (Sheard Aff. ¶ 14), ECF. No. 78-1. Her prior experience as habeas counsel was limited to just one case: the representation of Demetrius Johnson in California District Court, which was not a capital case, and in which Estelle missed the deadline to file a notice of appeal and filing a habeas petition with less than two pages of argument. *See* Order Den. Certificate of Appealability at 1-2, *Johnson v. A.K. Scribner*, No. 2:06-cv-00032-AHM-JTL (C.D. Cal. May 21, 2007), ECF No. 24; *see also* Pet. for

---

his tenure in the Office of the Attorney General, Mr. Greenwell represented the State of Texas in dozens of capital and non-capital habeas corpus cases, until days before becoming the lower court's staff attorney. *See e.g.*, *Wilkins v. Davis*, No. 15-70033 (5th Cir. Aug. 10, 2016). Metadata also confirms that Mr. Greenwell apparently assisted in writing the District Court's Order denying Preyor's Rule 60 Motion:

Writ of Habeas Corpus, *Johnson v. Adams*, No. 2:10-cv-00388-AHM-SH (C.D. Cal. Jan. 20, 2010), ECF No. 1.

Estelle also had never appeared in a case in Texas state court.    *See* Sheard Aff. ¶ 14.    And it appears she relied on *Wikipedia*, of all things, to learn the complex ins and outs of Texas capital-punishment law.    Her files included a copy of the Wikipedia page titled "Capital punishment in Texas," with a post-it note stating "Research" next to highlighted passages of "Habeas corpus appeals" and "Subsequent or successive writ applications."    Ex. 1 to Rule 60 Motion (Sheard Aff. at PREYOR000073-94) (*Capital punishment in Texas*, Wikipedia.org, 7-9, https://en.wikipedia.org/wiki/Capital_punishment_in_Texas) (last visited June 16, 2014), ECF No. 78-5.    Notably, Estelle printed this *Wikipedia* page in June 2014—years *after* Preyor's state habeas applications were denied.    *Id.*

Estelle herself eventually came to the realization that she and Jefferson needed help.    In 2012—over a year after filing Preyor's amended federal habeas petition and before the District Court ruled on the petition—Estelle attended an introductory habeas training conference hosted by the Texas Habeas Assistance & Training Project ("Texas HAT") in Austin, Texas.    *See* Ex. 18 to Rule 60 Motion

| File: | Preyor v. Davis No. 5-10-00856-FB ECF No. 86 |
| Title: | |
| Author: | "Greenwell, Jeremy" |

(Decl. of James "Jim" William Marcus ¶ 9), ECF No. 78-22 ("Marcus Decl.").

Estelle's notes from the conference include such rudimentary observations as "[b]asically, we are the client's last hope" and "[g]et trial counsel's files from them." *See* Ex. 1 to Rule 60 Motion (Sheard Aff. at PREYOR000068-72 (Estelle Notes from Federal Habeas Conference)), ECF No. 78-5.

### E. Preyor's Federal Habeas Petition.

Unfortunately for Preyor, by the time Estelle was learning the rudiments of federal habeas law, she and Jefferson had already filed court pleadings. In October 2010, Jefferson and Estelle filed in the District Court a petition for writ of habeas corpus on behalf of Preyor. *See* Pet. for Writ of Habeas Corpus (Oct. 21, 2010), ECF. No. 1. Two months later, Jefferson and Estelle filed an "amended" petition nearly identical to the original. *See* First Am. Pet. The main body of the "amended" petition included precisely one case cite and zero record cites. Indeed, the only discussion of applicable precedents, such as it was, came in a four-page "Memorandum of Points and Authorities" attached to the end of the petition, which summarily identified the holdings of six Supreme Court cases. *See id.* at 34-37.

Jefferson and Estelle's petition attempted to raise several claims of ineffective assistance of counsel. *See id.* at 12-13. But Jefferson and Estelle failed to raise *any* ineffective assistance of counsel claims related to the sentencing

phase of the case. *See* First Am. Pet. And as the District Court later observed, Jefferson and Estelle otherwise "failed to allege any specific facts which supported petitioner's claims of ineffective assistance (other than unsupported and meritless allegations about jury arguments allegedly made by petitioner's initial trial counsel and alleged discrepancies between the pretrial and trial testimony of prosecution witness Jason Garza)." Order Denying Mot. Per Rule 59(e) at 4 (July 17, 2012), ECF. No. 24. Although Professor James Marcus, who attempted to advise Estelle beginning in March of 2010, had specifically instructed Estelle to thoroughly evaluate trial counsel's mitigation investigation, Marcus Decl. ¶ 6, Jefferson and Estelle completely ignored the glaring failure of trial counsel to capitalize on the numerous red flags presented to him in the case file. The District Court denied Jefferson and Estelle's habeas petition in June 2012. Mem. Op. and Order (June 15, 2012), ECF. No. 21

### F. Jefferson and Estelle's Fifth Circuit and Supreme Court Filings.

Following the District Court's decision, Estelle (with Jefferson puppeteering her) applied for a certificate of appealability to this Court. Appl. for Certificate of Appealability, *Preyor v. Thaler*, No. 12-70024 (5th Cir. Oct. 30, 2012). In February 2013, Estelle also filed a motion for court appointment—but this time she filed in *this* Court, the District Court having previously turned her down flat. Mot. for Appointment of Counsel Under the Crim. Justice Act, *Preyor v. Thaler*,

No. 12-70024 (5th Cir. Feb. 22, 2013).    This Court granted Estelle's motion for appointment in a one-sentence order.    Order, *Preyor v. Thaler*, No. 12-70024 (5th Cir. Feb. 27, 2013).    It denied Jefferson and Estelle's application for a certificate of appealability in July 2013.    *Preyor v. Stephens*, 537 F. App'x 412 (5th Cir. 2013).

Jefferson and Estelle then filed a petition for writ of certiorari in the United States Supreme Court.    In keeping with virtually every prior pleading, that petition for certiorari contained a six-page argument section, cited a bare handful of cases, and again included zero record cites.    Pet. for Writ of Cert., *Preyor v. Stephens*, No. 13-9151 (Dec. 19, 2013).    The Supreme Court denied the petition, *Preyor v. Stephens*, 134 S. Ct. 2821 (2014), and denied rehearing.    *Preyor v. Stephens*, 135 S. Ct. 34 (2014).

### G. Estelle Seeks Duplicative Payments from this Court and Mendez.

Mendez's initial engagement contract with Estelle required that she pay $20,000 to Estelle for work in Texas state court, United States District Court, and the Fifth Circuit Court of Appeals.    Mendez Aff. ¶¶ 21, 24, 32; Ex. A to Mendez Aff. (Attorney-Client Fee and Engagement Contract).    In April 2008, Mendez paid the $10,000 deposit required by the contract; she subsequently paid the remainder of the $20,000 fee through installments.    *See* Mendez Aff. ¶¶ 32-33, 39, 46, 63; Ex. B to Mendez Aff. (Checks and Payment Receipts).    Several of

these installments were paid directly to Jefferson. *Id*. Mendez also made additional payments for expenses, including $5,000 for Estelle to collect files in San Antonio and visit Preyor on death row. Mendez Aff. ¶ 39; Ex. C to Mendez Aff. (Addendum #2 to Attorney-Client Fee and Engagement Contract). When this Court denied the relief Jefferson had earlier promised, *see* Mendez Aff. ¶ 46, Jefferson and Estelle demanded that Mendez pay another $20,000 for proceedings at the United States Supreme Court. *Id.* In total, Mendez would pay Jefferson and Estelle over $45,000 for their representation of Preyor—much of it from her life savings. *See generally* Mendez Aff.; Ex. B to Mendez Aff.

But Estelle's attempts at compensation for the duo's incompetent and often frivolous work did not stop at Mendez. She also sought and received compensation *from this Court* for her work in proceedings before the Fifth Circuit and the Supreme Court.[4] *See* Docket, *Preyor v. Stephens*, No. 12-70024 (5th Cir.) ("5th Cir. Docket") (showing Estelle's voucher submissions in November 2013 and September 2014). Mendez was never told about these duplicative payments. *See* Mendez Aff. ¶ 46. And, just as important, neither was this Court—despite this Court's express instruction that—"[n]o one appointed under the Act may

---

[4]   Preyor asks this Court to take judicial notice that:   (1) when an appointed attorney submits vouchers for payment for work performed, the court will approve payments for work that the court deems appropriate; and (2) that this process was followed by the Fifth Circuit here, resulting in payment to Brandy Estelle pursuant to the vouchers she submitted.   Preyor has submitted *ex parte* and under seal the specifics attendant to this request for judicial notice.

accept any payment from *or on behalf of* the person represented in the court of appeals without prior authorization by a judge of the court of appeals."  Judicial Council of the Fifth Circuit, Plan for Rep. on App. under the Crim. Justice Act § 6 (last revised April 2009), http://www.lb5.uscourts.gov/cja2/ (emphasis added).

### H. Judicial and Legal Community Seek New Counsel for Preyor.

In December 2014, the former judicial clerk for death penalty cases in the U.S. District Court for the Western District of Texas, Marvin ("Yogi") McKelvey, called Jared Tyler, a Texas habeas attorney.  Tyler Decl. ¶ 2.  In that unusual call—which Tyler describes as a first—McKelvey expressed concern about Estelle's representation of Preyor in his federal habeas proceedings, and explained that he was reaching out himself to seek replacement counsel for Preyor.  *Id.* ¶¶ 3-4.  Tyler was unavailable to take the case himself based on his caseload at the time.  *Id.* ¶ 4.  Texas HAT subsequently recruited Hilary Sheard, an experienced habeas attorney, to take Preyor's case.  Marcus Decl. ¶ 12. Following Estelle's withdrawal, the District Court appointed Sheard to represent Preyor in March 2015.  Order Granting Mot. for Appointment of Counsel (Mar. 13, 2015), ECF. No. 35.

In April 2016, having already conducted some preliminary work on Preyor's behalf and identified further avenues for investigation, Sheard submitted to the district a proposed budget to cover existing and future expenditures connected with

the preparation of a clemency petition "or any other anticipated filing to be made on [Preyor's] behalf."    Order at 2 (quoting Pet'r's Proposed Budget to be Filed Ex Parte and Under Seal at 1 (Apr. 28, 2016), ECF. No. 40 (internal quotations omitted).    Specifically, Sheard proposed to investigate Jefferson and Estelle's conduct before the federal courts, as well as sentencing counsel's failure to conduct a proper mitigation investigation.    *See, e.g.*, Mot. for Stay of Execution at 5 (June 27, 2017), ECF. No. 67.

In June 2016, after considering Sheard's request, the federal magistrate judge recommended a substantial budget—$45,000—for future attorney time, a mitigation specialist, and other expenses.    The magistrate's recommendation was transmitted to the District Court, where it sat for nine months, until March 30, 2017.    This Court finally approved the budget six weeks later.    *See* Order at 2. During the time that budget request was making its way through the federal system, Sheard, a solo practitioner, was unable to substantially advance her investigation due to a lack of funds.    *See* Ex. 20 to Rule 60 Motion (Letter from Hilary Sheard to Jay R. Brandon July 15, 2016) ECF. No. 78-24 ("July 15 Letter"); Ex. 21 to Rule 60 Motion (Letter from Hilary Sheard to Jay R. Brandon Sept. 9, 2016), ECF. No. 78-25 ("Sept. 9 Letter").    Her investigation was therefore put on hold for over a year, from April 2016 to May 2017.

On May 16, 2017, the District Court appointed Catherine E. Stetson and

Mark Olive to support Sheard as co-counsel for Preyor.   *See* Order Granting in Part Mot. for Reconsideration Appointing Co-Counsel (May 16, 2017), ECF. No. 58.   With the budget finally approved, appointed counsel continued the investigation into Jefferson and Estelle and also began uncovering extensive mitigation evidence, which Preyor's former attorneys had failed to pursue.   *See, e.g.*, Mot. for Stay of Execution at 8-10 (June 27, 2017), ECF. No. 67.

Despite Sheard's regular contacts with the State, despite her outreach in January 2017 advising the State that she would need to withdraw, and despite the pendency of Sheard's budget request, on March 15, 2017, the State obtained an execution date of July 27, 2017 through an *ex parte* proceeding, without first filing a motion or otherwise notifying Sheard to allow her an opportunity to respond.

## I.  Preyor Seeks Relief From Judgment.

Counsel made significant progress in the weeks following budget approval and their appointment; but with the execution date now (inexplicably) set even while the budget request was still pending approval, time was growing pressingly short.   Accordingly, on July 14, 2017, counsel gathered what information they had been able to compile thus far, and filed a motion in the District Court pursuant to Rule 60 of the Federal Rules, requesting the court set aside the judgment on Preyor's first federal habeas petition, reopen habeas proceedings, and allow him to pursue his claims for relief with the assistance of licensed and qualified counsel.

*See* Rule 60 Motion.   As the motion explained, Jefferson and Estelle's stunning conduct amounted to fraud on the court as well as "extraordinary circumstances" warranting relief under Rules 60(d)(3) and 60(b)(6), respectively.   *See id.* at 23-26.

The District Court denied the Rule 60 motion without a hearing, and denied Preyor's accompanying motion for a stay of execution.   *See* Order.   The District Court concluded that the Rule 60 motion was an impermissible "successive petition" under 28 U.S.C. § 2244 over which the court lacked jurisdiction.   *See id.* at 4.   While noting that Preyor presented fraud as a defect in his prior proceedings, the District Court concluded that Preyor was *also* presenting a claim on the merits, as he was "using his fraud allegation as a means to re-open the proceedings for the ultimate purpose of raising and litigating his new [ineffective assistance of trial counsel] claims."   *Id.* at 4.

The District Court also offered some alternative holdings to support its denial of Preyor's Rule 60 motion.   First, although it agreed that Preyor's fraud-on-the-court claim was timely, the District Court held that Preyor had failed to demonstrate fraud on the court, concluding that while Jefferson and Estelle might have "fraudulently obtained" the consent of Preyor's *mother*, there was "*no showing* of any attempt to defile the court."   *Id.* at 5, 8 (emphasis added).   Next, the District Court held that any claim for relief under Rule 60(b)(6)—which

warranted relief in "extraordinary circumstances"—was untimely, because it was brought so close in time to Preyor's current execution date. Alternatively, the court found an absence of "extraordinary circumstances" warranting relief, concluding that Preyor was not "abandoned" by counsel because Estelle had filed pleadings on Preyor's behalf and that there was "*little, if any evidence* that Mr. Jefferson was orchestrating the entire defense" in part because Jefferson's name never appeared on a single pleading before the District Court. *See Id.* at 9 (emphasis added).

    This appeal follows.

## SUMMARY OF THE ARGUMENT

    TaiChin Preyor's federal habeas proceedings were fundamentally defective. He was represented by an attorney disbarred years earlier for shoddy work and abandonment of clients, who orchestrated the representation through a real-estate lawyer with no experience in capital cases. The duo's fraudulent scheme is *exactly* the kind of "procedural defect in the integrity of federal habeas proceedings" that the Supreme Court has recognized as an appropriate ground for Rule 60 relief. *Gonzalez v. Crosby*, 545 U.S. 524, 532 & n.5 (2005). Indeed, Rule 60 identifies two independent grounds—fraud on the court and "extraordinary circumstances"—on which the District Court could and should have corrected the gross inequity of holding Preyor to a judgment infected by the fraud of his former

attorneys. *See* Fed. R. Civ. P. 60(b)(6), (d)(3). And those grounds are plainly triggered here—or at the very least, warrant a full inquiry in the form of a hearing below. The District Court's quasi-categorical conclusions that there was "*no showing* of any attempt to defile the court," Order at 5, and that there was "*little, if any evidence*" that a disbarred lawyer orchestrated Preyor's pleadings, *id.* at 9, are belied both by the forceful statements in multiple affidavits, other contemporaneous record documents, and this Court's own rules and procedures, all of which point—at the very least—to a significant fact issue about the extent to which Jefferson and Estelle's conduct can be said to have amounted to a fraud on the judicial system itself. *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (COA should issue where issues presented are "adequate to deserve encouragement to proceed further." (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Further, while the District Court correctly found Preyor's claim under Rule 60(d)(3) for fraud on the court was timely, its finding that Preyor was unduly dilatory in pursuing his claim for "extraordinary circumstances" relief under Rule 60(b)(6) was erroneous—and unfortunately, self-serving. Aside from the year-long period in which the budget request was pending—including the nine months it took this same District Court to sign off on the magistrate's recommendation—Preyor's appointed counsel diligently pursued the full investigation necessary to present his current claims for Rule 60 relief, and counsel

moved with flat-out speed following approval and appointment to compile the documentation necessary to support these rare and damning contentions.

Because reasonable jurists could disagree with the District Court's conclusions, this Court should grant a COA, stay the execution scheduled for July 27, and address the full merits of Preyor's appeal.

## ARGUMENT

Under the Antiterrorism and Effective Death Penalty Act of 1996, a COA is necessary to appeal a habeas claim to the federal circuit courts.  *See* 28 U.S.C. § 2253(c)(1); *Buck*, 137 S. Ct. at 773-774 (reversing this Court for applying incorrect standard for obtaining COA to appeal from denial of Rule 60 motion). This Court will issue a COA if, after a threshold inquiry, it finds that "the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck*, 137 S. Ct. at 773 (quoting *Miller-El*, 537 U.S. at 327).  A district court's decision may be "debatable," and a COA thus required, even "though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."  *Miller-El*, 537 U.S. at 338.  And particularly in death penalty cases—such as this one—this Court "must resolve any doubts as to whether a COA should issue in [the petitioner's] favor."  *Martinez v. Dretke*, 404

F.3d 878, 884 (5th Cir. 2005).

### A. Reasonable Jurists Could Find that Preyor's Rule 60 Motion Does Not Constitute a "Successive" Habeas Petition.

Preyor's Rule 60 Motion does not implicate the statutory restrictions on successive petitions. *See* 28 U.S.C. § 2244. Preyor alleges a ground for relief—fraud on the court, perpetrated against this Court and the District Court by a disbarred attorney and his beard—that the Supreme Court has specifically recognized as a procedural defect in federal habeas proceedings for which courts may freely grant relief. *Gonzalez*, 545 U.S. at 532 & n.5; *In re Coleman*, 768 F.3d 367, 371-372 (5th Cir. 2014) (recognizing that fraud on the court is a procedural defect that is the proper subject of a Rule 60 motion). Preyor's allegation that his attorneys fraudulently induced his consent to their representation—which amounts to an extraordinary circumstance warranting relief under Rule 60(b)(6)—is likewise a procedural defect in his federal habeas proceedings, having nothing to do with the validity of his underlying state-court conviction or this Court's resolution of his previous federal habeas petition. Preyor's Rule 60 Motion therefore does not effectively assert a "claim" for federal habeas relief that must comply with the restrictions on successive habeas petitions. *Gonzalez*, 545 U.S. 524 at 532.

The District Court appears to have found fault with Preyor's Rule 60 motion because the motion also identified a compelling claim of ineffective assistance of

trial counsel, which the court thought rendered the motion a "successive" petition in a different guise. *See* Rule 60 Motion at 32-55 (outlining claim under *Wiggins v. Smith*, 539 U.S. 510 (2003)). Of course the motion identified a compelling substantive claim. To demonstrate that this Court's equitable intervention is worthwhile, *see Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (whether "there is merit in the movant's claim or defense" informs whether Rule 60 relief is appropriate), Preyor was *required* to show what his previous counsel neglected to submit. *See also* Dissenting Opinion of Alcala, J., *Ex Parte TaiChin Preyor*, No. WR-72660-04, at *23-32 (Tex. Ct. Crim. App. July 24, 2017) (finding Preyor has established a prima facie case of ineffective assistance of trial counsel at his sentencing phase, an issue not reached by the majority). But this showing alone does not, as the District Court found, transform Preyor's Rule 60 Motion based on quintessential procedural defects into a successive habeas petition. *See* Order at 4. Such a rule would pose a catch-22 for petitioners like Preyor. If they mention substantial claims or evidence supporting habeas relief that could have been raised earlier but for a procedural defect (fraud), their Rule 60 Motion is a successive petition. But if they are silent on the merit of claims or evidence not previously heard, the District Court will decline to exercise its discretion to set aside the judgment, because there would be no "merit in the movant's claim or defense." *Seven Elves*, 635 F.2d at 402. In other words, there would be no way

to bring a claim of fraud on the court—which the Supreme Court has expressly identified as an appropriate ground for Rule 60 relief—without triggering the restrictions on successive petitions.    That cannot be right.

Indeed, contrary to the District Court's perfunctory analysis, the Supreme Court in *Gonzalez* did not establish a hair-trigger test that requires treating a Rule 60 Motion as a successive petition if there is any mention of a new claim therein. *See Gonzalez*, 545 U.S. at 532.    Rather, the standard is simply whether the grounds for relief in the Rule 60 Motion *themselves* are "claims" asserting a "federal basis for relief from a state court's judgment of conviction," such that granting Rule 60 relief would "circumvent[] AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts."    *Id.* at 530-531 (citing 28 U.S.C. § 2244(b).    Here, the grounds for relief in Preyor's Rule 60 motion were quintessential procedural defects warranting relief under that Rule—not impermissible successive claims. Granting Preyor's Rule 60 Motion would not conflict with AEDPA—and in fact would *promote* Congress' expressed intent to allow death-sentenced prisoners one full opportunity to seek federal habeas relief with the assistance of qualified counsel.    *See* 28 U.S.C. § 2254; 18 U.S.C. § 3599.

1.    "A decision produced by fraud on the court is not in essence a decision at all and never becomes final."    *Kenner v. Comm'r*, 387 F.2d 689, 691 (7th Cir.

1968); *see also Calderon v. Thompson*, 523 U.S. 538, 557 (1998) ("[A] case of fraud upon the court[] call[s] into question the very legitimacy of the judgment."); *see also* 11 Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2870 (3d ed. Apr. 2017 update) (quoting *Kenner*, 387 F.2d at 691). If the Court grants Rule 60 relief for fraud on the court, therefore, Preyor would be returned to the same position as a petitioner who has not yet filed a federal habeas petition. At that point, any federal habeas claims he may bring would *not* be "successive," because the District Court's prior decision would be in essence not "a decision at all." *Id.*; *see also Workman v. Bell*, 227 F.3d 331, 335 (6th Cir. 2000) (en banc) (fraud on the court "calls into question the very legitimacy of a judgment," which satisfies "at least in spirit, the requirements of section 2244."). Far from conflicting with AEDPA, therefore, allowing Preyor to bring any and all claims available to him would finally afford him his right to one full opportunity to pursue federal habeas relief, which he has thus far been denied. *See* 28 U.S.C. § 2254.

2.    Preyor also is not bound by the actions of Jefferson and Estelle, because they procured their representation through fraud and with the intent to engage in the unauthorized practice of law. *See infra* Argument § B(2). Thus, neither Preyor nor an authorized agent has ever submitted claims for federal habeas relief on his behalf. For this independent reason as well, Preyor is in the same position as a petitioner who has not yet filed a federal habeas petition. Any claims he

brings after his federal habeas petition is reopened therefore would not be second or successive.

3.  The nature of the claims for relief here also distinguish this case from the two decisions cited by the District Court for the proposition that referring to a new claim converts a Rule 60 Motion into a successive petition.   Neither of those cases involved an egregious fraud perpetrated by the petitioner's former counsel. *See* Order at 4 (citing *In re Edwards*, 676 F. App'x 298, 304-305 (5th Cir. Jan. 27, 2017) (raising conflict-of-interest issue); *In re Coleman*, 768 F.3d 367, 371-372 (5th Cir. 2014) (raising ineffective-assistance claim).   They therefore do not control the issue here—whether Preyor's Rule 60 Motion raising a claim that the Supreme Court expressly identified as a procedural defect (fraud on the court), and that seeks relief from a prior decision that was not "in essence a decision at all," should be treated as a successive petition under § 2244.

Thus, it is plainly debatable among reasonable jurists whether the District Court should have set aside the judgment on Preyor's federal habeas petition, or at least set the motion for full fact development and a hearing.   The District Court's conclusion that Preyor's Rule 60 Motion constituted a successive petition, which this Court will ultimately review *de novo*, *In re Jasper*, 559 F. App'x 366, 370 (5th Cir. 2014), should be reviewed and reversed.

**B. Reasonable Jurists Could Conclude that Preyor's Former Attorneys Committed Fraud on the Court.**

A district court has inherent equitable authority to set aside, at any time, a judgment that is tainted by fraud perpetrated on the court, including fraud committed by the movant's own attorney. *See* Fed. R. Civ. P. 60(d)(3); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991); *Browning v. Navarro*, 826 F.2d 335, 343-344 (5th Cir. 1987) (citing examples of fraud on the court perpetrated by the movant's own attorney). This Court has described fraud on the court as the kind of fraud that "does or attempts to[ ] defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1987) (quoting *Kerwit Med. Prods. v. N. & H. Instruments Inc.*, 616 F.2d 833, 837 (5th Cir. 1980)). Courts should grant relief for fraud on the court to protect "the integrity of the courts," *Chambers*, 501 U.S. 32 at 44, and to "fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the finality of a judgment. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

Here, the substantial—and *undisputed*—evidence counsel have compiled thus far shows that Estelle and Jefferson perpetrated a fraudulent scheme that, to

put it mildly, tarnished the integrity of the District Court and this Court. Throughout Preyor's federal habeas proceedings, Estelle intentionally misrepresented to this Court that she was the sole attorney for Preyor. She was the only attorney of record, the only attorney to sign pleadings filed in this Court, and the only attorney who sought court appointment to represent Preyor. *See, e.g.*, First Am. Pet. at 38 (declaring that Estelle is "the Attorney for the Petitioner"); Mot. for Appointment (motion to appoint Estelle as counsel). In reality, however, Estelle took a back seat to Jefferson, who had been disbarred for almost twenty years by the time Preyor's federal habeas petition was filed. *See* Disbarment Order at 1. It was Jefferson, not Estelle, who originally solicited the engagement from Preyor's mother over Thanksgiving dinner in 2007; it was Jefferson who developed case strategy with input from Preyor's family; and it was Jefferson who crafted pleadings filed in Court, dictating them over the phone to Estelle directly or through Mendez. *See* Mendez Aff. ¶¶ 18, 21, 25, 28-29, 48; Ex. D to Mendez Aff. (Notes of M. Mendez); A. White Aff. ¶¶ 6-7; M. White Aff. ¶¶ 6-7; Johnson Aff. ¶¶ 12-13. Unbeknownst to the District Court, therefore, the advocacy for Preyor was not the work of a licensed attorney, but the result of Jefferson's unlicensed and illegal practice of law. *See* Tex. Gov't Code Ann. § 81.101(a) (prohibiting the unauthorized "practice of law" to include both

"preparation of a pleading" and "the giving of advice or the rendering of any service requiring the use of legal skill or knowledge.").

The District Court's flippant disregard of this mountain of evidence and summary finding that there is "little to no" evidence that Jefferson orchestrated Preyor's representation, Order at 9, was clearly erroneous. The District Court relied on the fact that Jefferson's name did not appear on a single court document. *Id.* But of course it did not; Jefferson was disbarred. Far from disproving his involvement, this fact demonstrates that Jefferson and Estelle fraudulently misled the court about the nature of Preyor's representation. At the very least, Preyor has raised significant issues of fact regarding Jefferson's involvement that warrant further development—as even the District Court was constrained to acknowledge, when it cited "*little to no*" evidence of Jefferson's involvement." *Id.* Little, yes, if by "little" one means several sworn affidavits from first-hand observers of the representation, including not only Preyor's family members but also Jefferson's friend and ex-wife, Melody Nelson, and his nephew, Oliver Jefferson, both of whom corroborated Preyor's family members' accounts. *See* Nelson Aff. ¶¶ 13-16; J. Jefferson Aff. ¶¶ 3-6. But that is not all. Preyor also submitted clear documentary proof, further corroborating the practice identified in sworn affidavits, that Jefferson dictated a pleading in 2014 that Estelle subsequently filed, largely unchanged, at the United States Supreme Court. *Compare* Ex. D to

Mendez Aff. (Draft Petition for Rehearing June 30, 2014), *with* Ex. 16 to Rule 60 Motion (Pet'r's Pet. for Reh'g on a Writ of Cert., *Preyor v. Stephens*, No. 13-9151 (July 7, 2014)).    Far from "misleading," therefore, Preyor's allegations of Jefferson's role in the case is supported by evidence that is both uniform and reliable.

The active participation of a disbarred lawyer in a death-row inmate's federal habeas efforts unquestionably undermines the public's confidence in the "integrity of the judicial process," *United States v. Estate of Stonehill,* 660 F.3d 415, 444 (9th Cir. 2011) (quoting *Alexander v. Robinson*, 882 F.2d 421, 424 (9th Cir. 1989)).    On that basis alone, the District Court should have exercised its equitable discretion to set aside the judgment.    *See Wilson*, 873 F.2d at 872 (fraud on the court includes that which merely "'attempts to[] defile the court itself.'" (quoting *Kerwit Med. Prods.*, 616 F.2d at 837); *Browning*, 826 at 344 (reading *Hazel-Atlas Glass Co.*, 322 U.S. at 244 to suggest that "once the determination is made that officers of the court have corruptly abused the judicial process, the court is not required to examine the effect that such conduct might have had on the ultimate judgment.").

In addition to impugning the integrity of Preyor's federal habeas proceeding, Estelle and Jefferson's fraudulent scheme also prevented the District Court from effectively "perform[ing] in the usual manner its impartial task of adjudging

cases." *Wilson*, 873 F.2d at 872 (quoting *Kerwit Medical Prods.*, 616 F.2d at 837). In our adversarial system, courts depend on licensed, qualified attorney representation from each side to sharpen the issues and inform their decisions. Estelle's fraudulent concealment of Jefferson's central role in the case deprived the District Court and this Court of that critical component of the process. For had Estelle disclosed Jefferson's involvement, the District Court almost certainly would have used its inherent regulatory authority to prevent Estelle—and therefore Jefferson—from appearing *pro hac vice* on Preyor's behalf. *See* W.D. Tex. Local Rule AT-1(f)(1) (2009) (admission *pro hac vice* requires "permission of the judge presiding."); W.D. Tex. Local Rule AT-7-1(d) (2009) ("[A]ny judge . . . has inherent authority to discipline an attorney who appears before him or her."). The District Court then could have ensured that a *licensed* and competent attorney presented Preyor's claims. Instead, the District Court was left with the grossly deficient pleadings that Jefferson crafted and Estelle submitted, which failed to provide the District Court with adequate legal analysis and factual support for the claims they did raise—and failed to present perhaps Preyor's strongest claim for relief altogether. *See infra*, Argument, Section E..

Estelle and Jefferson's misrepresentations about Jefferson's role in the case alone required the District Court to grant relief here. But the scheme did not stop there. Estelle also defrauded the courts herself by seeking compensation for work

for which she and her "co-counsel" had already been paid.    Preyor's mother paid them to represent Preyor in the state courts, the District Court, this Court, and the United States Supreme Court.    Mendez Aff. ¶¶ 21, 24, 32; Ex. A to Mendez Aff. (Attorney-Client Fee and Engagement Contract).    Nonetheless, Estelle sought and received compensation for work on the same proceedings from this Court.    *See* 5th Cir. Docket.

Brushing aside this point, the District Court found that the fraud on this Court was of no meaning because "Estelle advised [this Court] of such payments." Order at 5.    But the District Court clearly misread the vouchers that Estelle submitted to this Court, as discussed in Preyor's accompanying motion to file Estelle's billing records ex parte and under seal.    Further, this Court requires that "[n]o one appointed under the Act may accept any payment from or on behalf of the person represented in the court of appeals without prior authorization by a judge of the court of appeals."    *See* Judicial Council of the Fifth Circuit, Plan for Rep. on App. under the Crim. Justice Act § 6 (last revised April 2009), http://www.lb5.uscourts.gov/cja2/; *see also* Mendez Aff. ¶¶ 32, 46 & Ex. A (documenting payments to Estelle in August 2013).    Such fraud undermines the public's confidence in the integrity of the federal court system—and in particular the use of government funds to ensure adequate representation of prisoners sentenced to death.

Because Estelle and Jefferson's fraud both defiled the court system—in particular *this Court*—and "undermined the workings of the adversary process itself," *Stonehill*, 660 F.3d at 445, their scheme rises to the level of fraud on the court.   The District Court's finding to the contrary was error.

### C. Reasonable Jurists Could Find that Jefferson and Estelle's Fraudulent Representation Is an Extraordinary Circumstance Warranting Relief Under Rule 60(b)(6).

It was also inequitable to deny Preyor relief on his Rule 60 motion in light of the extraordinary circumstances presented in the instant case.   Rule 60(b)(6) is an independent ground for relief from judgment—a "'grand reservoir of equitable power to do justice in a particular case.'"   *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005)).   The rule recognizes that, while finality of judgments is of crucial importance, "the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause."   *Seven Elves*, 635 F.2d at 401; *see also Fackelman v. Bell*, 564 F.2d 734, 736-737 (5th Cir. 1977) (Rule 60(b)(6) "is a flexible tool designed to do substantial justice.").   Accordingly, this Court has instructed that the rule "should be liberally construed."   *Seven Elves*, 635 F.2d at 401.

To determine whether "extraordinary circumstances" warrant relief under Rule 60(b)(6), courts may consider a variety of factors. *Buck*, 137 S. Ct. at 778. These include "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-864 (1988) (internal quotation marks omitted)). In death-penalty cases like this one, the public's confidence in the judicial process requires close scrutiny of a prisoner's claims of error and greater procedural protections than in a typical civil case. *See Ford v. Wainwright*, 477 U.S. 399, 411 (1986) (a capital case requires the "high regard for truth that befits a decision affecting the life or death of a human being."). Perhaps most fundamentally, the public expects that a death-sentenced inmate will have the assistance of a licensed, qualified attorney. *See* 18 U.S.C. § 3599 (providing right to qualified counsel).

Here, given the grave risks of injustice to Preyor and of undermining the public confidence in the judicial process, the equities clearly warranted relief.

### 1. Jefferson and Estelle Fraudulently Induced Preyor's Consent to Their Representation.

Jefferson and Estelle's shocking conduct is exactly the kind of extraordinary circumstance that warrants the District Court's intervention. Jefferson and Estelle not only deceived the District Court, but also fraudulently obtained Preyor's consent to represent him in this case. Preyor, after all, entered into the agreement

with Jefferson and Estelle "by and through" his mother, as the contract makes clear. Ex. A to Mendez Aff. (contract entered into "by and through Margaret D. Mendez"). For purposes of Jefferson and Estelle's fraudulent inducement, therefore, Preyor and his mother were one and the same. The District Court's attempt to differentiate between Jefferson and Estelle's fraudulent inducement of Preyor's consent and that of his mother was thus wholly misguided. Order at 8-9.

At their meeting over Thanksgiving in 2007, Jefferson presented himself as a highly accomplished attorney, a former colleague of Johnnie Cochran, and described his accomplice, Estelle, as a Beverly Hills attorney with access to the United States Supreme Court. *See* Mendez Aff. ¶¶ 18, 19, 21-23; Johnson ¶¶ 5-6, 10; Nelson Aff. ¶ 13. Given her lack of experience with the legal system and trust in a family member's referral, Mendez reasonably believed Jefferson's claims. Had she known that, in fact, Jefferson had been disbarred in 1990 and Estelle was a real-estate and probate lawyer with no experience whatsoever in capital cases, she would have never hired them to represent her son. Mendez Aff. ¶ 60. That Preyor subsequently signed an affidavit endorsing Estelle for court appointment, *see* Order at 8-9 (citing ECF No. 19-1), does not alter the fact that he and his mother were deceived into thinking that Jefferson was a licensed attorney who would represent him and that Estelle, for her part, had experience in capital habeas cases.

Jefferson and Estelle's fraudulent inducement of their representation of Preyor was far from harmless. It resulted in a disbarred attorney orchestrating Preyor's representation, even dictating pleadings that were subsequently filed in Court. Mendez Aff. ¶¶ 28-29, 48. And as was to be expected from a disbarred lawyer and a real-estate broker, the advocacy on behalf of Preyor was abysmal. *See supra* § E-F. (detailing deficiencies).

### 2. Preyor Is Not Bound by Jefferson and Estelle's Actions and Omissions.

The general rule in civil proceedings is that parties are bound by the acts of a lawyer-agent, including negligent acts and omissions. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991); *Link v. Wabash R.R. CO.*, 370 U.S. 626, 633-634 (1962). But that general rule has a well-established exception: where there is no valid agency relationship between attorney and client. *See Maples v. Thomas*, 565 U.S. 266, 283 (2012) ("[U]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him."); *see also Holland v. Florida*, 560 U.S. 631, 651 (2010) ("[P]rofessional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling."). As the Supreme Court observed, "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of the word." *Id.* at 659 (Alito, J. concurring) (citing *Coleman*, 501 U.S. at

42

752-754 (relying on "well-settled principles of agency law" to determine whether attorney error was attributable to the client)).

Although the Supreme Court has not had occasion to apply this exception directly to a Rule 60 case, there is no reason that the same basic agency-law principles fall away in the Rule 60 context. Indeed, the opposite appears to be true; the Supreme Court has applied basic agency-law principles in multiple other habeas postures, including courts' equitable discretion to toll the statute of limitations and determine whether cause exists to excuse a procedural default. *Cf. Maples v. Thomas*, 565 U.S. 266, 280-282 & n.7 (2012) (finding "no reason" why principles of agency law distinguishing "between attorney negligence and attorney abandonment should not hold in both" the context of equitable tolling and procedural default). Other courts have held, moreover, that abandonment severing the agency relationship alone may justify Rule 60 relief. *See United States v. Garcia*, No. 3:95-cr-264-M (01), 2017 WL 876334, at *4 (N.D. Tex. Feb. 6, 2017), R. & R. adopted, 2017 WL 880869 (N.D. Tex. Mar. 3, 2017) (Rule 60(b)(6) relief may be appropriate where movant shows abandonment) (citing *Harris v. United States*, 367 F.3d 74, 81 (2nd Cir. 2004) ("To be 'extraordinary circumstances' for purposes of Rule 60(b)(6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether. . . ."); *Royal v. United States*, Nos. W-90-CR-104, W-12-CA-00104,

2012 WL 12925076, at *2 (W.D. Tex. Sep. 12, 2012) (same); *Wells v. United States*, Nos. 3:07-CV-1152-G, 3:99-CR-112(02)-G, 2007 WL 2192487, at *2 (N.D. Tex. July 27, 2007) (same).

The District Court nonetheless found that this foundational principle does not apply in Rule 60 cases. The only authority cited in support, however, was an unpublished, per curiam opinion issued by this Court. Order at 9 (citing *In re Edwards*, 676 F. App'x at 305). In that case, however, this Court merely rejected the petitioner's argument that *Maples* alone was authority to find that abandonment warrants Rule 60 relief in that case. *See In re Edwards*, 676 F. App'x at 305 (distinguishing *Maples* from petitioner's case). It did not consider other authority finding abandonment does provide a basis for Rule 60 relief. *See, e.g.*, *Harris*, 367 F.3d at 81. And in any event, the commentary on whether abandonment severing the agency relationship *could* warrant Rule 60 relief was pure dicta: the Court had already determined that there was no evidence of abandonment in that case. *See In re Edwards*, 676 F. App'x at 305. The District Court's presumption that agency-law principles do not apply was therefore misplaced.

Applying the proper analysis here, it is clear that Jefferson and Estelle were not operating as Preyor's agent "in any meaningful sense of the word." *Holland v. Florida*, 560 U.S. at 651. To begin with, Jefferson and Estelle's fraudulent inducement of their representation of Preyor negated any semblance of informed

consent from either Preyor or his mother.   This deprived the agency relationship of legal effect from the outset.   *See* Restatement (Second) of Agency § 376 (recognizing that fraud may deprive an agency relationship of legal effect); *see also* Restatement (Second) of Contracts § 164 ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); *see also Jones v. Stephens*, 998 F. Supp. 2d 529, 533 (N.D. Tex. 2014) ("[T]he agency rule that makes a client responsible for his lawyer's acts or omissions is founded on, at least, a voluntary relationship.").

Moreover, under Texas law, agreements that violate statutes or public policy, including the public policy expressed in the Texas Disciplinary Rules of Professional Conduct, are unenforceable. [5]   *Johnson v. McLeaish*, No. 05-94-01673-CV, 1995 WL 500308 at *3 (Tex. App.—Dallas Aug. 23, 1995) (not designated for publication); *Cruse v. O'Quinn*, 273 S.W.3d 766, 775 (Tex. App.—Houston [14th Dist.] Houston 2008) ("[A] court may deem these rules [of professional conduct] to be an expression of public policy, so that a contract violating them is unenforceable as against public policy.").   The contract for Estelle to represent Preyor clearly contemplated Jefferson's unauthorized practice

---

[5]   Because the contract is for legal services to be performed in Texas courts, it is governed by Texas law.   *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex. 1990) ("[T]he gist of

of law, and Estelle's assistance with the unauthorized practice of law, and therefore violated the Rules of Professional Conduct and Texas law.   *See* Tex. Disciplinary R. of Prof'l Conduct § 5.05; Tex. Gov't Code. Ann. § 81.101(a) (prohibiting the unauthorized "practice of law," defined to include "preparation of a pleading" and "the giving of advice or the rendering of any service requiring the use of legal skill or knowledge"); *Fadia v. Unauthorized Practice of Law Comm.*, 830 S.W. 2d 162, 165 (Tex. App.—Dallas 1992) ("The selling of legal advice is the practice of law.").   It was therefore invalid, and cannot be enforced against Preyor to find an agency relationship here.   *Cf. Holland*, 560 U.S. at 651 (noting that "professional misconduct" can "amount to egregious behavior and create an extraordinary circumstance").

Thus, like a petitioner who has been abandoned, Preyor cannot be held responsible for the grossly negligent acts and omissions of his former attorneys. This is a rare and extraordinary circumstance in which the very foundation of Jefferson and Estelle's relationship with Preyor was fraudulent.   The District Court therefore should have applied its equitable discretion to reopen Preyor's federal habeas petition to allow him to pursue his claims through qualified counsel. *See id.*, 560 U.S. at 650 (emphasizing the "flexibility inherent in equitable

---

the agreement in this case was the performance of personal services in Texas.   As a rule, that factor alone is conclusive in determining what state's law is to apply.")

procedure," which "enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices.") (quoting *Hazel-Atlas Glass Co.*, 322 U.S. at 248) (internal quotation marks omitted) (omissions in original).

### 3. Jefferson and Estelle's Fraudulent Scheme Undermines the Public's Confidence in the Judicial Process.

Under these extraordinary circumstances—where Estelle and Jefferson committed a fraud on the court and fraudulently induced their representation of Preyor—relief is warranted not only to do substantial justice for Preyor, but also to avoid "undermining the public's confidence in the judicial process." *Buck*, 137 S. Ct. at 777-778 (quoting *Liljeberg*, 486 U.S. at 863-864) (internal quotation marks omitted). As the U.S. Supreme Court has recognized, courts "must continually bear in mind that 'to perform its high function in the best way justice must satisfy the appearance of justice.'" *Liljeberg*, 486 U.S. at 864 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955) (internal quotation marks omitted).

A fundamental premise of the judicial system is that only licensed attorneys will practice in its courts. Indeed, the judicial system has imposed not only strict requirements for individuals' initial admission to the practice of law, but also stringent safeguards to ensure attorneys remain qualified after their admission. Just as the public's confidence is undermined by "even the appearance of [judicial] impropriety," *Liljeberg*, 486 at 864-865, the judicial system's integrity is

threatened when one of its officers is facilitating the unauthorized practice of law by a long-since disbarred attorney. And if ever there were a case where this conduct amounted to "extraordinary circumstances" requiring relief, it is this one, where the consequences of Estelle and Jefferson's fraud deprived a death-sentenced inmate from his one full and fair opportunity to secure federal habeas relief. *See Spaziano v. Florida*, 468 U.S. 447, 468 (1985) (Stevens, J. concurring in part and dissenting in part) ("[the] death penalty is qualitatively different . . . and hence must be accompanied by unique safeguards.").

### D. Reasonable Jurists Could Find that Preyor's Claim for Relief Under Rule 60(b)(6) Was Timely.

Both of Preyor's claims for relief under Rule 60(d)(3) and Rule 60(b) were timely. As the District Court correctly recognized, there is no strict time bar on an action to set aside a final judgment for fraud on the court. Order at 5; *see Hazel-Atlas*, 322 U.S. at 244; *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009); 11 Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2870 (3d ed. Apr. 2017 update) ("There is no time limit on setting aside a judgment" for fraud on the court). Indeed, as one of the court's inherent equitable powers, "the power to vacate for fraud on the court" is largely "free from procedural limitations." *Stonehill*, 660 F.3d at 443 (quoting 11 Charles A. Wright & Arthur R. Miller, Fed. Practice & Proc. § 2870 (3d ed. Apr. 2017 update)).

However, the District Court grossly erred as a matter of law in finding that Preyor's Rule 60(b) motion was untimely.   Preyor's independent request for relief under Rule 60(b)(6), based on extraordinary circumstances, was filed within a reasonable time, as that sub-part requires.   *See* Fed. R. Civ. P. 60(c).   As the District Court recognized: "Timeliness is measured as of the point in time when the moving party has grounds to make a Rule 60(b) motion, regardless of the time that has elapsed since the entry of judgment."   *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017) (quoting *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992) (alterations omitted)); *see also* Order at 7.   A Rule 60(b)(6) motion is timely made when there is "no indication that the movant was aware of the basis for making the motion yet sat idly by,"   *First RepublicBank*, 958 F.2d at 120 (citing *United States v. 119.67 Acres of Land*, 663 F.2d 1328 (5th Cir. 1981)), or when "good cause can be shown" for any delay.   *Clark*, 850 F.3d at 780 (quoting *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004)) (internal quotation marks omitted).   The Court measures timeliness not from the moment that it first becomes conceivable that grounds for relief might exist, but rather when the party learns that the grounds do in fact exist.   *See Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1051 (2d Cir. 1982), *cited in First RepublicBank*, 958 F.2d at 120.

In finding this claim untimely, the District Court disregarded and failed to mention at all the fact that its *own* actions iced over the investigation of Jefferson and Estelle's fraud for over nine months.  *See* July 15 Letter; Sept. 9 Letter. That is how long it took the District Court to approve a budget recommended by a magistrate judge—approval that it ultimately granted with no significant changes. Had the District Court been diligent in ruling on this issue, appointed counsel would have been able to complete the investigation it has started over the last two months since the budget was finally approved well in advance of Preyor's execution date.  Preyor should not be denied relief for Jefferson and Estelle's fraud because of the District Court's own delay.

Aside from the year it took for Preyor's budget request to proceed from the magistrate to this Court's final approval on May 12, 2017, Preyor diligently investigated the grounds for relief now presented in his Rule 60 Motion.  The District Court made much of Preyor's mother learning of Jefferson's disbarment in early 2015 and Hilary Sheard's appointment in March 2015.  *See* Order at 7. Yet while Preyor's mother learned of Jefferson's disbarment in 2015, that alone did not provide the factual basis to support a claim for relief under Rule 60.  First, it is no small thing to argue that another member of the bar committed the acts we discuss herein; it was Preyor's counsel's ethical obligation to seek and obtain proof of it, which counsel did.  *See* Fed. R. Civ. P. 11(b).  The question of whether

extraordinary circumstances exist under Rule 60(b)(6) is a highly fact-intensive inquiry, *see Seven Elves*, 635 F.2d at 402, requiring counsel to investigate the full circumstances of Jefferson's involvement in the case in order to present a credible motion.    Once she was appointed in March 2015, Hilary Sheard worked diligently to assess the case and to investigate the facts of Estelle and Jefferson's fraud, reviewing files from multiple jurisdictions and obtaining records from several courts.    *See* July 15 Letter (detailing counsel's efforts from March 2015 through mid-2016).    The District Court apparently concluded that Hilary Sheard had all of necessary facts at her disposal by April 2016 when she mentioned past counsels' potential misconduct in submitting her proposed budget.    *See* Order at 7.    But this ignores the fact that Hilary Sheard was requesting more resources to explore an *inference* of fraud, and that this was an issue she could not present without a thorough investigation.

Lastly, the District Court erroneously asserted that the Rule 60(b) motion was untimely because the motion was filed only two weeks before execution despite "the substantial amount of time, money, and professional assistance," spent on Preyor's case.    Order at 7.    Again, the District Court ignored its own hand in the timing of the motion.    The overwhelming bulk of these efforts were not possible until May 2017—because of the District Court's own delay—when Hilary Sheard's budget was finally approved and when co-counsel was appointed.    And

once the budget was approved in May 2017, appointed counsel likewise continued the investigation as quickly as possible, interviewing over twenty witnesses in just over six weeks, engaging two mitigation specialists and a neuropsychologist, and performing extensive research to support Preyor's claims.

It is therefore at least debatable that Preyor's claim for relief under Rule 60(b)(6) was "timely."  They were brought as expeditiously as possible under the circumstances, once counsel was given a budget in May of this year to support their efforts.

### E. Preyor's Claim of Ineffective Assistance of Trial Counsel is Substantial.

The equities in this case require that this Court restore Preyor to the position he was in before Jefferson and Estelle fraudulently initiated federal habeas proceedings on his behalf.  *See supra* Argument § A-D.  Once Preyor is restored to that position, he will finally have a fair opportunity to raise a compelling claim of ineffective assistance of counsel under *Wiggins*, 539 U.S. 510—a claim that none of his former attorneys bothered to investigate.  Given the deficiencies of trial counsel's mitigation investigation, there is a high likelihood that Preyor's underlying claim would succeed if given the opportunity to present it.  *See Seven Elves*, 635 F.2d at 402 (identifying "the[ ] . . . merit in the movant's claim or defense" as a factor informing whether Rule 60 relief is appropriate).

As detailed in Preyor's Rule 60 Motion, at 32-42, the failure of his trial counsel in charge of the sentencing phase, Michael Gross, were multiple. He refused to hire a mitigation specialist to assist with the extensive, multi-state investigation required for Preyor's case; failed to investigate known red flags regarding Preyor's traumatic childhood; and declined to interview the appropriate family members regarding physical and sexual abuse, among other issues. Gross' performance thus fell far below the minimum constitutional standards for mitigation investigation. *See Wiggins*, 539 U.S. at 524 (counsel must engage in "efforts to discover *all reasonable available* mitigating evidence").

Had the jury been presented with the mitigation evidence that Gross failed to uncover, there is far more than a "reasonable probability that [the jury] would have returned with a different sentence," as required to show *Strickland* prejudice. *Id*, 539 U.S. at 536; *see also* Rule 60 Motion at 42-52. The jury would have heard that Preyor suffered severe physical and sexual abuse by family members as a child—including an incident where he was hospitalized with two broken ankles and a broken hand after jumping from the fourth floor of his apartment building to escape his mother, who was chasing him with a knife. *Id.* at 42-46. And it would have heard that Preyor had resulting struggles with alcohol and drug addiction, and how that affected his executive functioning at the time of the crime.

*Id.* at 46-48.    All this would have far outweighed the State's minimal aggravating evidence.    *Id.*at 49.

Thus, as Texas Court of Criminal Appeals Judge Elsa Alcala recently found, Preyor has a "substantial claim" that Gross was "ineffective by failing to investigate and present mitigation evidence that would have significantly altered the sentencing profile before the jury."    Dissenting Opinion, *Ex Parte TaiChin Preyor*, No. WR-72,660-04, at *2 (Tex. Ct. Crim. App. July 24, 2017).    Because the District Court's denial of Rule 60 relief erroneously deprived him of the opportunity to present this claim, a certificate of appealability is warranted.    *See Miller-El*, 537 U.S. at 336 (COA required where petitioner makes "a substantial showing of a constitutional right").

## CONCLUSION

Unless this Court steps in to halt it, TaiChin Preyor will be executed Thursday without *any* court ever hearing evidence of the deficient performance of his sentencing counsel, and without *any* fact finder ever hearing meritorious mitigation evidence.    Whatever this Court may ultimately conclude about the merits of Preyor's appeal, it should at least grant a certificate of appealability and stay Preyor's execution to allow full consideration of the complex factual and legal issues presented in this case.

Respectfully submitted,

Date: July 25, 2017

/s/ Catherine E. Stetson
Catherine E. Stetson
Elizabeth C. Lockwood
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com
elizabeth.lockwood@hoganlovells.com

Mark E. Olive
320 W. Jefferson Street
Tallahassee, FL 32301
(850) 224-0004
meolive@aol.com

Hilary Sheard
Texas Bar # 50511187
7421 Burnet Road, #300-512
Austin, TX 78757
(512) 524-1371
HilarySheard@hotmail.com

*Counsel for Petitioner TaiChin Preyor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2017, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system.   Notice of this filing and its viewing and downloading are thereby provided to all counsel of record by cooperation of the CM/ECF system.

/s/ Catherine E. Stetson
Catherine E. Stetson

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,994 words, excluding the parts of the brief exempted by Federal Rule Appellate Procedure 32(f) and the parts of the brief exempted by Fifth Circuit Rule 32.2.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced type face in 14-point Times New Roman font.


Dated:   July 25, 2017                    /s/ Catherine E. Stetson
                                          Catherine E. Stetson

## STATEMENT PURSUANT TO FIFTH CIRCUIT RULE 8.10

As this Application and Preyor's brief discuss, the action below was filed as soon as possible, today July 25, 2017.    Petitioner's Rule 60 Motion was filed on July 14, 2017, a little over two months after Petitioner's pending $45,000 budget received final approval from this Court, permitting Petitioner to advance his investigation that had been on hold for nearly a year.    Yesterday, this Court denied that claim.

In light of the above, counsel did everything in their power to file in the court below as soon as possible and without delay, while simultaneously meeting their own ethical responsibilities to their client.    Counsel respectfully submit that these circumstances meet and comply with the standards set out in Fifth Circuit Rule 8.10.

Respectfully Submitted,


*/s/ Catherine E. Stetson*
Catherine E. Stetson