# Attachment 1

Relevant State Court Opinions Submitted Pursuant to Fifth Circuit Rule 8.1(h):

- Order Denying Application for Writ of Habeas Corpus, *Ex Parte Taichin Preyor*, Nos. WR-72660-01, WR-72660-02 (Tex. Ct. Crim. App. Oct. 28, 2009).

- Order Dismissing Application for Writ of Habeas Corpus, *Ex Parte TaiChin Preyor*, No. WR-72660-03 (Tex. Ct. Crim. App. Nov. 9, 2011).

- Order Dismissing Application for Writ of Habeas Corpus, Concurring Opinion, and Dissent, *Ex Parte TaiChin Preyor*, No. WR-72,660-04 (Tex. Ct. Crim. App. July 24, 2017).

2009 WL 3474097
Only the Westlaw citation is currently available.

UNDER TX R RAP RULE 77.3, UNPUBLISHED
OPINIONS MAY NOT BE CITED AS AUTHORITY.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

### ORDER
### Do Not Publish
Court of Criminal Appeals of Texas.

Ex parte Taichin PREYOR.

Nos. WR-72660-01, WR-72660-02.
|
Oct. 28, 2009.

On Application for writ of Habeas Corpus, In Cause
No.2004-CR-3602, In the 290th District Court, Bexar
County.

### ORDER

PER CURIAM.

 **\*1** These are post conviction applications for writ of
habeas corpus filed pursuant to the provisions of Texas
Code of Criminal Procedure article 11.071.

In March 2005, a jury convicted applicant of the
offense of capital murder committed in February
2004. The jury answered the special issues submitted
pursuant to Texas Code of Criminal Procedure article
37.0711, and the trial court, accordingly, set punishment

at death. This Court affirmed applicant's conviction
and sentence on direct appeal. *Preyor v. State,* No.
AP-75,119 (Tex.Crim.App. Jan. 23, 2008)(not designated
for publication). On November 30, 2007, applicant,
through appointed counsel, timely filed in the trial court
his initial application for writ of habeas corpus pursuant
to Article 11.071. On December 1, 2008, applicant,
through retained counsel, filed another application for
writ of habeas corpus. Both of Applicant's writs were
received in this Court on September 9, 2009. In his initial
writ, applicant presents 11 allegations challenging the
validity of his conviction and resulting sentence. The trial
court held a live evidentiary hearing in which no evidence
was presented. The trial court entered findings of fact and
conclusions of law recommending that the relief sought be
denied.

This Court has reviewed the record with respect to the
allegations made by applicant. We adopt the trial judge's
findings and conclusions with the exception of finding no.
1 on page 15, which we explicitly reject. Based upon the
trial court's findings and conclusions and our own review,
we deny relief.

Applicant's December 1, 2008 filing is a subsequent
application that must be reviewed under Article 11.071,
Section 5(a). We have reviewed the five claims which allege
ineffective assistance of appellate counsel. Applicant's
claims fail to meet the dictates of Article 11.071, § 5.
Accordingly, we dismiss his subsequent application.

IT IS SO ORDERED.

**All Citations**

Not Reported in S.W.3d, 2009 WL 3474097

2011 WL 5438390

2011 WL 5438390
Only the Westlaw citation is currently available.

UNDER TX R RAP RULE 77.3, UNPUBLISHED
OPINIONS MAY NOT BE CITED AS AUTHORITY.

### ORDER
**Do Not Publish**
Court of Criminal Appeals of Texas.

Ex parte Taichin PREYOR.

No. WR–72660–03.
|
Nov. 9, 2011.

On Application for Writ of Habeas Corpus in Cause
No.2004–CR–3602, In The 290th District Court, Bexar
County.

### ORDER

PER CURIAM.

 **\*1** This is a subsequent application for writ of habeas
corpus filed pursuant to the provisions of Texas Code of
Criminal Procedure Article 11.071, § 5.

In March 2005, a jury convicted applicant of the offense
of capital murder committed in February 2004. The jury
answered the special issues submitted pursuant to Texas
Code of Criminal Procedure article 37.0711, and the trial
court, accordingly, set punishment at death. This Court
affirmed applicant's conviction and sentence on direct
appeal. *Preyor v. State,* No. AP–75,119 (Tex.Crim.App.
Jan. 23, 2008)(not designated for publication). This Court
denied applicant's initial post-conviction application
for writ of habeas corpus and dismissed his first
subsequent application. *Ex parte Preyor,* Nos. WR–
72,660–01 & WR72,660–02 (Tex.Crim.App. Oct. 28,
2009)(not designated for publication). Applicant's instant
post-conviction application for writ of habeas corpus was
received in this Court on October 6, 2011.

Applicant presents seven allegations. We have reviewed
the application and find that applicant's allegations fail to
satisfy the requirements of Article 11.071 § 5. Accordingly,
we dismiss the application as an abuse of the writ without
considering the merits of the claims.

IT IS SO ORDERED.

**All Citations**

Not Reported in S.W.3d, 2011 WL 5438390

---

    © 2017 Thomson Reuters. No claim to original U.S. Government Works.



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-72,660-04

### EX PARTE TAICHIN PREYOR, Applicant

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS AND MOTION TO STAY THE EXECUTION IN CAUSE NO. 2004CR3602-W4 IN THE 290TH JUDICIAL DISTRICT COURT BEXAR COUNTY

*Per curiam*. NEWELL, J., filed a concurring opinion in which HERVEY and RICHARDSON, JJ., joined. ALCALA, J., filed a dissenting opinion.

## O R D E R

We have before us a post-conviction application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071 § 5 and a motion to stay applicant's execution.

In March 2005, a jury convicted applicant of the offense of capital murder for murdering a person in the course of committing or attempting to commit burglary. TEX.

PENAL CODE § 19.03(a)(2).  The offense was committed in February 2004.  The jury

answered the special issues submitted pursuant to Texas Code of Criminal Procedure

Article 37.071, and the trial court, accordingly, set punishment at death.  This Court

affirmed applicant's conviction and sentence on direct appeal.  *Preyor v. State*, No. AP-

75,119 (Tex. Crim. App. Jan. 23, 2008)(not designated for publication).  On November

29, 2007, applicant filed in the trial court his initial post-conviction application for a writ

of habeas corpus in which he raised eleven claims.  His first subsequent writ application

was filed in the trial court December 1, 2008.  This Court denied applicant relief on the

claims raised in his initial writ application and dismissed his first subsequent application.

*Ex parte Preyor*, Nos. WR-72,660-01 and WR-72,660-02 (Tex. Crim. App. Oct. 28,

2009)(not designated for publication).  On December 21, 2009, applicant filed in the

convicting court his second subsequent application.  This Court also dismissed that

application.  *Ex parte Preyor*, No. WR-72,660-03 (Tex. Crim. App. Nov. 9, 2011)(not

designated for publication).

On July 18, 2017, applicant filed in the trial court his third subsequent application.

In this application, applicant asserts that his trial counsel provided ineffective assistance

of counsel because they failed to provide the robust mitigation investigation required by

*Wiggins v. Smith*, 539 U.S. 510 (2003).

After reviewing applicant's writ application, we find that he has failed to satisfy

the requirements of Article 11.071 § 5.  Accordingly, we dismiss his writ application

Preyor - 3

without reviewing the merits of his claims, and we deny his motion to stay his execution.

IT IS SO ORDERED THIS THE 24th DAY OF JULY, 2017.

Publish



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-72,660-04

### EX PARTE TAICHIN PREYOR, Applicant

## ON APPLICANT'S SUBSEQUENT APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS

**NEWELL, J., filed a concurring opinion in which HERVEY and RICHARDSON, JJ., joined.**

I join the Court's order dismissing Applicant's third subsequent writ.

I write separately to note that Applicant is not arguing that this is actually

his first state-court writ because his initial state-court writ counsel did not

file a proper "application."  *See Ex parte Medina*, 361 S.W.3d 633, 641

(Tex. Crim. App. 2011).  State habeas counsel filed a proper application

that alleged specific facts supporting that application.  At the evidentiary

hearing, it was Applicant who instructed writ counsel not to present any

Preyor Concurring Opinion - 2

testimony. *See Preyor v. Stephens*, 537 Fed. Appx. 412, 418 (5th Cir. July 25, 2013) (not designated for publication)(noting that Applicant testified under oath that he no longer wished to pursue his initial writ and wanted instead to pursue the writ prepared by retained writ counsel). This was not a "Machiavellian strategy" designed by habeas counsel to thwart the proper statutory procedure for filing a death penalty writ. *Medina*, 361 S.W.3d at 643.    This was Applicant's choice.    Even if Applicant had made the argument that he is entitled to file this third subsequent writ application as his first, *Ex parte Medina* would not justify that holding.

Instead, Applicant argues that this application is a subsequent writ application but it should not be dismissed as subsequent because state habeas counsel's failure to raise his current claim in the initial writ amounted to ineffective assistance of habeas counsel.    Applicant acknowledges that this Court's decision in *Ex parte Graves* would preclude such a holding.    *See Ex parte Graves*, 70 S.W.3d 103, 111 (Tex. Crim. App. 2002)(holding that a habeas applicant cannot claim constitutionally ineffective assistance of counsel in a post-conviction habeas corpus proceeding because there is no constitutional right to appointment of counsel in a post-conviction habeas corpus proceeding).    Nevertheless,

Preyor Concurring Opinion - 3

Applicant argues that we should overrule *Graves* in light of the United States Supreme Court holdings in *Martinez v. Ryan* and *Trevino v. Thaler*.

Recently, the United States Supreme Court made clear that the *Martinez-Trevino* exception to state procedural default in federal habeas corpus cases is a federal equitable exception not a constitutional mandate applied to the states. *Davila v. Davis*, ___ U.S. ___, 137 S.Ct. 2058 (June 26, 2017). There, the United States Supreme Court reiterated not only that there is no constitutional right to counsel in state post-conviction proceedings, but also that *Martinez v. Ryan* did not recognize one. *Id*. at 2065 ("It follows, then, that in proceedings for which the Constitution does not guarantee the existence of counsel at all, attorney error cannot provide cause to excuse a default."). Faced with the opportunity to expand the *Martinez-Trevino* exception to claims beyond those involving ineffective assistance of trial counsel, the Court declined the invitation. *Id.* at 2066.

Indeed, courts have uniformly recognized that the *Martinez-Trevino* rule is a federal exception not a constitutional command to correct state court habeas proceedings. More specifically, courts have held that *Martinez* does not provide a basis for state courts to excuse petitioners from compliance with state procedural rules. *See e.g., State v. Sabin*, No.

Preyor Concurring Opinion - 4

2 CA-CR 2014-0014-PR, 2014 WL 2657526, at *2 (Ariz. Ct. App. June 12, 2014) (not designated for publication); *Adkins v. State*, 469 S.W.3d 790, 795 (Ark. 2015); *Bunting v. State*, 113 A.3d 1080 (Del. 2015); *Kormondy v. State*, 154 So. 3d 341, 354 (Fla. 2015); *Ah Sing v. State*, 318 P.3d 621 (Haw. Ct. App. 2014) (unpublished table decision); *Schultz v. State*, 362 P.3d 561, 565 (Idaho Ct. App. 2015); *People v. Sutherland*, 994 N.E.2d 185, 191-92 (Ill. App. Ct. 2013); *Holt v. State*, 364 P.3d 579 (Kan. Ct. App. 2016); *Shane v. Commonwealth*, No. 2012-CA-000914-MR, 2013 WL 6198353, at *5 (Ky. Ct. App. Nov. 27, 2013) (not designated for publication); *State v. McBroom*, 142 So. 3d 59, 60 (La. Ct. App. 2014); *Evans v. State*, 868 N.W.2d 227, 230 (Minn. 2015); *Salter v. State*, 184 So. 3d 944, 950 (Miss. Ct. App. 2015); *Mason v. State*, 488 S.W.3d 135, 142 (Mo. Ct. App. 2016); *Sanchez v. State*, 285 P.3d 540, 544 (Mont. 2012); *State v. Hessler*, 850 N.W.2d 777, 786 (Neb. 2014); *Brown v. McDaniel*, 331 P.3d 867, 871 (Nev. 2014); *Lehman v. State*, 847 N.W.2d 119, 125-26 (N.D. 2014); *State v. Taylor*, No. 102020, 2015 WL 1511036, at *3 (Ohio Ct. App. April 2, 2015) (not designated for publication); *Cunningham v. Premo*, 373 P.3d 1167, 1177-78 (Or. Ct. App. 2016); *Commonwealth v. Merritt*, No. 2085 EDA 2014, 2015 WL 7194410, at *2 (Pa. Super. Ct. May 28, 2015) (not designated for

Preyor Concurring Opinion - 5

publication); *Kelly v. State*, 745 S.E.2d 377, 377-78 (S.C. 2013); *Niles v. State*, No. M2014-00147-CCA-R3-PC, 2015 WL 3453946, at *7 (Tenn. Crim. App. June 1, 2015) (not designated for publication).  If *Martinez* had been intended to correct state procedures, the United States Supreme Court would not have allowed Arizona to continue following the very state court procedures at issue in *Martinez*.  *See Arizona v. Escareno-Meraz*, 307 P.3d 1013, 1014 (Ariz. Ct. App. 2013) ("Thus, *Martinez* does not alter established Arizona law."), *cert. denied*, 134 S.Ct. 1943 (2014).

Applicant makes a number of claims regarding the representation by his retained federal writ counsel, particularly regarding her involvement in the state habeas proceedings.  Yet, for Applicant to prevail, he must not only show the deficient conduct of writ counsel, he must also demonstrate prejudice by showing a reasonable probability that his claim regarding trial counsel would be meritorious.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (noting that the test for prejudice requires a showing that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different); *see also Martinez*, 566 U.S. at 14 (holding that a prisoner may establish cause for a default for an ineffective assistance claim when the prisoner can establish that appointed counsel on the initial-review collateral proceeding was

Preyor Concurring Opinion - 6

ineffective under the standards of *Strickland v. Washington*).  Trial counsel in this case filed a credible affidavit not only disputing claims that he conducted a cursory investigation, but also explaining that he repeatedly sought information regarding physical and sexual abuse of the Applicant. Neither Applicant nor his family or friends indicated such evidence existed. *See Ex parte Martinez*, 195 S.W.3d 713, 729 (Tex. Crim. App. 2006) (holding that trial counsel's decision not to further pursue an investigation into the defendant's background was reasonable given the lack of cooperation he received from the defendant and the defendant's family). Even applying the *Martinez-Trevino* exception here, Applicant has not shown a reasonable probability that he would have been entitled to relief.

Nevertheless, the United States Supreme Court has indicated that these types claims can be litigated in federal court.  The Court may, at some future date, constitutionalize the holdings of *Martinez* and *Trevino* and proclaim that the Sixth Amendment requires the appointment of counsel in a post-conviction habeas proceeding.  Perhaps this is the case where they will do so given the involvement of federal writ counsel in the state habeas proceedings.  But it is up to the United States Supreme Court to overrule its precedent, not this Court.  *Bosse v. Oklahoma*, __ U.S. __, 137 S.Ct. 1, 2 (2016) (holding that it is the United States Supreme Court's

Preyor Concurring Opinion - 7

prerogative alone to overrule one of its precedents).  Consequently, I agree with the Court's application of current law to the facts of this case, and I join the Court's order dismissing Applicant's subsequent writ application and denying his motion to stay the execution.

Filed: July 24, 2017

Publish



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-72,660-04

### EX PARTE TAICHIN PREYOR, Applicant

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS AND MOTION TO STAY THE EXECUTION IN CAUSE NO. 2004CR3602-W4 IN THE 290TH DISTRICT COURT BEXAR COUNTY

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

Taichin Preyor, applicant, is scheduled to be executed for capital murder later this week, and he has filed a motion to stay his execution. I would grant his motion for two reasons. First, I would file and set this case to determine whether this Court should overrule the portion of *Ex parte Graves* that disallows review of claims of ineffective assistance of trial counsel that are raised in a subsequent writ application, including when those claims were not presented due to ineffective assistance of the initial habeas counsel. *See* 70 S.W.3d 103, 117 (Tex. Crim. App. 2002). Second, assuming that this Court would overrule *Graves*,

Preyor - 2

I would then remand this case to the habeas court for it to assess the credibility of applicant's newly raised mitigation evidence that asserts that he was the victim of extreme physical and sexual abuse as a child—evidence that was never heard by the jury during the punishment phase of his trial. Although the instant habeas application has been designated by this Court as the fourth habeas application ("-04") filed by applicant, it is actually the first one effectively challenging his death sentence for capital murder under Article 11.071. *See* TEX. CODE CRIM. PROC. art. 11.071. Due to procedural anomalies in this case, none of applicant's three prior habeas applications identified as the -01, -02 and -03 applications, which this Court either denied on the merits or dismissed as procedurally barred subsequent habeas applications, effectively challenged his death sentence for capital murder. *See Ex parte Preyor*, No. WR-72,660-01 & WR-72,660-02, 2009 WL 3474097, at *1 (Tex. Crim. App. Oct. 28, 2009) (per curiam); *Ex parte Preyor*, No. WR-72,660-03, 2011 WL 5438390, at *1 (Tex. Crim. App. Nov. 9, 2011) (per curiam). The instant -04 habeas application presents the first and only real opportunity for this Court to address applicant's substantial claim for which he has made a prima facie case that trial counsel was ineffective by failing to investigate and present mitigation evidence that would have significantly altered the sentencing profile before the jury. Thus, I would remand this case to the habeas court for an evidentiary hearing and for findings of fact and conclusions of law on the merits of the allegations of ineffective assistance of counsel as to the failure to conduct an adequate investigation for mitigation evidence. I, therefore, respectfully dissent from this Court's

order denying applicant's motion to stay his execution and dismissing the instant habeas application.

## I. This Court Should Not Dismiss Applicant's Instant Habeas Application but Should Instead Consider Its Substance

This Court's order holds that the instant -04 habeas application is procedurally barred because it is a subsequent application under Section Five of Article 11.071. *See* TEX. CODE CRIM. PROC. art. 11.071, § 5. The instant application asserts that trial counsel was ineffective for failing to conduct a reasonable investigation for mitigating evidence that would have significantly changed the sentencing profile shown to the jury and that applicant is accordingly entitled to a new trial on punishment. *See Wiggins v. Smith*, 539 U.S. 510, 533 (2003). The application further asserts that, although this claim is raised in a subsequent habeas application, the claim is nevertheless entitled to consideration on its merits because it was forfeited as a result of ineffective assistance by initial habeas counsel, who failed to timely present the claim to this Court in the -01 application. This Court, however, has held in *Ex parte Graves* that a claim of ineffective assistance of habeas counsel cannot serve to overcome the bar on subsequent writs in Section Five of Article 11.071. *See Graves*, 70 S.W.3d at 117. For the four reasons discussed below, I conclude that applicant should be permitted to have an evidentiary hearing on remand to address the merits of his complaint that substantial mitigating evidence warranting a sentence of life rather than death exists and that his trial attorney was ineffective for failing to discover and present that evidence. First, a portion of *Graves* was wrongly decided, and it should be overruled to permit litigation of

a claim that trial counsel rendered ineffective assistance of counsel and that habeas counsel was ineffective in failing to present that claim in the initial habeas application.  Second, this record plainly shows that initial habeas counsel performed ineffectively during applicant's -01 writ proceeding by abandoning applicant at the live hearing on the initial habeas application.  Third, the subsequent -02 and -03 habeas applications are inconsequential in this case because they cannot be a proper basis for applying a procedural bar against a properly filed subsequent habeas application due to the fact that they were filed by a foreign attorney, who had no permission to practice law before this Court and who had not obtained applicant's informed consent to file on his behalf as a non-lawyer.  Fourth, applicant has now made a prima facie case of ineffective assistance of trial counsel in the punishment phase of trial due to counsel's failure to investigate and present evidence of severe physical and sexual abuse of applicant by his relatives during his childhood.  Given these four circumstances, I would remand this case to the habeas court for a live hearing to fully test the quality of the evidence presented in the instant habeas application.

## A.  *Graves* Was Wrongly Decided and Should Be Overruled

The time is overdue for this Court to overrule *Graves*, in which this Court held that a claim of ineffective assistance of prior habeas counsel is not cognizable in a capital habeas proceeding and may not serve as a basis to overcome procedural default so as to permit consideration of a claim raised in a subsequent writ.  *See Graves*, 70 S.W.3d at 117-18.  I would instead hold that, when an applicant can demonstrate that initial habeas counsel's

performance fell below the minimum standards for representation set forth in Article 11.071, and when an applicant can demonstrate that, as a result of counsel's incompetence, a substantial claim for relief was forfeited, this Court may properly exercise its habeas jurisdiction to consider the merits of the underlying claim.

The pertinent statutory language set forth by the Legislature supports my view that this Court must overrule a portion of *Graves*. Reading Sections 2(a) and 3(a) of Article 11.071 of the Code of Criminal Procedure in conjunction, those sections suggest that appointed counsel in an Article 11.071 proceeding must demonstrate a minimum level of competence in his representation of an applicant and in his investigation of any factual or legal bases for relief. *See* TEX. CODE CRIM. PROC. art. 11.071, §§ 2(a), 3(a). Section 2(a) provides that "[a]n applicant shall be represented by competent counsel unless the applicant has elected to proceed pro se and the convicting trial court finds, after a hearing on the record, that the applicant's election is intelligent and voluntary." *Id.* § 2(a). Section 3(a) provides that, "On appointment, counsel shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus." *See id.* § 3(a). Thus, the statute's phrasing that an applicant be "represented" by competent counsel who "shall investigate expeditiously" the factual and legal grounds for habeas relief suggests that an applicant's entitlement to competent counsel extends throughout the course of representation rather than merely providing for appointment of counsel who is "competent" at the time of appointment, as this

Preyor - 6

Court held in *Graves*, 70 S.W.3d at 114. *Graves*'s determination that Article 11.071's reference to "competent" counsel "concern[s] the initial appointment of counsel and continuity of representation rather than the final product of representation" mistakenly ignores the statutory language that refers to counsel's competence during the totality of his representation of a habeas applicant. *Id.* In light of these two statutory requirements in Article 11.071, I would hold that an applicant for habeas corpus relief under Article 11.071 is statutorily entitled to, at a minimum, competent representation by appointed habeas counsel throughout the duration of the initial writ proceeding. *See* TEX. CODE CRIM. PROC. art. 11.071, §§ 2(a), 3(a).

Not only does the language in Article 11.071 plainly require competent representation by appointed habeas counsel, but this Court has observed that the statute's legislative purpose was to provide capital habeas litigants "one full and fair opportunity to present all [] claims in a single, comprehensive post-conviction writ of habeas corpus[.]" *Graves*, 70 S.W.3d at 117. An applicant whose initial habeas counsel rendered ineffective assistance by failing to present a substantial claim for relief that could affect either the guilt or punishment outcome in a death penalty case has been deprived of his one full and fair opportunity to present all of his constitutional claims. This Court's holding in *Graves* precluding consideration of claims forfeited due to ineffective habeas counsel conflicts with the underlying purpose of Article 11.071 to ensure competent representation for capital habeas litigants so that all of their claims may be fully and fairly litigated in a single habeas proceeding.

Despite the plain statutory language and consideration of the purpose of the statute in favor of requiring competent representation by initial habeas counsel, this Court in *Graves* mistakenly concluded that a capital habeas applicant was not entitled to competent representation by relying on the general principle that a habeas applicant has no broad federal constitutional right to effective assistance of habeas counsel. *See Graves*, 70 S.W.3d at 116. In *Graves*, this Court stated, "If the federal constitution and federal statutes *bar* any claim of ineffective assistance of counsel on a writ of habeas corpus in federal courts, we cannot conclude that this same federal constitution *requires* Texas courts to recognize such a claim under state law." *Id*. This Court's analysis, however, mistakenly overlooked the fact that, although the federal Constitution may not compel competent representation, Article 11.071 might do so.   And so, while it is true that the Supreme Court has never held that a habeas applicant is constitutionally entitled to competent representation in a post-conviction proceeding,[1] the lack of a federal constitutional right is immaterial in light of the fact that the Texas Legislature has expressly created a statutory right to competent representation by habeas counsel in death penalty cases under Article 11.071. *See* TEX. CODE CRIM. PROC. art. 11.071, §§ 2(a), 3(a).   The absence of a federal constitutional right to effective habeas counsel cannot be a rational basis for deciding that the Texas Legislature has not created that state right in Article 11.071 to ensure competent representation on habeas review for capital murder defendants who are sentenced to death.

---

[1] *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

Preyor - 8

I further conclude that this Court's analysis in *Graves* was flawed in that it improperly conflated procedure with substance by holding that a violation of Article 11.071 was not cognizable in a capital habeas proceeding because it was a mere statutory violation rather than a violation of a constitutional right. *See Graves*, 70 S.W.3d at 116-17. While it is true that an Article 11.071 violation is statutory and may not itself be a proper basis for habeas relief from a conviction or sentence, it is not true that such a violation is inconsequential for purposes of deciding whether a procedural bar will be erected to preclude review of a substantive constitutional violation that is a proper basis for habeas relief, such as ineffective assistance of trial counsel, as here. In *Graves*, this Court held that statutory violations of Article 11.071 "simply are not cognizable" because habeas is reserved for constitutional or jurisdictional claims. *See id.* (holding that claim of violation of Article 11.071 was "not [ ] constitutional," but rather was "based solely upon an alleged violation of the habeas statute itself," and thus it was not cognizable). I disagree with that analysis because the substantive relief comes from the federal constitutional violation premised on ineffective assistance of trial counsel, and the Article 11.071 violation is merely the procedural vehicle by which to reach the constitutional matter. I, therefore, would consider a violation of the statutory requirements in Article 11.071 providing for competent representation by habeas counsel for death-sentenced defendants as the procedural vehicle for permitting substantive review of an otherwise procedurally barred habeas complaint that trial counsel was ineffective.

My analysis is not dependent on but is influenced by two recent Supreme Court

Preyor - 9

decisions, *Martinez v. Ryan,* 566 U.S. 1, 132 S. Ct. 1309, 1320 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). In *Martinez* and *Trevino*, the Supreme Court recognized for the first time that, although ineffective assistance of post-conviction habeas counsel may not constitute a constitutional violation that would provide a freestanding basis for relief from a conviction or sentence, the issue of habeas counsel's performance is nevertheless relevant in a subsequent post-conviction proceeding when it answers the preliminary question of whether an underlying claim should be procedurally barred. *See Trevino*, 133 S. Ct. at 1921; *Martinez*, 566 U.S. at 14. Recognizing that the holdings of *Martinez* and *Trevino* apply only in federal court, I nonetheless submit that the rationale underlying those decisions applies with equal force to this Court's own treatment of certain claims for post-conviction relief, in particular, claims of ineffective assistance of counsel that are raised for the first time in a subsequent habeas application. In *Martinez*, the Supreme Court stated that, to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement [] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Martinez*, 566 U.S. at 9. The Supreme Court reasoned that habeas counsel's ineffectiveness may serve as a basis for excusing procedural default because, when the habeas proceeding represents the first meaningful opportunity for a prisoner to raise an ineffective-assistance-of-trial-counsel claim, that proceeding becomes more like a direct appeal as to that claim—it is the prisoner's first and only opportunity to raise that claim with

the assistance of counsel. *Martinez*, 566 U.S. at 11. In the absence of an exception to the normal procedural-default rules, the Supreme Court observed that an attorney's errors in the initial habeas proceeding in failing to present a substantial ineffective-assistance claim may forever deprive a defendant of any review whatsoever of that claim in any court, state or federal. *Id.* at 10. This possibility, the Court noted, was of "particular concern" in light of the fact that the right to effective assistance of counsel at trial is a "bedrock principle in our justice system." *Id.* (citing *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)). Without the federal equitable exception, Texas's post-conviction system would create "significant unfairness" if habeas counsel's ineffectiveness could not serve as basis for excusing procedural default. *See Trevino*, 133 S. Ct. at 1919. This concern with significant unfairness inherent in the current interpretation of this State's statutory scheme in Article 11.071 underlies my persistence in calling for this Court to overrule the offending portion of *Graves*.

Taking all of these matters into consideration, I would overrule this Court's precedent in *Graves* that prohibits consideration of habeas counsel's ineffectiveness as a basis to overcome procedural default under these circumstances, and I would permit applicant to litigate his claim on the merits, notwithstanding the provisions of Section Five of Article 11.071. Although I recognize that Section Five of Article 11.071 precludes consideration of claims raised in subsequent habeas applications that fail to meet certain requirements, that statutory provision must be examined in the context of the totality of that statute that presumes that there has been compliance with the guarantee of competent representation in

Preyor - 11

an initial habeas application.  Examining the text of the statute as a whole, it plainly indicates

that the Legislature intended to provide for competent representation in an initial habeas

application to ensure that death-sentenced defendants have a full habeas review of their

cases.  In light of that legislative purpose, it seems absurd to interpret Section Five as entirely

disallowing any habeas review of a subsequent application at all when a defendant has been

completely denied any competent representation in the initial habeas application due to, as

here, for example, abandonment by initial habeas counsel.  *See* TEX. CODE CRIM. PROC. art.

11.071,§§ 2(a), 3(a), 5(a).   Rather, examining the statute as a whole suggests that the

Legislature's intent was for the Section Five procedural bar to apply to subsequent habeas

applications only when there has been substantial compliance with the other terms in the

statute that require competent representation in the first place.

I note briefly here that I do not lightly suggest that this Court should overrule the

precedent in *Graves* that has been in place for about fifteen years.   This Court, however, in

*Ex parte Medina*, has already taken steps to undermine our holding in *Graves*.  *See Ex parte*

*Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011) (per curiam).  In *Medina*, this Court held

that appointed habeas counsel's failure to file an application that alleged facts in support of

the legal claims was not a "proper" application and thus it determined that the initial filing

would not count as Medina's one bite at the habeas apple.  *Id.* at 642.  This Court reasoned

that, due to counsel's failure to present adequate pleadings, Medina had "not had his 'one full

and fair opportunity to present his constitutional or jurisdictional claims in accordance with

the procedures of [Article 11.071].'" *Id.* at 642 (quoting *Ex parte Kerr*, 64 S.W.3d 414, 419

(Tex. Crim. App. 2002)).    If Article 11.071 merely required the appointment of competent

counsel, as this Court suggested in *Graves*, then this Court in *Medina* would not have held

that counsel's filing of an inadequate habeas application was a proper basis to dismiss that

application, appoint new counsel, and permit applicant another opportunity to file his initial

writ application. *See id.* at 643.  I note further that it appears that a majority or near majority

of the judges on this Court have questioned whether *Graves* should remain good law.  *See,*

*e.g., Ex parte Ruiz*, __S.W.3d__, 2016 WL 6609721, at *18 (Tex. Crim. App. Nov. 9, 2016)

(observing that the "consequences resulting from the poor performance" of habeas counsel

in that case "may highlight the need to revisit our holding in *Graves,*" but declining to reach

the *Graves* issue under the facts of that case). Given that this Court has already suggested that

the time has come for it to revisit the propriety of its holding in *Graves*, this Court should file

and set this case to reassess whether that case's rationale should remain as a valid basis for

refusing to consider a substantial claim for relief raised in a subsequent habeas application.

For these reasons, I would file and set this case to decide whether to overrule *Graves*.

### B. Initial Habeas Counsel in -01 Performed Ineffectively by Abandoning Applicant

Assuming this Court overturns *Graves*, I conclude that initial habeas counsel

performed ineffectively first by filing an application that raised facially frivolous claims or

claims lacking evidentiary support, and second by abandoning applicant during the course

of the habeas proceedings.   Given the ineffectiveness of applicant's appointed habeas

counsel, which I turn to now, I conclude that this statutory violation of Article 11.071 provides the procedural vehicle by which to consider whether trial counsel performed ineffectively in the punishment stage of trial, which I turn to in section D.

### 1. Habeas Counsel Performed Ineffectively in the Initial Habeas Application's Pleadings

Initial habeas counsel was appointed by the habeas court to represent applicant in filing an Article 11.071 habeas application, but he wholly failed to effectively represent him, as required in that statute.   Counsel filed an application styled as number -01 with eleven claims, six of which could have been cognizable claims of ineffective assistance of trial counsel if they had included evidentiary support.  Of these six claims, four of them failed to include any evidentiary support and no evidence was offered at the live hearing so the habeas court made findings that there was no evidence to support these claims.[2]  For example,

---

[2]

       Four of the six claims challenging trial counsel's ineffectiveness were:  (1) (2) trial counsel was ineffective under the federal and Texas constitutions by failing to investigate facts and develop a consistent trial strategy as to whether the defense at the guilt-innocence phase of  trial was that someone else killed the complainant or that applicant killed her while acting in self-defense, and (3) (4) trial counsel was ineffective under the federal and Texas constitutions by failing to investigate and present evidence that a burglary did not occur.  The only evidence in the application to support these allegations were copies of documents contained within the trial and appellate record, but nothing from outside the record.   At the conclusion of the habeas proceedings, the habeas court made findings of fact that applicant "presented no testimony or other evidence to support his allegations in his application for writ of habeas corpus."  The habeas court noted that applicant had no evidence to support these claims because he "did not call any witnesses or otherwise produce any evidence regarding the actions of trial counsel," and thus that applicant did not "overcome the presumption that the actions of counsel were made as part of a reasonable trial strategy." Furthermore, the habeas court noted that "to the extent that [applicant] claims counsel should have done more to investigate and present a defense, he has not produced any evidence that shows what additional investigation would have discovered, nor has he established what other defensive theories should have been pursued.  In the absence of such evidence, there can be no showing of prejudice."

although his appendix included experts from the trial record, habeas counsel's pleadings did

not include an affidavit by trial counsel explaining their reasons for their performance in the

case. The two remaining ineffective assistance claims in the habeas application challenged

counsel's failure to introduce evidence from a jail classification expert in the punishment

phase of trial. The initial habeas application included an appendix with a document from that

type of expert, but the statement was unsworn and no evidence was introduced during the

live habeas proceedings to support that claim.[3] Thus, none of the ineffective assistance

claims were pleaded properly in the initial habeas application. Four of the five remaining

habeas claims in the initial habeas application were facially invalid because they challenged

trial errors of the variety that must be raised on direct appeal rather than on habeas, as the

habeas court found in its findings of fact that were later adopted by this Court.[4] Those

---

[3]

     The remaining two claims of ineffective assistance of counsel numbered five and six asserted that trial counsel was ineffective in the punishment phase of trial under the federal and Texas constitutions by failing to have a correctional system expert appointed to aid the jury in understanding the degree of safety in the prison society so as to inform the jury with evidence as to whether applicant would be a future danger to society. As evidence for this assertion, the habeas application's appendix included an unsworn letter and resume of Larry Fitzgerald, a retired manager of the Office of Public Information at the Texas Department of Criminal Justice. The habeas court rejected these arguments because applicant "has not provided any evidence in the record establishing the reasons for counsel's decision not to call such a witness. As a result, [applicant] cannot overcome the presumption that his trial counsel's conduct might be considered to be sound trial strategy." The habeas court continued that "there is nothing in the record showing that such a witness would have been available to actually testify at [applicant's] trial," and thus, "[f]or this reason, he has not established that his counsel was ineffective for failing to call this witness."

[4]

     The four habeas claims that were or should have been raised on direct appeal rather than on habeas were: (7) (8) the trial court violated applicant's rights provided in the federal and Texas constitutions by failing to properly instruct the jury on mitigation, and (10) (11) applicant was denied due process as provided in the federal and Texas constitutions due to the "merger doctrine" on the

claims, therefore, were not facially cognizable. The last of the eleven habeas claims

challenged lethal injection as cruel and unusual punishment, and counsel did attach an exhibit

in support of this claim, but the habeas court rejected the claim on the basis of Supreme

Court precedent on point against the applicant.[5] Thus, by the time that habeas counsel

appeared at the live evidentiary hearing, he had, for all practical matters, already performed

ineffectively by failing to present any cognizable claims supported by evidence.

### 2. Habeas Counsel Performed Ineffectively at the Live Habeas Hearing

When he appeared at the live hearing, habeas counsel announced ready, but he

decided not to introduce any evidence to support his habeas application. Counsel stated, "I'm

not intending to introduce any other evidence other than what's already in the record and

contained in the application for writ of habeas corpus." Counsel, therefore, declined to prove

---

basis that the act in the burglary was the act that killed the same victim. The habeas court rejected applicant's claims seven and eight because this "claim was raised on direct appeal and was addressed and overruled by the Court of Criminal Appeals in its original opinion in this case." The habeas court continued, "Because this Claim has already been rejected on direct appeal, it is not appropriately raised in this habeas proceeding." As to applicant's tenth and eleventh claims, the habeas court noted that this Court "has specifically held that merger doctrine is not applicable to capital murder convictions." The habeas court additionally rejected the argument because "this point could have been raised on direct appeal and is not an appropriate ground for relief in this proceeding.

[5]

The ninth claim asserted that lethal injection as it is currently administered violates the United States Constitutional Prohibition against cruel and unusual punishment. The appendix included as evidence a sworn affidavit of Dr. Mark J.S. Heath dated June 16, 2006 stating that the legal injection protocol used by Texas created an unnecessary and unacceptable risk that the inmate will experience excruciating pain and suffering. No additional evidence was offered on this claim. The habeas court's findings of fact said, "Since the filing of Applicant's pleading in the instant matter, the United States Supreme Court has specifically addressed the question of whether lethal injection procedure used by Texas, and 29 other States, violates the Eighth Amendment and concluded that it does not."

the six claims of ineffective assistance of counsel that he had pleaded in the initial habeas

application, even though he was afforded the opportunity to do so at the live hearing.

Counsel's inaction in declining to prove up his habeas application pales in comparison

to his actions. Counsel called applicant to the witness stand to testify that he desired to have

another person represent him, but counsel did not admonish applicant about the dangers

inherent in taking that action.[6] During his testimony, applicant acknowledged that his family

---

[6]

| [Court]: | All right. Well, did you receive — I think we shared this copy of a letter we received from the Court of Criminal Appeals. Are you talking about this Brandy Estelle, a lawyer in California? |
| [Habeas counsel]: | Brandy Estelle. Yes. |
| [Court]: | Apparently, she had asked to be admitted to the bar so that she could pursue her writ of habeas corpus — |
| [Habeas counsel]: | Correct. |
| [Court]: | And the Court of Criminal Appeals, the last I heard from them, has said that that writ is not properly before the court, they're not taking any action on her request at this time and she can re-submit the request at a later time. As far as I know, she hasn't done that. *So, your writ is the one that is before the Court.* |
| [Habeas counsel]: | *I understand that. I have been informed by the Court of Criminal Appeals that they are considering Ms. Estelle's writ as a supplemental writ — in effect, a second writ of application for habeas corpus, which is not provided for under Texas law.* The only thing I want to establish — I can do it by an offer. I have talked with Mr. Preyor, and his family hired this Brandy Estelle out in Beverly Hills, California in May of 2008. And she is, in effect retained counsel for Mr. Preyor. And his desire is to have her writ considered by this Court. |
| [Court]: | Well, I suppose that — as long as she has not gotten the okay to proceed from the Court of Criminal Appeals, she is not getting it from me. |
| [Habeas counsel]: | I'm just making a record, Judge. |
| [Court]: | All right. Anything else? |

Preyor - 17

had hired Brandy Estelle, a California attorney unlicensed to practice in Texas, to represent

him "on a writ of habeas corpus," and that he had received a copy of the -02 application that

Estelle had filed.  Initial habeas counsel then asked applicant whether it was his "desire to

proceed on Ms. Estelle's writ of habeas corpus before the Court of Criminal Appeals" "as

opposed to the one that I filed?"  Applicant responded, "That is correct."  Habeas counsel,

however, should have but did not, at a minimum, admonish applicant about the dangers of

his intended action, which was virtually certain to result in the loss of all habeas relief for

applicant because the subsequent writ was a non-starter.  Estelle had not pleaded any basis

for overcoming the Article Five bar in Article 11.071 so it should have been clear to

everyone at the time of the live hearing that her application would almost certainly be

procedurally rejected as a subsequent habeas application that would be dismissed.

Habeas counsel's failure to admonish applicant is egregious here because counsel

knew at the time of the live hearing that this Court had already indicated that it would

consider Estelle's habeas application only as a subsequent habeas application, and he knew

that the habeas court's live hearing was only for the purpose of considering the merits of the

initial habeas application.  Despite this, habeas counsel declined to introduce any evidence

in support of his claim at the live habeas hearing.  Thus, during the live habeas hearing,

habeas counsel's actions resulted in the introduction of applicant's testimony that ended with

the

---

(Emphasis added).

Preyor - 18

✓    abandonment of the only habeas pleadings that would be considered by this Court,

✓    absence of any habeas evidence to support the initial application's claims of ineffective assistance of trial counsel, and

✓    absence of any admonishments to applicant about the near certainty of his losing all of his habeas claims due to his switch from initial habeas counsel to Estelle and due to his switch from the initial habeas application to the subsequent habeas application.

Unsurprisingly, given the lack of any evidence to support the initial habeas application, the habeas court made findings of fact and conclusions of law recommending that this Court deny habeas relief. This Court then denied applicant's -01 application stating, "The trial court held a live hearing in which no evidence was presented." This Court adopted the trial court's findings and conclusions with the exception of finding number one that appears to have referred to an inapplicable matter. *See Preyor*, 2009 WL 3474097, at *1. This Court then dismissed the applicant's -02 application that Estelle had filed on the basis that it was procedurally barred under Section Five of Article 11.071.

Habeas counsel's actions at the hearing—failing to admonish applicant that switching from the initial habeas application to the subsequent application would have to be approved by this Court—and that, under applicable statutory requirements, that this would almost certainly not be permitted by this Court, left applicant essentially with no counsel, no habeas application, and no habeas evidence. *See Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002) (referring to Article 11.071 and stating that the "entire statute is built upon the premise that a death row inmate does have one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute."). On

this basis, I would hold that applicant is entitled to a merits-review of his ineffective-assistance claim on remand to the habeas court because his abandonment of applicant's initial habeas application left applicant essentially with no habeas review. But before turning to the substance of the instant habeas allegations, I next address whether the -02 or -03 documents have any preclusive effect on the -04 filing.

### C. The -02 and -03 Applications Are Inconsequential Because They Were Filed Without the Informed Consent of Applicant By a Foreign Attorney With No Permission to Appear Before this Court

Because there were two other filings labeled as -02 and -03 that have been characterized as subsequent habeas applications in this case, it is necessary to address whether those may operate to trigger the Section Five procedural bar in Article 11.071 under the theory that applicant should have presented the instant habeas complaint during those earlier filings. Under the exceedingly strange circumstances of this case, I conclude that those filings cannot be held against applicant so as to apply a procedural bar as to the instant habeas application because the -02 and -03 filings were done by a non-Texas attorney who had no permission to appear in this Court and who acted without applicant's informed consent.

Brandy Estelle, an attorney from Beverly Hills, California, took a substantial amount of money from applicant's family and filed documents that were labeled as subsequent habeas applications, styled as -02 and -03, but she did not have a Texas law license or permission to appear in our courts. She mentioned a request for pro hac vice representation

Preyor - 20

in the documents, but did not file the required motion with the mandatory information, and

she was not granted permission to appear before this Court. Estelle's filings in the -02 and

-03 cases are wholly defective. The -02 application alleged only ineffective assistance of

appellate counsel, but it contained no exhibits to show why appellate counsel performed

ineffectively, and it mostly addressed reasons why trial counsel were ineffective. The -03

allegation repeated these complaints in the same defective manner, but it also included other

allegations that were similarly wholly frivolous in that they were inadequately presented.

Regardless of their substantive inadequacy, the -02 and -03 filings cannot be procedurally

considered for any purpose because Estelle did not have applicant's informed consent for her

to file them as a non-attorney and she did not have this Court's permission to litigate them

as an attorney through pro hac vice.

Although a non-attorney may file an application for habeas relief, this must be done

only with an applicant's informed consent, which is lacking here. Articles 11.12 and 11.13

permit any person to file a habeas application on behalf of an applicant. TEX. CODE CRIM.

PROC. arts 11.12, 11.13. This other person, however, who signs and presents a habeas

petition on an applicant's behalf "must at least have the applicant's informed consent to do

so." *Ex parte Gallo*, 448 S.W.3d 1, 4 (Tex. Crim. App. 2014). Informed consent means that

the person acting on the applicant's behalf has explained to applicant a proposed course of

conduct after communicating adequate information and explanation about the material risks

of and reasonably available alternatives to the proposed course of conduct. *See e.g.* ABA

MODEL RULES OF PROF'L CONDUCT R. 1.0(e) ("Informed consent denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternative to the proposed course of conduct"); *McCarthy v. United States,* 394 U.S. 459, 466 (1969) (noting that intelligent and voluntary decisions require an understanding of the law in relation to the facts).

Neither of these applications include any statement or verification to show that applicant gave his informed consent to be represented by Estelle under these circumstances. Here, the instant habeas record shows that applicant's mother hired Estelle believing that she was authorized to practice law in Texas and she paid Estelle a substantial amount of money for that legal representation.  At the live habeas hearing, applicant was asked whether he desired to proceed with the -02 application, and he said that he did, but initial habeas counsel failed to inform him that the consequence of that decision would mean that he would likely lose all possibility of habeas relief because a subsequent habeas application could not replace an initial application by the mere request of an applicant, as this applicant was apparently led to believe.  Nothing in this record shows that anyone ever explained to applicant the significant dangers of losing his entire right to state, and ultimately to federal, habeas relief in his case by permitting Estelle to file the -02 and -03 documents.  Nothing in this record shows that applicant was giving his informed consent to file the  -02 or the -03 documents under these circumstances in which the filer could not practice law in Texas, which was what

Preyor - 22

his family was expecting when they paid money to Estelle. Under these bizarre and extreme

circumstances, this Court must disregard the -02 and -03 filings for all purposes because, due

to their procedural nonconformance with the Code of Criminal Appeals's provisions for

habeas applications filed by non-Texas attorneys, they are non-applications that cannot be

considered by this Court for any purpose. *Compare Medina*, 361 S.W.3d at 643 (declining

to consider non-application for any purpose).

Because Estelle was neither a licensed Texas attorney nor admitted pro hac vice for

this case, she was prohibited from representing applicant. Accordingly, the -02 and -03

documents should be deemed nullities and disregarded as barring the instant application. I

reach this conclusion by examining *Moreno v. State*, 246 S.W.3d 380 (Tex. App.—Amarillo

2008). Moreno's trial attorney had represented Moreno against his prosecution for a

drug-related offense after the attorney was admitted to practice before the trial court pro hac

vice. *Id*. That attorney was later disqualified from representing Moreno on appeal when the

attorney failed to respond to the appellate court's letter informing him that he had to file a

new motion to be admitted pro hac vice in the appellate court. *Id*. The court of appeals held

that the attorney's failure to respond to the appellate court's request for a certification in

writing whether he had complied with rules of appellate procedure regarding preparation and

payment of reporter's record properly resulted in the court's refusal to permit him to appear

before it. *Id*. Similarly, here, Estelle failed to comply with the rules for appearance with a

pro hac vice and thus she had no authority to appear to practice law in filing the -02 and -03

habeas applications.

Estelle's misinformation to applicant is evident in the documents she filed in -02 and -03. Those applications include a statement that she is seeking pro hac vice to practice law in Texas. In her pleadings in the -02 and -03 applications, she included a "verification" stating, "I am an attorney admitted to practice law in the state of California, all federal courts, and the Supreme Court of the United States and who has applied with this Court for admission to practice law in Texas by virtue of pro hac vice." That statement led applicant to believe that she was not acting as any person who is filing under Articles 11.12 and 11.13, but instead that it was his intent to hire an attorney who could practice law. TEX. CODE CRIM. PROC. arts 11.12, 11.13. Estelle's misrepresentations about her ability to practice law in Texas cannot be equated with applicant having given knowing consent to a non-lawyer to proceed under those articles.

I would hold that, because Estelle had no authority to appear in Texas due to her lack of a Texas law license and the lack of permission to practice law before this Court through a pro hac vice, and because she did not have applicant's informed consent due to her misrepresentation that she could validly practice law in Texas, her -02 and -03 filings are a nullity that could not then nor now be considered by this Court for any purpose whatsoever. I, therefore, would wholly disregard the -02 and -03 applications as if they had never been filed because for all practical purposes they were a nullity from their inception.

### D. Applicant Now Has Made a Prima Facie Case of Ineffective Assistance of Trial Counsel in the Punishment Phase of Trial

I conclude that applicant has made a prima facie case of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) so as to permit him to present evidence of his allegations on remand before the habeas court in a live hearing. Applicant's instant evidence presents applicant as someone who was severely physically and sexually abused as a child, as compared to the trial evidence that painted him as a man with a stable childhood and loving family. I review the evidence alleging deficient performance and then turn to how that performance prejudiced applicant.

### 1. The Instant Pleadings Show Deficient Performance in Counsel's Failure to Investigate and Present Extensive Mitigating Evidence Never Heard by the Jury

The instant habeas application primarily asserted that the trial attorney who investigated and presented evidence in the punishment phase of trial was ineffective, and they do not complain about guilt-counsel's performance in representing applicant. The instant habeas application pleads that applicant was physically and sexually abused as a child. His father severely beat him repeatedly, often resulting in lasting bodily bruises and marks. His mother's assault on one occasion in which she chased him with a knife caused him to jump from a fourth floor balcony as a teenager, breaking both of his ankles in the fall. The application pleads that, at a young elementary-school age, applicant was sexually abused by a close family member. This escalated from touching to sodomizing and digital penetration over a number of years until he was an adult. These are the primary assertions in the instant application that also includes other allegations of mitigating evidence never presented at trial.

Applicant has provided evidence that counsel failed to meet an objective standard of reasonableness, as judged by prevailing professional norms, by failing to adequately investigate for mitigation evidence that he was severely physically and sexually abused as a child. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Applicant contends that a reasonable investigation should have uncovered the mitigating evidence. *Ex parte Gonzales*, 204 S.W.3d 391, 394 (Tex. Crim. App. 2006). Suffering abuse as a child is a category of evidence that can, in some cases, have significant mitigating value. *See id*. at 395. To the extent that applicant has alleged that his counsel did not inquire at all into or present evidence of whether applicant had been physically or sexually abused as a child, he has made a preliminary showing of deficient performance. *See id*.

As evidentiary support for these assertions, the instant application includes multiple witnesses who present evidence that punishment-counsel performed deficiently. I discuss only five of these exhibits here.

1. Elizabeth Vartkessian. She is a mitigation specialist for the instant litigation. She interviewed three family members, applicant's biological father Ronald, half-sister Diane Preyor, and half-brother Jason Preyor, who each claimed that they were never previously interviewed by trial counsel, habeas counsel, or any prior mitigation specialist. She described the difficulty in obtaining information from the family, explaining that it "was evident that secrecy is firmly ingrained into the family." She opined that a recently collected medical record showed that applicant was "tormented in his home." She explained, "For instance,

he jumped out of a window in order to escape his mother who was chasing him with a knife."
She noted that it "would take many visits in order to obtain information regarding physical
and sexual abuse from members of the family, particularly those that are more secretive."

2. Salima Pirmohamed. She is a mitigation specialist hired for the instant application.
She interviewed applicant on four occasions and applicant's half-brother Sean Preyor-
Johnson. Both of them claim that none of the trial attorneys or investigators had asked about
the abuse experienced by applicant. Sean Preyor-Johnson was a San Antonio police officer
at the time of trial and, although he testified in the punishment phase of trial, he told
Pirmohamed that he was not asked about abuse and he did not realize that he could talk about
it to the jury when he testified at the trial. Pirmohamed's declaration states that applicant
was beaten once to twice a week, whipped with belts for acts disproportionate as discipline
and that this caused bruises and welts lasting for weeks. At one point, applicant's father beat
him so badly across his arms that he could not go to school. Applicant's mother physically
abused him, once with a knife, that caused him to jump from the fourth story of a building
and break his legs and a hand in the fall. Applicant was sexually abused by his half-brother
Jason while applicant was in elementary school and continuing most weekends for years until
he was an adult. Also, applicant was homeless at one point when he was around sixteen
years old.

3. Donna Veneble. She is a mitigation specialist who interviewed eight family
members and five of them said that they had never spoken with any person employed by

counsel or counsel for applicant.  She indicated that Jonathan Preyor, applicant's brother, had testified at applicant's trial but that he had met with trial counsel only once prior to trial, and he did not know that applicant's home life and childhood could be introduced as mitigation evidence.  She revealed that she "was told about extreme physical abuse and punishments by some members of the family in snippets."

4. Benjamin Preyor.  He is applicant's brother, who is employed by the United States Army.  He indicates that he met with applicant's trial attorneys twice before trial and that he testified at the punishment phase of applicant's trial.  He contends that if he "had known that family information, including evidence of childhood abuse, could be presented at a death penalty trial, and could impact a juror's decision to vote for the death penalty or for life in prison, [he] would have revealed such information long ago.  No one ever told [him] that it would be helpful."  He, however, was much younger than applicant and only heard about the physical abuse.

5. Dr. Woods.  He conducted a neuropsychiatric record review for the instant habeas application.  He concluded that applicant "never received the comprehensive neuropsychiatric or neurological, which is the standard of care in capital cases."  He recommended that applicant undergo further examination.

In response to this habeas application, the State has presented an affidavit by punishment-counsel that was prepared last week.  He acknowledges that he had the primary responsibility to prepare for the punishment phase of trial.  He avers that he interviewed

Preyor - 28

applicant, and his family, friends, and teachers. He states, "I visited the defendant's family in the apartment where he had grown up and interviewed everyone extensively." He denies that he failed to ask about physical, emotional, or sexual abuse. He says, "In all the death penalty trials I've handled, it has always been my standard practice to ask all witnesses about any abuse in the home, whether it be physical, emotional, or sexual." He maintains that he explains the mitigation special issue and "how important it is not to hold back any such information." He denies that anyone mentioned any abuse to him. He notes that "[n]one of the people [he] interviewed, including the defendant, his family members, or friends, gave [him] any information that he had been abused as a child." He continues that if "they had given [him] any such information, [he] would have developed that evidence and presented it as mitigation at trial." Furthermore, he notes that Dr. Murphey had interviewed applicant and that she "always asks death penalty defendants questions about their background including any sort of abuse." Counsel ends by maintaining that he always prepares witnesses for their trial testimony, and that, at applicant's trial, he presented six witnesses in the punishment phase: three brothers, a family friend, the defendant's mother, and Dr. Murphey.

The State's view that punishment-counsel performed effectively is supported by the need to reasonably consider his strategic decisions. For example, applicant's mother's instant habeas application complains that counsel "seemed to cut short what [she] wanted to tell the jury," and that counsel did not prepare her adequately for her testimony. According to guilt-counsel's notes, however, applicant's mother had spoken to the prosecutors and told them

that she had harbored fears about applicant's anger and violence, and she feared him.  Given applicant's mother's prior expressions of fear of him, it would have been objectively reasonable trial strategy for punishment-counsel to cut short her testimony.  Punishment-counsel did not perform deficiently in limiting testimony by applicant's mother.

The State's response is also somewhat supported by punishment-counsel's procurement of two experts, Dr. Joann Murphey and Dr. Eubanks.  On the one hand, Dr. Murphey's inclusion as an expert reveals that counsel generally did investigate and prepare for trial.  Dr. Murphey conducted psychological testing on applicant.  Dr. Murphey interviewed applicant for about three hours and wrote a report with a "brief" social history that went into some detail about his background.  Her report supports trial counsel's effectiveness in that it shows that she did make inquiries about applicant's background and she made no mention of applicant having made a claim about sexual abuse as a child.  On the other hand, Dr. Murphey's report conflicts with punishment-counsel's instant affidavit with respect to whether he was made aware of physical abuse.  Dr. Murphey documented that applicant's father "was 'short tempered' about his academic difficulties" and "beat him a lot."  That portion of her report would suggest that she made punishment-counsel aware of the physical assaults of applicant but that punishment-counsel either did not investigate further for this evidence or, for unknown reasons, he opted not to present this evidence for its mitigating value.  Regardless, Dr. Murphey's affidavit appears to conflict with punishment-counsel's instant affidavit that he was unaware of any evidence that applicant

was physically abused as a child.  Dr. Eubanks conducted a neuropsychological evaluation

of applicant so this shows that trial counsel pursued expert testimony.  Dr. Eubanks,

however, recommended neurological testing but that was not done.  These two experts

generally show that trial counsel did conduct a general punishment investigation and that they

did present evidence in the punishment phase of trial.  With respect to counsels' investigation

and presentation of mitigating evidence specifically, however, which is the subject of the

instant litigation, the record is less clear with respect to whether trial counsel performed

ineffectively in the punishment phase of trial.

Punishment-counsel's instant affidavit suggests that no one made him aware that

applicant had been physically and sexually abused as a child, but there is evidence in the

instant habeas record that refutes that view.  Guilt-counsel's notes show that there were

indicators that applicant had been physically and sexually abused.  Guilt-counsel's notes

taken after a phone conference with applicant's mother show that she had alluded to a history

of sexual abuse, reporting that "one stepbrother had abused [applicant] as a child."  The notes

also cryptically reported that "all incidents . . . were kept in the family."  When guilt-counsel

turned over to punishment-counsel the work to be done for the punishment phase of trial,

there was a memorandum noting, among other things, that applicant "[p]robably was sexually

molested by [his] stepbrother in his youth."  Jail records in the file documented physical

abuse by family members, among other matters.  Furthermore, as noted above, Dr. Murphey

remarked about physical abuse of applicant by his father.  Given these documents in the

habeas record and the multiple declarations from individuals who claim that they were aware of physical or sexual abuse of applicant but that punishment-counsel never inquired about that, applicant has made a prima facie case that punishment-counsel performed deficiently in neglecting to obtain a mitigation expert, failing to conduct a more adequate investigation for mitigating evidence, and failing to present mitigating evidence in the punishment phase of trial.

Whether trial counsel performed ineffectively is a highly contested matter that requires a live evidentiary hearing before the habeas court and findings of fact and conclusions of law as to whether counsel were ineffective.  I reserve making any determination whether applicant's or trial counsel's evidence is more credible than the other, and I would defer that evaluation until after evidence has been introduced at the live habeas hearing on remand and subject to cross-examination.

### 2. The Newly Presented Mitigation Evidence Could Have Reasonably Affected the Jury's Answer to the Special Issue

As to prejudice, I conclude that based on the volume and persuasive value of the mitigation evidence presented in this application, applicant has made a prima facie case that there is a reasonable probability that, had counsel presented the available mitigating evidence, at least one juror would have answered the special issues differently.  *Id*. at 393. The sentencing profile presented by trial counsel essentially described applicant as a person who had been brought up without exposure to the extreme misconduct against him.  In contrast, the sentencing profile presented in the habeas record essentially describes applicant

as a victim of physical and sexual abuse, which is the type of evidence that may be highly relevant to a jury's balancing of mitigation evidence. *See id*. (citing *Wiggins*, 539 U.S. at 538) (finding prejudice prong satisfied where mitigating evidence presented at the habeas hearing was substantially greater and more compelling than that actually presented by the applicant at his trial and the habeas evidence "might well have influenced the jury's appraisal" of Wiggins's moral culpability). Given these peculiar and extreme circumstances, review of the merits of applicant's complaints regarding claims of ineffective trial counsel should be assessed by the habeas court at a live hearing on remand.

## II. Conclusion

The extreme circumstances presented in this application include the essential abandonment by applicant's initial habeas counsel, and the interloping by a foreign attorney without credentials to practice before this Court and in the absence of applicant's informed consent to pursue habeas litigation for him as a non-attorney. This Court should stay this impending execution of applicant and file and set this case to consider overruling *Graves*. Assuming *Graves* is overruled, I would remand this case to the habeas court so as to permit this applicant, who has made a prima facie case that trial counsel performed ineffectively as to their investigation and presentation of mitigation evidence, a live hearing in the habeas court. Because this Court denies the motion to stay execution and permits this execution of applicant several days from now despite the egregious post-conviction errors in this case, I respectfully dissent.

Preyor - 33

Filed: July 24, 2017
Publish