No. 17-70017

IN THE

# United States Court of Appeals for the Fifth Circuit

TAICHIN PREYOR,

*Petitioner–Appellant,*

v.

LORIE DAVIS, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

*Respondent–Appellee.*

On Appeal from the United States District Court
For the Western District of Texas, San Antonio Division

## OPPOSITION TO APPLICATION FOR CERTIFICATE OF APPEALABILITY AND MOTION TO STAY EXECUTION

KEN PAXTON
Attorney General of Texas

JEFF MATEER
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

ERICH DRYDEN
Assistant Attorney General
   *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
*erich.dryden@oag.texas.gov*

*Counsel for Respondent-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2)(c), oral argument should be denied because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

## OPPOSITION TO APPLICATION FOR
## CERTIFICATE OF APPEALABILITY
## AND MOTION TO STAY EXECUTION

Petitioner-Appellant, Taichin Preyor, was convicted and sentenced to death for the murder of Jami Tackett during the course of burglary. He is scheduled to be executed **after 6:00 p.m. (Central Time) on Thursday, July 27, 2017**. Preyor has unsuccessfully challenged his conviction and death sentence in both state and federal court. Preyor now seeks a certificate of appealability (COA) in this Court after the federal district court dismissed his motion for relief from judgment—under Federal Rule of Civil Procedure 60(b)—for want of jurisdiction and, in the alternative, denied it as meritless. Less than two weeks before his execution date, Preyor filed a Rule 60(b) motion asking the lower court to reopen its judgment denying habeas corpus relief—based on a "non-merits-based defect"—and allow him to raise a new claim that trial counsel was ineffective (IATC) for failing to investigate and present mitigating evidence.

The "non-merits-based defect" that Preyor refers to is a claim of "fraud on the court" under Rule 60(b)(3). Preyor contends that his former counsel, Brandy Estelle, was working with Philip Jefferson—a former

attorney who was disbarred in 1989—on Preyor's case.  Preyor claims

that Jefferson was actually acting as lead counsel; he solicited Preyor's

mother, advised her what to do, and dictated pleadings to Estelle, among

other things.  Thus, he alleges that Estelle's representation was merely

a facade, and Jefferson was in charge.  However, neither Jefferson nor

Estelle ever told Preyor's family or the lower court that Jefferson had

been disbarred.  As a result, Preyor claims counsel's behavior resulted in

a fraud on the court.  Brief at 6–21, 32–52.

However, Preyor's true intention in invoking Rule 60(b)(3) is to

litigate a new IATC claim that trial counsel was ineffective for failing to

investigate and present mitigating evidence.  This is evident from his

Rule 60(b) motion, much of which was devoted to arguing the merits of

the IATC claim.  Indeed, Preyor continues to argue in the instant COA

application that his IATC claim is substantial.  Brief at 52–54. The lower

court recognized that, pursuant to Supreme Court and Fifth Circuit

precedent, Rule 60(b) does not permit the filing of new claims.  As such,

the court properly found Preyor's filing to be a successive petition and

dismissed the motion for want of jurisdiction.  In the alternative, the

district court denied the motion, holding that Preyor's argument failed to

rise to the level of "fraud on the court" and that Preyor had failed to demonstrate extraordinary circumstances that warrant Rule 60(b) relief. The court also found the motion to be untimely and denied Preyor's motion to stay his execution. *Preyor v. Davis*, No. 5:10-CV-00857 (W.D. Tex.), Docket Entry (DE) 86.

The lower court's holding was not an abuse of discretion. Preyor's motion is a successive habeas application in disguise, he does not demonstrate fraud, and he filed the motion less than two weeks before his scheduled execution despite knowing the basic fact that underlies his fraud claim for several years. Preyor is not entitled to a COA, and the Court should deny Preyor's motion to stay his execution.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. 2253(c)(1)(A), (c)(2).

## STATEMENT OF THE ISSUES

The issues before the Court are whether reasonable jurists would debate that the lower court abused its discretion when it (1) dismissed Preyor's Rule 60(b) motion for want of jurisdiction; (2) concluded that Preyor had not demonstrated a "fraud on the court"; (3) found that

extraordinary circumstances did not exist to warrant relief from judgment; and (4) determined that Preyor's Rule 60(b) motion was untimely.

## STATEMENT OF THE CASE

### I.    Procedural History

Preyor was convicted and sentenced to death for the murder of Jami Tackett while in the course of committing and attempting to commit burglary.  CR 4, 204, 216-18, 222-23.[1]  The Court of Criminal Appeals affirmed Preyor's conviction and sentence in an unpublished opinion. *Preyor v. State*, No. AP-75119, 2008 WL 217974 (Tex. Crim. App. 2008).

Preyor filed a state application for writ of habeas corpus in the trial court.  1 SHCR 41.  Preyor then filed a subsequent state habeas application in the trial court about a year after he filed the initial application.  2 SHCR 59.  The trial court then submitted findings of fact and conclusions of law recommending that Preyor be denied relief with respect to his original application.  1 SHCR 99-117.  The Court of

---

[1]    "CR" refers to the clerk's record of pleadings and documents filed with the court during trial, followed by page number(s).  "RR" refers to the state record of transcribed trial proceedings, preceded by volume number and followed by page number(s).  "SHCR" refers to the state habeas record, preceded by volume number and followed by page number(s).

Criminal Appeals adopted the trial court's findings and conclusions and denied Preyor's original application. *Ex parte Preyor*, No. 72,660-01 at cover and Order. The Court of Criminal Appeals also dismissed Preyor's subsequent application as an abuse of the writ. *Ex parte Preyor*, No. 72,660-02 at cover and Order. Preyor then filed a third state habeas application in the trial court. 3 SHCR at cover. The Court of Criminal Appeals dismissed that application as an abuse of the writ. *Ex parte Preyor*, No. 72,660-03 at cover and Order.

Next, Preyor filed a federal habeas petition and then an amended petition in the federal district court. *Preyor v. Thaler*, No. 5:10-cv-00857 (W.D. Tex.), DE 1 & 7. On June 15, 2012, the district court denied Preyor federal habeas relief and denied him a COA. DE 21 & 22.

Preyor filed an application for COA in this Court, but the application was denied. *Preyor v. Stephens*, 537 F. App'x. 412 (5th Cir. 2013). The Supreme Court subsequently denied Preyor certiorari review. *Preyor v. Stephens*, 134 S. Ct. 2821 (2014).

Preyor obtained new federal habeas counsel on March 13, 2015. DE 35. On June 27, 2017, Preyor filed a motion for stay of execution in the federal district court. DE 67. The court denied Preyor's motion on July

5

7, 2017.  DE 72.  On July 17, 2017, Preyor filed a motion for relief from judgment under Rule 60(b).  DE 78.  Preyor also filed another motion for stay of execution.  DE 75.  Around the same time, Preyor filed a successor application—which briefed the new IATC claim—and motion for stay of execution with the Court of Criminal Appeals.  The federal district court denied the motion for relief from judgment and motion to stay the execution on July 24, 2017.  DE 86.  On the same day, the Court of Criminal Appeals dismissed Preyor's successor application as an abuse of the writ and denied his motion to stay his execution.  *Ex parte Preyor*, No. 72,660-04 at Order.

## II.    Statement of Facts

This Court previously summarized the facts of the crime and those presented at the punishment phase as follows:

> The State presented the following evidence at trial. Over an extended period of time the victim, Jami Tackett, sold illegal drugs to Preyor, who then sold them to others. On February 25, 2004, Preyor, whose nickname was "Box," called Tackett and said that he was coming to her apartment that night.  Tackett was entertaining friends, including Jason Garza, at her apartment.  After the last guest left at about 4:00 a.m. on February 26, Tackett and Garza locked the front door, turned out the lights, and went to bed.  Garza testified that when they were almost asleep, he heard two or three loud bangs at the door.  Then a man peeked into the bedroom and Tackett said, "Box, what the hell are you doing here."  Preyor,

who was dressed in black and wearing a hood and gloves, said "F* * * this," and attacked Garza. After Preyor stabbed Garza, Garza escaped and asked neighbors to call for help. Preyor then stabbed Tackett numerous times and cut her throat, severing her trachea, jugular vein, and carotid artery.

Several of Tackett's neighbors heard her screaming and saw Preyor when he left her apartment. They saw Tackett on the floor, covered in blood and making gurgling sounds. Jaclyn Villanueva asked Tackett if the man who came out of the apartment wearing black clothing hurt her. Although Tackett was unable to speak, she nodded her head affirmatively. Tackett died before the paramedics arrived.

Preyor left Tackett's apartment and went downstairs, where his vehicle was parked, but returned to Tackett's apartment where he apparently searched, unsuccessfully, for his keys. After the murder, David Pointer, Tackett's former boyfriend, found some car keys in her apartment and turned them over to the police, who determined that they were the keys to Preyor's vehicle.

When Preyor left Tackett's apartment the second time, he encountered police officers. When they ordered him to stop and get on the ground, Preyor refused to comply. The police had to use pepper spray to subdue him. Preyor was covered in blood, which DNA analysis later indicated was Tackett's.

Police found Preyor's gloves and the murder weapon on the ground next to a vehicle in the parking lot, later identified as Preyor's vehicle. They also discovered a loaded shotgun on the bumper of the vehicle and found blood on the driver's-side door handle of the vehicle. The pattern on Preyor's boots matched the pattern of the bloody footprints found in Tackett's apartment. Tackett's DNA profile was also consistent with blood found on the knife, gloves, car door handle, a swab from Preyor's face, and a swab from his hand and boot. Garza's DNA profile was consistent with blood

found on Preyor's watch and knit cap. Blood consistent with a mixture of Tackett's and Preyor's DNA profiles was located on various items, including a nail clipping from Tackett and a swab from Preyor's face.

At trial, Detective Barney Whitson read aloud the statement Preyor made to the police after he was taken into custody, quoted below in relevant part:

> The truth about what happened was I went over to Jami's to buy some drugs from her. Jami was my connect. I buy my drugs from her and I sell them to people I know. This morning I went over to Jami's apartment to buy some drugs. I had called Jami earlier that day and asked her what was up. Jami told me nothing. Jami told me I needed to come and talk to her. Jami told me she had company, so I told her I would hook up with her later. It was about 11:30 p.m. on Wednesday that I talked to Jami. When I told Jami I would hook up with her later, Jami told me to come. Jami said she was just kicking with her home boy from the studio and everything was cool.

> When Jami told me she was kicking it with someone from the studio, I thought she was hanging out with my man, Keith, because Keith is a rapper. I was over to one of my home boy's house when I talked to Jami. I left his crib and went to a pay phone to call Jami. I called Jami from the pay phone. After I finished talking to Jami, I went back to my boy's crib. I don't want to give my boy's name, because I don't want him involved in this. I stayed over at my boy's crib until I went back over to Jami's apartment.

> It was about 4:00 or 5:00 in the morning when I got to Jami's apartment. I knocked on the

door and Jami opened the door and let me in.  I had felt the phone call from Jami was funny, because Jami usually tell[s] me who she has over to her place. When I got to Jami's apartment, she let me in.  When I got inside the apartment was totally dark inside the apartment.  I could see a dude sitting on the sofa inside the living room.  I could see the guy because of the TV light from the TV. The guy was a Hispanic dude with short, slick, black hair.  The dude was shorter than me, but he was stocky build.

When I saw the guy, I didn't trip but I was very uncomfortable.  Jami sensed that I was uncomfortable.  I didn't even sit down. Jami went to lock the door behind me, and the dude started to get up.  I bolted down the hallway to the back rooms and pushed open the doors to the rooms to the back.  I was trying to see how many people were in the house.  I was trying to turn on some lights, but I didn't know where the switches were.

There was no one else in the apartment.  I went back up to the front of the apartment.  When I got to the front of the apartment, old boy tried to grab me, so I started fighting with him.  I was getting the best of the guy until Jami started helping him.  Jami grabbed me and started grabbing for my face.  That's when she scratched my face.  I felt like I was being overwhelmed and I didn't have the upper hand anymore, so I pulled my knife.  I pulled my knife and poked the dude with it.  After I poked him—I don't remember how many times I poked him, he took off. He opened the door and bolted out of the apartment.  Jami was still there and she was still trying to fight. She was scratching and grabbing at me and I was

still slashing at her.  She grabbed me, so I started poking her.  She fell down and I ran out of there.

I ran across the apartment courtyard and was yelling for help.  I know that I had cut myself on my finger.  The dude was holding me, so I tried to slice his hand.  He pulled away and I sliced my own finger. I didn't know I had all that blood on me.  I knew I had some blood on me, but not that much.  I didn't run when the police got there, because I felt like I was a victim.  I was the one being robbed, and I defended myself.  I had no idea how bad I had hurt Jami.  I wouldn't have hurt [her] that bad. When I walked down the stairs and started to cross the courtyard, the police ran up behind me.  They were yelling, stop, or I'll shoot.  I turned around and put my hands in the air.  I told them I had no weapons, but I would not stop walking.  I told them they would have to shoot me if they wanted me to stop walking.

Ten seconds later after that I got tackled. The officers cuffed me and one of them pepper sprayed me while I was laying on the ground handcuffed.  I didn't tell the truth in my first statement, because I didn't want to admit I was buying drugs.  I didn't want that to get out.  This is all I know about this incident, this all happened in the City of San Antonio, Bexar County, Texas. This is the end of my two-page statement, I have read and understand this statement.  I have signed this statement indicating it's true and correct.  I gave this statement voluntarily without the promise of anything or being threatened.

I felt like I was the victim, so I didn't run, but know that the whole thing was over drugs so I

didn't want to reveal that. I felt like it was going
to be worked against me.

Preyor did not call any witnesses at the guilt-innocence
phase, and the jury was instructed that Preyor had "elected
not to testify." Trial counsel requested and obtained jury
instructions on self-defense and the lesser-included offenses
of murder and aggravated assault. The jury found Preyor
guilty of capital murder.

At the punishment phase, the State presented evidence
that Preyor had committed a prior drug offense in Syracuse,
New York, in 1999. A Syracuse police officer testified that he
discovered a bag containing nearly four ounces of crack
cocaine, with a street value of approximately $10,000, when
conducting a pat-down search of Preyor. Preyor fled, and
another officer later tackled and handcuffed him. Preyor pled
guilty to possession of a controlled substance in exchange for
a one-year sentence and the dismissal of a charge of resisting
arrest. Preyor told his probation officer that he had used
cocaine since he was an adolescent, and that he had started
using it consistently in 1998, when he had an affair with a
woman who was a drug abuser. Preyor also told his probation
officer that the crack cocaine was for his own personal use.
However, when he was interviewed by a clinical psychologist,
Dr. Murphy, prior to his capital murder trial, he
acknowledged that he had been selling drugs.

After serving time for his drug offense in New York,
Preyor moved to San Antonio, where he was joined by his wife
and children. About a month before the murder, on January
14, 2004, the police went to Preyor's apartment on a "family
violence call." Preyor was angry and he was pacing, yelling,
and screaming, but he calmed down when his brother, a San
Antonio police officer, arrived. His wife, who was pregnant
with their fourth child at that time, did not appear to be
injured and said that she did not need assistance.

Preyor committed several minor disciplinary infractions while in the Bexar County Jail awaiting trial: (1) possession of ten Tylenol tablets (eight more than the two that he was allowed to possess); (2) disobeying an order from staff; and (3) engaging in "loud, boisterous behavior or communication with other inmates." The State also presented evidence that Preyor had the dates of his drug offense and the murder tattooed on his body. He told Dr. Murphy that the tattoos were to remind him of mistakes that he did not want to repeat.

The jury found beyond a reasonable doubt that there was a probability that Preyor would commit criminal acts of violence that constituted a continuing threat to society, and that there were insufficient mitigating circumstances to warrant a sentence of life imprisonment.

*Preyor v. Stephens*, 537 Fed. App'x. at 414–17.

## SUMMARY OF THE ARGUMENT

Preyor has not shown that a COA is warranted. The district court correctly held that Preyor's Rule 60(b) motion was an improperly filed successive petition and dismissed it for want of jurisdiction. Preyor's motion—though purporting to demonstrate fraud on the court—thoroughly briefed a new IATC claim. Under Supreme Court and this Court's precedent, the motion is in fact a successive petition, which the lower court lacked jurisdiction to consider. Moreover, Preyor is not entitled to authorization to file a successive petition because his IATC

claim pertains to a sentencing issue, which is insufficient grounds for authorization under 28 U.S.C. § 2244(b).

Preyor has also failed to show that the lower court abused its discretion in holding that he had not shown fraud under Rule 60(b)(3). While Philip Jefferson may have had some role assisting Estelle in the case, Preyor has failed to identify how this amounts to fraud on the court. Ultimately, his claim always returns to the following argument: counsel's fraudulent and deceptive actions resulted in poor federal habeas briefing, including the failure to brief the new IATC claim.   However Preyor packages his argument, at the end of the day he is actually complaining about counsel's performance, which is insufficient to demonstrate extraordinary circumstances under Rule 60(b).

Preyor's claim is further undermined by additional factors: (1) despite being provided the opportunity to choose new counsel mid-stream, he chose to stay with Estelle; (2) Jefferson's name is on no court documents—indeed Preyor does not ever mention Jefferson in pro se documents he submitted—and there is no evidence Preyor himself had contact with Jefferson; and (3) while Preyor claims the evidence shows

that Jefferson and Estelle defrauded his mother, there is no evidence that Preyor himself was the target of the alleged fraud.

The lower court also correctly held that Preyor's motion was untimely. First, it was not filed within a year of the original habeas judgment. Second, Preyor has not shown that it was filed within a reasonable time because counsel and Preyor's mother knew of the underlying fact—Jefferson's disbarment— two years before Preyor filed the Rule 60(b) motion.

Finally, Preyor's IATC claim is clearly time barred and procedurally defaulted. And Preyor is not deserving of a stay of execution.

## STANDARD OF REVIEW

In determining whether to issue a COA, a court must consider whether the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). The COA standard

> . . . is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

14

*Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Until the prisoner secures a COA, the Court of Appeals may not rule on the merits of his case." *Buck*, 137 S. Ct. at 773 (citing *Miller-El*, 537 U.S. at 336).

Moreover, Preyor appeals the district court's disposition of his Rule 60(b) motion. The denial of a Rule 60(b) motion is reviewed under an abuse of discretion standard. *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013). "It is not enough that the granting of relief might have been permissible, or even warranted." *Id.* (citing *Seven Elves Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)). The "denial of relief must have been so unwarranted as to constitute an abuse of discretion." *Id.* Similarly, the party appealing the denial of a stay of execution must demonstrate that the district court abused its discretion in denying a stay. *Id.* That party "bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Id.* (citing *Green v. Thaler*, 699 F.3d 404, 411 (5th Cir. 2012)).

15

## ARGUMENT

I.   **A COA Is Unwarranted Because the District Court Properly Concluded that Preyor's Rule 60(b) Motion Was a Successive Petition.  Moreover, Preyor Is Not Entitled to Leave to File a Successive Petition Because His Underlying Claim Fails to Meet the Requirements of 28 U.S.C. § 2244(b).**

For federal habeas corpus purposes, a filing that seeks an adjudication of the merits of a constitutional claim is a habeas corpus application.  *See Gonzales v. Crosby*, 545 U.S. 524, 530 (2005) (citing 28 U.S.C. § 2244(b); *Woodford v. Garceau*, 538 U.S. 202, 207 (2003)).  In *Gonzales*, the Supreme Court held that "[u]sing Rule 60(b) to present new claims for relief from a state court's judgment of conviction—*even claims couched in the language of a true Rule 60(b) motion*—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts."  545 U.S. at 531 (emphasis added).  Thus,

> [a] federal court examining a Rule 60(b) motion should determine whether it either: (1) presents a new habeas *claim* (an "asserted federal basis for relief from a state court's judgment of conviction"), or (2) "attacks the federal court's previous resolution of a claim *on the merits* . . ."  If the Rule 60(b) motion does either, then it should be treated as a second-or-successive habeas petition and subjected to AEDPA's limitation on such petitions.

*In re Edwards*, 676 F. App'x 298, 303 (5th Cir.) (emphases in original) (quoting *Gonzales*, 545 U.S. at 530, 532), *cert. denied*, 137 S. Ct. 909 (2017); *In re Jasper*, 559 F. App'x 366, 371 (5th Cir. 2014) (same); *see also Williams v. Thaler*, 602 F.3d 291, 302 (5th Cir. 2010); *Franqui v. Florida*, 638 F.3d 1368, 1371 (11th Cir. 2011) (holding Rule 60(b) "cannot be used by habeas petitioners to raise new claims for habeas relief: this use would circumvent the AEDPA requirement that a petitioner obtain the approval of the appropriate court of appeals before filing a second or successive habeas petition").

Further, the *Gonzales* Court utilizes a basic test: "In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple.  A motion that seeks to add a new ground for relief . . . will of course qualify [as successive]." 545 U.S. at 532.  This is precisely what Preyor has attempted to do, as shown by his substantial briefing of the new IATC claim in district court.  DE 78 at 32–55 & Exhibits 1-1–1-5, 2–3, 22–27.  It is irrelevant that Preyor's motion is couched in terms of "fraud."  The issue of fraud in no way changes what he is attempting to do: to have his judgment set aside to litigate a new claim.  Under *Gonzales*, *Edwards*, and *Jasper*, the inclusion of the new

allegation rendered his motion a successive petition, as the lower court correctly found.

Moreover, Preyor is not entitled to authorization to file a successive petition.  Leave to file a second habeas petition may be granted if the applicant shows his new "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2244(b)(2)(A), or the applicant shows "the factual predicate for the [new] claim could not have been discovered previously through the exercise of due diligence," 28 U.S.C. § 2244(b)(2)(B)(i), *and* "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  § 2244(b)(2)(B)(ii).

Preyor cannot satisfy this standard because his underlying IATC claim only challenges what transpired at the punishment phase of trial.[2] The statute "only permits a successive habeas petition where the

---

[2]    Preyor's claim does not purport to rely on a new rule of constitutional law made retroactive to cases on collateral review.  28 U.S.C. § 2244(b)(2)(A).

petitioner produces new evidence casting doubt on whether he is 'guilty of the underlying offense.' We have concluded that this provision does not extend to evidence casting doubt on the validity of a prisoner's sentence." *Turner v. Epps*, 460 F. App'x 322, 330 (5th Cir. 2012) (citing *In re Webster*, 605 F.3d 256, 257–58 (5th Cir. 2010)); *see also id.* ("*Webster* makes clear that [petitioner's] acquisition of mitigating evidence would not avail him in seeking federal habeas relief; any claim he might have is therefore foreclosed by the plain language of § 2244."). Because Preyor cannot receive authorization from the Court, his petition was properly dismissed and any subsequent petition must be dismissed. Therefore, a COA is not merited.

## II. The Lower Court Correctly Determined that Preyor Failed to Demonstrate a Fraud on the Court or Extraordinary Circumstances that Justify Relief from Judgment.

The lower court held that Preyor failed to demonstrate fraud on the court, and this decision is correct. At the very least, Preyor cannot show that reasonable jurists would debate whether the court's ruling amounted to an abuse of discretion.

In order for Preyor to establish fraud under Rule 60(b)(3), he must show by clear and convincing evidence fraud or other misconduct that

prevented him from fully and fairly presenting his case. *Williams*, 602 F.3d at 311; *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006). Fraud on the court is "where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function—thus where the impartial functions of the court have been directly corrupted." *Weese v. Schukman*, 98 F.3d 542, 552–53 (10th Cir. 1996). And Preyor's burden is extraordinarily high:

> Generally speaking, only the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Zurich North America v. Matrix Service, Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (quoting *Weese*, 98 F.3d at 552–53); *see also True v. C.I.R.*, 1993 WL 272478, *2–*3 (6th Cir. 1993) (fraud "generally involves a deliberately planned and carefully executed scheme designed to subvert the integrity of the judicial process") (citing *Hazel-Atlas Glass Co., v. Hartford Empire Co.*, 322 U.S. 238, 245 (1944)); *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (to establish fraud,

20

"'it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'") (quoting *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978)).

The purported fraud here is that Jefferson actually managed Preyor's case, Estelle did not disclose her "disbarred co-counsel's lead role" to the lower court, and Estelle sought compensation from the courts after being paid by Preyor's family without paying Preyor's family back. Brief at 6–21, 28–47. As a preliminary matter, Preyor's claim is premised on an assertion that is untrue: "[Preyor] was represented by an attorney disbarred years earlier for shoddy work and abandonment of clients, who orchestrated the representation through a real-estate lawyer with no experience in capital case." *Id.* at 25. Preyor was *not* represented by Jefferson; he was represented by Estelle. Her name is the only name on any pleadings and on the lower court's docket; she filed the original COA application in this Court and petition for writ of certiorari in the Supreme Court; and Preyor himself has never recognized that Jefferson was involved in his case. The claims by family members personally invested in halting Preyor's execution—temporarily or permanently—do not turn Preyor's assertions into fact. Short of sworn testimony from Estelle

21

acknowledging that Preyor's claims are true, this particular allegation is simply unprovable.

At any rate, when it comes to the actual result of the alleged fraud, Preyor's claim is telling:

> The result of this scheme was precisely the abysmal representation that one would expect from a disbarred attorney and a real-estate lawyer serving as his beard. The federal habeas petition the duo filed in the District Court was so facially inadequate that it subsequently became its own ironic meme, circulated among habeas attorneys of an example of what *not* to do. *And most consequential for Preyor, Jefferson and Estelle failed to identify the overt deficiencies of sentencing counsel's efforts*—including counsel's abject failure to identify and follow up on numerous items in Preyor's pre-trial file suggesting evidence of childhood sexual abuse and physical abuse.

Brief at 3 (emphasis in original and emphasis added). Regardless of how seriously Preyor frames this issue, beneath it all is an attack on habeas counsel's performance or omissions, which "'do not go to the integrity of the proceedings, but in effect ask for a second chance to have the merits determined favorably.'" *In re Coleman*, 768 F.3d 367, 371 (5th Cir. 2014) (quoting *Gonzales*, 545 U.S. at 532 n.5). In fact, Rule 60(b) relief is generally directed towards rectifying defects that *prevent* a ruling on the merits, which did not occur in this case. *See Gonzales*, 545 U.S. at 532 n.4 (stating that petitioner is not making a habeas claim "when he merely

asserts that a previous ruling which precluded a merits determination was in error").

Additionally, Preyor never actually identifies a true fraud *on the court itself*. In his lengthy recitation of Jefferson's and Estelle's supposed egregious conduct—premised solely on affidavits from Preyor's family members—the closest he comes to any deception on the court is claiming that Estelle did not inform the court of Jefferson's role. Of course, this assumes that everything he is stating about Jefferson's role is true. But even then, he never identifies what effect this actually had on the habeas proceeding itself. As stated, Jefferson's name is not on any court documents or pleadings, he apparently did not meet with Preyor, and other than the statements by Preyor's mother, there is nothing to suggest he was drafting or dictating pleadings. Importantly, even if Jefferson was assisting Estelle, he was not precluded from doing so simply because he had been disbarred. The fraud Preyor is actually alleging is how Jefferson supposedly represented himself to Preyor's *family*, not to Preyor. Clearly, these allegations have nothing to do with the integrity or impartial functions of the court.

Preyor claims that had the lower court known about the above, he would have been appointed new counsel, received better representation, and the new IATC claim would have been raised. But his argument is circular—it always returns to the effectiveness of his habeas counsel. For example, Preyor states that instead of being appointed competent counsel, "the District Court was left with the grossly deficient pleadings that Jefferson crafted and Estelle submitted, which failed to provide the District Court with adequate legal analysis and factual support for the claims they did raise—and failed to present perhaps Preyor's strongest claim for relief altogether." Brief at 37. Again, the essence of Preyor's fraud allegation is that the result was ineffective representation. This is not proper grounds for reopening his habeas proceedings. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Berryhill v. Evans*, 466 F.3d 934, 937 (10th Cir. 2006) (rejecting claim brought under Rule 60(b) that "seek[s] to assert or reassert habeas claims . . . or are inextricably intertwined with a claim of fraud").

The bottom line is that this is not a case where the impartial functions of the court have been corrupted, *Weese,* 98 F.3d at 553, because Preyor never identifies how the alleged fraud impacted his proceedings, except to complain about counsel's performance. Moreover, the lower court gave Preyor an opportunity to acquire new counsel when it denied Estelle's motion for appointment of counsel under 18 U.S.C. § 3599. DE 20. But Preyor not only chose to stay with Estelle, he actually expressed his approval of her representation in a declaration attached to a motion for appointment of counsel. DE 19-1 (Preyor stating that Estelle had communicated with him, had discussed the facts and law with him, and he felt "confident" that Estelle "will continue to properly represent your declarant and ensure that the outcome of this federal proceeding will be fair and just."). In addition, Preyor apparently only had contact with Estelle and no communication with Jefferson. Indeed, Preyor does not mention Jefferson in this declaration or in his pro se letters to the district court. DE 31 & 33. As the lower court held: "[T]here is little in the record to support [Preyor's] allegation that *his* consent, and not the consent of his mother, was fraudulently obtained." DE 86 at 8 (emphasis in original).

Preyor also argues that the result of Estelle's and Jefferson's fraud is that he was essentially abandoned by them.  Citing *Maples v. Thomas*[3] and *Holland v. Florida*[4]—cases that pertain to equitable tolling of the AEDPA limitations period—Preyor argues that he cannot be charged with the acts or omissions by his counsel.  Brief at 43–44.  This Court has rejected this argument in the Rule 60(b) context, highlighting that *Maples* does not establish that abandonment by counsel in habeas proceedings is a defect in the integrity of those proceedings because (1) *Maples* was not a Rule 60(b) case, (2) the petitioner there had not concluded federal proceedings, and (3) the attorney missed a filing deadline.  *Edwards*, 676 F. App'x at 305 (citing *Maples*, 565 U.S. at 916–17.  Therefore, this Court has refused to apply equitable tolling standards to extraordinary relief under Rule 60(b).  *Id.*  Preyor counters that *Edwards* is an unpublished decision and that the statements therein are simply dicta.  Brief at 44.  In other words, he has failed to locate any precedent actually refuting this Court's ruling in *Edwards*.  His argument is, therefore, meritless.

---

[3]     565 U.S. 266 (2012).

[4]     560 U.S. 631 (2010).

Relatedly, despite the alleged deficiencies of Estelle's representation, she never abandoned Preyor.  She continued to submit pleadings and briefs to this Court and the Supreme Court until Preyor's habeas proceedings were concluded.  She tried to advance some IATC claims that were not originally raised in state court.  And she attempted to exhaust claims she believed were unexhausted by filing additional state habeas applications.  Moreover, it does not appear she missed any deadlines.  Preyor may not be pleased with the outcome or might wish that different claims had been raised,[5] but that does not warrant extraordinary relief.  And Jefferson's role in the case, whatever that may have been, had nothing to do with the judicial functions of the court.

---

[5]     Another flaw with Preyor's argument is that Estelle could not have successfully raised the new IATC claim anyway.  Preyor never presented a claim in state court that counsel was ineffective for failing to present mitigating evidence; thus, the claim is not exhausted.  Moreover, *Martinez v. Ryan*, 566 U.S. 1 (2012), which allows a petitioner to plead ineffective assistance of habeas counsel as cause to excuse a procedurally defaulted IATC claim, and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), which applied the *Martinez* rule to Texas cases, had not been decided when Estelle filed Preyor's petition.  *Martinez* was decided only three months before the lower court denied Preyor's petition, and *Trevino* was decided a year later.  And even if *Martinez* and *Trevino* had played a role, this Court has held that "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment." *Adams v. Thaler,* 679 F.3d 312, 219 (5th Cir. 2012).

As a final matter, with regard to relief under Rule 60(b)(6), the lower court's judgment can be set aside only under "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535. Such circumstances include "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck*, 137 S. Ct. at 778 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-864 (1988)). Nonetheless, "[s]uch circumstances will rarely occur in the habeas context." *Gonzales*, 545 U.S. at 535. As the lower court determined, and as shown above, extraordinary circumstances do not exist here. Therefore, Preyor is not entitled to a COA.

## III. The Lower Court Correctly Held that Preyor's Motion Is Untimely.

A motion made pursuant to Rule 60(b) and purporting to be grounded in fraud must be filed "no more than a year after the entry of judgment[.]" Fed. R. Civ. P. 60(c). "This time is jurisdictional and cannot be extended." *Arrieta v. Battaglia*, 461 F.3d 861 (7th Cir. 2006) (citations omitted). To the extent this motion can be characterized as asserting "any other reason that justifies relief," it must have been "made within a reasonable time." Fed. R. Civ. P. 60(c). In the latter circumstance, timeliness is measured as of the point in time when the moving party has

grounds to make a Rule 60(b) motion. *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017).

The lower court correctly held that Preyor's motion is untimely. DE 86 at 6–8. Preyor did not file the motion within a year from the entry of judgment. To the extent the "reasonable" time period applies, the motion is still untimely. Preyor's mother states in her affidavit that she learned that Jefferson was disbarred in "early 2015." DE 78 at 10–11. She acquired this information from Richard Ellis, an attorney who specializes in habeas corpus and capital litigation and has represented capital petitioners in Texas. Mr. Ellis previously spoke with his colleague Hilary Sheard, one of Preyor's current attorneys, about Preyor's case. DE 78-22. And a copy of the California State Bar findings of fact explaining why Jefferson would be disbarred has a certificate date of May 26, 2015. DE 78-15. Therefore, Preyor apparently received this document over two years ago. Despite the above information, Preyor waited less than two weeks before his execution to present this matter to the lower court. *See Tamayo v. Stephens,* 740 F.3d 986, 991 (5th Cir. 2014) (holding Rule 60(b) motion filed nearly eight months after relevant Supreme Court decision, and two days before scheduled execution, was not filed within a

reasonable time); *Pruett v. Stephens,* 608 F. App'x 182, 186–87 (5th Cir. 2015) (holding Rule 60(b) motion filed more than fourteen months after relevant evidence obtained was not filed within a reasonable time); *In re Paredes,* 587 F. App'x 805, 825 (5th Cir. 2014) (holding Rule 60(b) motion filed seventeen months after relevant Supreme Court decision was not filed within a reasonable time); *Trottie v. Stephens,* 581 F. App'x 436, 438 (5th Cir. 2014) (holding Rule 60(b) motion filed almost three years after the district court denied federal habeas relief was not filed within a reasonable time).

Preyor complains that the lower court itself is at fault for any delay because of the time it took for an investigative budget to be approved. Specifically: "the District Court disregarded and failed to mention at all the fact that its own actions iced over the investigation of Jefferson and Estelle's fraud for over nine years." Brief at 50. Preyor's complaint is flawed for two reasons. First, the lower court noted on several occasions that Preyor's counsel, Hillary Sheard, had conducted a substantial amount of work pertaining to any additional claims that might be brought, even though the budget had not been officially approved. DE 55 at 3; DE 39. Second, Preyor's claims are premised almost exclusively on

affidavits from his family members. As this Court has observed: "Obtaining affidavits from family members is not cost prohibitive." *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000). Preyor's arguments about restrictions on investigative resources and that evidentiary support for the claim did not exist until recently are, therefore, unavailing. Consequently, a COA is not warranted.

## IV. Preyor's New IATC Claim Would Be Time Barred and Procedurally Defaulted.

Preyor's new IATC claim is undoubtedly successive, and he has not received permission from this Court to raise the claim in the district court. In addition, the claim is time barred. Given the date Preyor's conviction became final—April 22, 2008—and tolling for the period that state collateral proceedings are pending—Preyor filed three state habeas applications, the last dismissed on November 9, 2011, *see* 28 U.S.C. § 2244(d)(2)—the limitations period expired in September of 2012. Thus, any new federal petition would be time barred by nearly five years.

Moreover, Preyor never raised an IATC claim in state court premised on trial counsel's failure to investigate and present mitigating evidence. Therefore, based on the settled rules pertaining to exhaustion, Preyor would be faced with a procedural default of this claim. 28 U.S.C.

§ 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009).   For these additional reasons, Preyor's underlying IATC claim is unreviewable.

## V.     The Court Should Deny a Stay of Execution.

A federal court may stay an execution only when a habeas corpus application has been filed, or when it would have jurisdiction to entertain such an application but no counsel is yet appointed.   28 U.S.C. § 2251.   In deciding whether to grant a stay of execution, this Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."   *Nken v. Holder*, 556 U.S. 418, 434 (2009)   (citation   and   internal   quotations   omitted). "[A] stay of execution is an equitable remedy.   It is not available as a matter   of   right,   and   equity   must   be   sensitive   to   the   State's strong interest in   enforcing   its   criminal   judgments   without   undue interference from the federal courts."   *Hill v. McDonough,* 547 U.S. 573, 584 (2006).   Further, this Court "may consider the last-minute nature of

an application to stay execution in deciding whether to grant equitable relief." *Nelson v. Campbell*, 541 U.S. 637, 649 (2004). And as the Supreme Court made clear, "[p]rotecting against abusive delay *is* an interest of justice." *Martel v. Clair*, 565 U.S. 648, 662 (2012) (emphasis in original).

### A.   This Court lacks the authority under 28 U.S.C. § 2251 to stay Preyor's execution.

Preyor has not filed an application for habeas corpus relief in the lower court. As stated, his Rule 60(b) motion attempted to raise a new IATC claim; thus, the motion must be construed as a successive habeas application. But Preyor has not received permission from this Court to file the petition, under 28 U.S.C. § 2244(b)(3)(A). And pursuant to 28 U.S.C. § 2251(a)(1) and (2), a federal court lacks jurisdiction to enter a stay unless a habeas corpus proceeding is pending, and "a habeas corpus proceeding is not pending until the application is filed." *See also Rosales v. Quarterman*, 565 F.3d 308, 311 (5th Cir. 2009); *Williams v. Cain*, 143 F.3d 949, 950 (5th Cir. 1998). Further, Preyor does not lack appointed counsel under 18 U.S.C. § 3599. Thus, he cannot invoke 28 U.S.C. § 2251(a)(3) as a means for the Court to grant a stay. Due to this Court's lack of jurisdiction, Preyor's motion to stay his execution must be denied.

## B.    Equitable concerns do not favor a stay.

Preyor contends that a stay is warranted because (1) he has demonstrated a significant possibility of success on the merits with regard to his Rule 60(b) motion; (2) he will be harmed if not granted a stay; and (3) he has not unreasonably delayed the assertion of his rights. Motion to Stay at 4–6.  Preyor is incorrect.

As shown above, Preyor is not entitled to relief from his judgment because his Rule 60(b) motion it is in fact a successive habeas petition, and Preyor has not received authorization from this Court to file a new petition.  Moreover, Preyor has failed to demonstrate a fraud on the court itself.  And as the lower court found, "any attempt to raise a new claim concerning trial counsel's alleged ineffectiveness would undoubtedly be a successive petition under 28 U.S.C. § 2244(b)(2) and barred by the statute of limitations imposed by 28 U.S.C. § 2244(d)(1), as well as subject to dismissal as unexhausted and procedurally defaulted." DE 72 at 5.  The motion is, therefore, meritless.

Next, Preyor's assertion of harm disregards the harm to the State. As the lower court previously recognized, the victim's family has "had to endure a lengthy appellate process and delays in the scheduling of the

execution, and have a substantial interest in obtaining some closure to this case." *Id.* And "granting a stay would inhibit the State's ability to carry out an otherwise valid sentence and impair the finality of state criminal judgments." *Id.* (citing *Hill*, 547 U.S. at 584). Considering that Preyor's execution has been postponed for over a year in order to accommodate him and his attorneys, but at the expense of the victims and the State's interest in finality, these factors do not weigh in his favor.

Finally, Preyor's assertion that he has not unreasonably delayed the assertion of his rights is incorrect. Preyor had notice over two years ago of the basic fact that forms the grounds for his Rule 60(b) motion. And he has been represented by appointed counsel Hilary Sheard for more than two years. But he waited less than two weeks before his scheduled execution to present the motion to the lower court. Further, Preyor's argument about budget restraints is inadequate. DE 72 at 6 ("As this Court has repeatedly noted, Ms. Sheard completed a substantial amount of work on petitioner's behalf prior to seeking, then obtaining, a generous budget from the Court, including investigating and developing the very allegations counsel wishes more time to develop."). Therefore, the timing of the motion does not weigh in his favor.

# CONCLUSION

For the above reasons, the Director requests that this Court deny Preyor a COA and a stay of execution.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFF MATEER
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Erich Dryden
*ERICH DRYDEN
\*Attorney-in-Charge          Assistant Attorney General
State Bar No. 24008786

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
(512) 320-8132 (Fax)

ATTORNEYS FOR
RESPONDENT–APPELLEE

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

I do hereby certify that this brief complies with Fed. R. App. Proc. 32 (a)(7)(c) in that it contains 8100 words, Microsoft Word 2010, Century Schoolbook, 14 points.

/s/ Erich Dryden
ERICH DRYDEN
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE
WITH ECF FILING STANDARDS**

I do hereby certify that: (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.13; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ Erich Dryden
ERICH DRYDEN
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing Opposition to Application for Certificate of Appealability and Motion to Stay Execution has been served electronically to Hilary Sheard, Catherine Stetson, and Mark Olive, counsel for Petitioner, on this the 25th day of July, 2017.


/s/ Erich Dryden
ERICH DRYDEN
Assistant Attorney General