No. 17-70017

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

TAICHIN PREYOR,

                Petitioner − Appellant,

v.

LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

                Respondent − Appellee.

On Appeal from the United States District Court
for the Western District of Texas
San Antonio Division
Case No. 5:10-cv-00857-FB (Honorable Fred Biery)

**\*TAICHIN PREYOR IS SCHEDULED TO BE
EXECUTED AT 6:00 PM CDT ON JULY 27, 2017\***

**REPLY IN SUPPORT OF APPLICATION
FOR CERTIFICATE OF APPEALABILITY AND
MOTION FOR STAY OF EXECUTION**

Mark E. Olive
320 W. Jefferson Street
Tallahassee, FL 32301
(850) 224-0004
meolive@aol.com

Hilary Sheard
Texas Bar # 50511187
7421 Burnet Road, #300-512
Austin, TX 78757
(512) 524-1371
HilarySheard@hotmail.com

Catherine E. Stetson
Elizabeth C. Lockwood
HOGAN LOVELLS US LLP
555 Thirteen Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Petitioner TaiChin Preyor*

The State does not meaningfully dispute the facts underlying this bizarre saga. It is undisputed that Philip Jefferson was disbarred. It is undisputed that Jefferson participated in Preyor's representation through his legal stand-in, real-estate attorney Brandy Estelle. And it is undisputed that Estelle sought duplicative payments from Preyor's mother and this Court for their work. Nor does the State dispute that the former District Court clerk responsible for death penalty cases was unprecedentedly concerned about Estelle's representation, going so far as to reach out to the Texas habeas bar to identify replacement counsel for Preyor.

Instead of engaging these undisputed facts, the State now asserts, for the first time, that Preyor's allegations are "simply unproveable" absent "*sworn testimony from Estelle*." Opp'n. at 21-22 (emphasis added). Setting aside the State's elementary understanding of corroborating evidence, their call for Estelle's testimony only highlights our point: this Court should stay Preyor's imminent execution so that this Court—and the District Court—might adequately assess Preyor's claims for relief. Preyor has developed substantial evidence in support both of his fraud-on-the-court claim, and of the underlying ineffective-assistance claim that his prior counsel ignored, over the past weeks since this Court adopted the District Court's long-awaited approval of a $45,000 budget for appointed counsel's investigation. The District Court, having refused to grant a stay

1

notwithstanding its own role in the timing of Preyor's presentation of his claims, rushed its consideration of this evidence, finding "little in the record" to support a key proposition (when in fact there were pages and pages of it), and "little, if any evidence" to support another (when in fact there was much).  ROA.2246-2247.  This Court should pause the process to ensure that Preyor is not executed without receiving a full and fair opportunity to present his claims for federal habeas relief.  Indeed, because the disputed evidence alone—not to mention the applicable law—confirms that the District Court's denial of Rule 60 relief was "debatable" among reasonable jurists, this Court is obligated to grant a certificate of appealability to hear the full merits of Preyor's appeal.  *Buck v. Davis*, 137 S. Ct.759, 773-774 (2017).

### I. The Key Facts Underlying Jefferson and Estelle's Fraud are Undisputed—And To The Extent The State Seeks "Sworn Testimony," Further Confirm The Need For A Stay.

Despite ample opportunity before this Court and the District Court, the State has yet to dispute the key facts underlying Preyor's compelling claim that Jefferson and Estelle committed fraud on the court.  A ten-page affidavit from Preyor's mother—accompanied by nearly fifty pages of exhibits—outlines Jefferson's improper involvement in Preyor's federal habeas proceedings.  *See* ROA.1786-1850.  Far from the stand-alone statements of a single interested family member, this affidavit is corroborated by documentary evidence, including

(1) documentary proof that Jefferson dictated a pleading in 2014 that Estelle subsequently filed, largely unchanged, at the U.S. Supreme Court and (2) payment records demonstrating that Jefferson and Estelle split fees for Preyor's representation. It is also corroborated by sworn statements from (1) Jefferson's ex-wife, Melody Nelson; (2) Jefferson's nephew, Oliver Jefferson; (3) Jefferson's close friend, Rufus "Andrea" White; (4) Andrea's wife, Melanie White; and (5) Mendez's brother, Nathaniel Johnson. *See* ROA.1907-1911; ROA.1912-1915; ROA.1898-1901; ROA.1902-1904; ROA.1933-1939

The State acknowledges the weight of this evidence by admitting that disbarred attorney "Philip Jefferson may have had some role assisting Estelle in the case," but argues that, because Jefferson's name appeared in no court documents, Preyor's claim must fail. Opp'n at 13, 21-22, 23. That is absurd. Jefferson's name did not appear on any court documents because Jefferson was disbarred. That is our point. The absence of Jefferson's name on any filings, in fact, is entirely consistent with Preyor's allegation that Jefferson secretly orchestrated his representation. Indeed, it is entirely unsurprising that a disbarred attorney who was illegally practicing law on a death-row inmate's behalf would not introduce himself to the Court. It is telling that this is all the State can do to counter the fact that Jefferson led Preyor's representation. Plainly he did.

Respondent also contends that Jefferson and Estelle's fraud was directed at

Preyor's family, not Preyor himself. But there is no meaningful distinction between the two: Preyor entered into the agreement with Jefferson and Estelle "by and through" his mother, as the contract makes clear. ROA.1799-1801. For the purposes of Jefferson and Estelle's fraudulent inducement, therefore, Preyor and his mother were one and the same.

Instead of engaging with the thorough, corroborated evidence of Jefferson and Estelle's fraud, the State continues to resort to its usual, canned responses to Rule 60 motions. The Director suggests, for example, that because one of the results of Estelle and Jefferson's fraudulent scheme was that Preyor was represented by incompetent counsel, his claim of fraud on the court is no different than a run-of-the-mill claim of ineffective assistance of counsel, for which this Court cannot grant relief. Opp'n at 24. But this proves too much. Yes, Preyor's previous federal habeas counsel were incompetent. They also perpetrated a fraud on the court. The latter is the grounds for relief; the former explains why we need to seek it at all. The Director's rule—which would render any Rule 60 claim an ineffective-assistance claim where counsel rendered poor service—would leave the courts powerless to correct *any* fraud on the court perpetrated by a party's own attorney. Consider, for example, if Estelle herself were unlicensed to practice law. Under the Director's rule, if Estelle came to this Court impersonating a licensed, experienced Texas habeas lawyer, and

4

subsequently delivered the abysmal performance one would expect from an unlicensed California real-estate broker, this Court would be unable to grant relief from her fraud on the court simply because it involved deficient performance. That, of course, would be an absurd result, and one that squarely contradicts this Court's recognition that the conduct of a movant's own attorney may constitute fraud on the court for which Rule 60 relief is warranted. *See Browning v. Navarro*, 826 F.2d 335, 343-344 (5th Cir. 1987) (citing examples of fraud on the court perpetrated by the movant's own attorney in civil case, where there is similarly no right to effective assistance of counsel).

All of these disputes over the evidence, moreover, merely confirm the need for a COA, for further investigation as contemplated in the recently approved budget, and for a hearing to assess the contentions Preyor has put forward and supported with significant documentary evidence. Preyor is not seeking absolution or commutation; he is seeking a chance to make the best case he can, using the resources this Court gave him to do it.

The judicial system runs on the fundamental promise—one on which the public daily relies—that lawyers who represent criminal defendants will be licensed and competent. Nowhere is that promise more important than where a convicted defendant is facing death. It is therefore entirely reasonable for a court to find that a fraud of this nature undermines the public's confidence in the

"integrity of the judicial process." *United States v. Estate of Stonehill,* 660 F.3d 415, 444 (9th Cir. 2011) (quoting *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989). And because any court would have barred Estelle from appearing on behalf of Preyor had it known of Jefferson's involvement, the duo's fraud also prevented the District Court from effectively "perform[ing] in the usual manner its impartial task of adjudging cases." *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1987), 873 F.2d at 872 (quoting *Kerwit Med. Prods. v. N. & H. Instruments Inc.*, 616 F.2d 833, 837 (5th Cir. 1980)). Jefferson and Estelle's fraud thus amounted to a fraud on the court that warrants relief under Rule 60(d)(3)—and at the very least, raises a legal issue on which reasonable jurists could disagree, warranting a COA and a stay.[1]

Furthermore, under these rare and extraordinary circumstances, there is little doubt that a reasonable jurist could also find that equitable relief is warranted under Rule 60(b)(6) due to the "extraordinary circumstances" of Estelle and Jefferson's representation of Preyor. Few cases have presented such a great "risk of injustice to the parties" and acute "risk of undermining the public's confidence

---

[1] Respondent incorrectly states that Preyor is bringing his claim under Rule 60(b)(3), and although Preyor pointed out the same mistake before the District Court, Respondent states the legal standard applicable to Rule 60(b)(3) claims, not fraud on the Court. *See* Opp'n at 1, 13, 19-20 (citing *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010)); *see also* ROA.2222. Preyor has never invoked Rule 60(b)(3), which addresses fraud by an opposing party. He has only referred to the Court's inherent authority to correct fraud on the court under Rule 60*(d)*(3) and the power to grant relief for extraordinary circumstances under Rule 60(b)(6).

in the judicial process" than this one. *Buck*, 137 S. Ct. at 778 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-864 (1988)). The public may not expect that all death-row inmates be afforded competent counsel. But they certainly expect that the counsel is licensed.

## II. Given the District Court's Delay in Approving a Budget, Reasonable Jurists Could Find That Preyor's Rule 60 Was Timely Filed.

Respondent notably does not dispute that a claim for relief based on fraud on the court is not subject to a time bar. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)); *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009). As the District Court acknowledged, therefore, there is no dispute that Preyor's claim under Rule 60(d)(3) is timely. *See* ROA.2243.

So is his claim for relief under Rule 60(b)(6), which must be brought within a "reasonable time" unless "good cause" is shown. *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017). Unlike the cases cited by the Director, in which the ground for relief is a straightforward change in decisional law, Opp'n at 29-30, the question of whether extraordinary circumstances exist under Rule 60(b)(6) is a highly fact-intensive inquiry, *see Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981), requiring counsel to investigate the full circumstances of Jefferson's involvement in the case in order to present a credible motion. Preyor pursued this investigation diligently to extent he was able—but the delay, primarily by the District Court, in approving a necessary budget for further work held up his

7

progress for over a year.

Respondent contends in response that the District Court's delay in approving the $45,000 budget request was no big deal. In support, it cites *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) for the proposition that "[o]btaining affidavits from family members is not cost prohibitive." But Preyor's investigation required far more than affidavits from family members. That is why the District Court and this Court approved a $45,000 budget for Preyor to fund it. Preyor had to not only thoroughly investigate the circumstances of his former counsel's fraudulent scheme, but also perform an extensive mitigation investigation to show that he had a substantial claim for relief, and thus granting a Rule 60 Motion to reopen federal habeas proceedings would not be futile. *See Seven Elves*, 635 F.2d 396 at 402. Thus, particularly in light of the District Court's own delay, a reasonable jurist could find that Preyor's claim for Rule 60(b)(6) relief was investigated and raised in a timely fashion.

### III. Respondent's Opposition Confirms That Reasonable Jurists Could Debate Whether Preyor's Rule 60 Motion Constitutes a Successive Petition.

Respondent's argument that Preyor's Rule 60 Motion constitutes a successive petition again ignores controlling precedent. It is not remotely "irrelevant" that Preyor alleges fraud by his former attorneys. Opp'n at 17-18. In fact, it is dispositive. The Supreme Court has specifically identified a claim of

"fraud on the court" as one that alleges a "defect in the integrity of the federal habeas proceedings" and thus does not constitute a successive habeas petition. *Gonzalez v. Crosby*, 545 U.S. 524, 532 & n.5 (2005). Here, Jefferson and Estelle's fraud on the courts rendered the District Court's judgment "not in essence a decision at all and [thus] never [became] final." *Kenner v. Comm'r*, 387 F.2d 689, 691 (7th Cir. 1968). Their fraud also severed the agency relationship with Preyor, *see* COA at 43-44, such that Preyor is not responsible for the habeas proceedings that they initiated on his behalf. In these circumstances, granting Preyor's Rule 60 Motion and allowing him to pursue the full and fair opportunity to obtain federal habeas relief to which he is entitled—including claims not previously raised in the fraudulent proceeding—does not conflict with Congress' intent to limit successive habeas petitions.

### IV. Preyor's Wiggins Claim Is Not Time Barred and Cause Exists to Excuse the Procedural Default.

The relief for a fraud on the court is straightforward and undisputed by the State; declare the prior ruling on previous counsel's federal habeas petition to be of no effect, *Kenner* 387 F.2d at 691, and restore Preyor to the position he was in before the fraudulent scheme—which began prior to the one-year statute of limitations deadline.

Even if Preyor's habeas claims were treated in a vacuum as a new petition, moreover, equitable tolling would clearly be warranted. *See Holland v. Florida*,

9

560 U.S. 631, 649 (2010) (petitioner is entitled to equitable tolling of the statute of limitations where he has pursued claims diligently and "extraordinary circumstances" prevented raising the claim earlier). Jefferson and Estelle's fraudulent representation prevented Preyor from raising his claims for relief until they were removed from the case in 2015. His mitigation investigation was then put on hold while this Court and the Fifth Circuit considered—and ultimately approved—a substantial budget for a mitigation specialist and further attorney time. And he has diligently pursued his mitigation investigation since then. Equitable tolling is thus appropriate.

Further, as discussed in Preyor's COA, Preyor's state habeas counsel's ineffective assistance of counsel is a ground for excusing procedural default. ROA.1678-1681; *see also Martinez v. Ryan*, 566 U.S. 1 (2012) (recognizing ineffective assistance of state habeas counsel as cause to excuse a procedurally defaulted ineffective assistance of trial counsel claim); *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) (applying *Martinez* to Texas cases).[2] And despite the State's offhand suggestion to the contrary, Opp'n 27 n.5, if the Court agrees with Preyor that Jefferson and Estelle committed a fraud on the court, then the slate will be wiped clean and Preyor would effectively file a federal petition-in-the-first-instance

---

[2] Despite the State's suggestions to the contrary, *Martinez* was decided within three months of the district court's decision, and before the court's judgment became final. Just as competent

whereby he could properly raise his claim under *Martinez* and *Trevino*.

## CONCLUSION

Unless this Court intervenes, TaiChin Preyor will be executed without full consideration of the complex factual and legal issues presented in this case. Preyor therefore requests that this Court at the very least pause the hasty consideration of his claims by granting a certificate of appealability, to permit full briefing, argument, and any necessary further treatment of these claims.

Date: July 26, 2017                                    Respectfully submitted,

/s/ Catherine E. Stetson
Catherine E. Stetson
Elizabeth C. Lockwood
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com
elizabeth.lockwood@hoganlovells.com

Mark E. Olive
320 W. Jefferson Street
Tallahassee, FL 32301
(850) 224-0004
meolive@aol.com

---

attorneys in other cases were raising *Martinez* as soon as it issued, if not before, Estelle and Jefferson should have done the same here.

Hilary Sheard
Texas Bar # 50511187
7421 Burnet Road, #300-512
Austin, TX 78757
(512) 524-1371
HilarySheard@hotmail.com

*Counsel for Petitioner TaiChin Preyor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2017, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing and its viewing and downloading are thereby provided to all counsel of record by cooperation of the CM/ECF system.

/s/ Catherine E. Stetson
Catherine E. Stetson

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,533 words, excluding the parts of the brief exempted by Federal Rule Appellate Procedure 32(f) and the parts of the brief exempted by Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced type face in 14-point Times New Roman font.

Dated:   July 26, 2017            */s/ Catherine E. Stetson*
                                   Catherine E. Stetson